No. 11-10959

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

────────────────

NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED;
ANDREW M. PAYNE; REBEKAH JENNINGS; BRENNAN HARMON,

*Plaintiffs-Appellants*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES;
KENNETH MELSON, In His Official Capacity as Acting Director of the
Bureau of Alcohol, Tobacco, Firearms, and Explosives; ERIC H. HOLDER,
JR., U.S. ATTORNEY GENERAL,

*Defendants-Appellees.*

────────────────

On Appeal from United States District Court for the Northern District of Texas
Civil Case No. 5:10-cv-00140-C (Honorable Sam Cummings)

────────────────

**RECORD EXCERPTS**

────────────────

Brian Koukoutchos                     Charles J. Cooper
28 Eagle Trace                        David H. Thompson
Mandeville, LA 70471                  Howard C. Nielson, Jr.
Tel: (985) 626-5052                   Peter A. Patterson
                                      COOPER AND KIRK, PLLC
                                      1523 New Hampshire Ave., N.W.
                                      Washington, D.C. 20036
                                      (202) 220-9600; (202) 220-9601 Fax

*Attorneys for Plaintiffs-Appellants*

# Table of Contents

District Court Docket Sheet (USCA5 1-11)........................................................... Tab 1

Plaintiffs' Notice of Appeal, Doc. No. 61 (USCA5 1111-1112) .......................... Tab 2

Sept. 29, 2011 Order, Doc. No. 60 (USCA5 1093-1109) ..................................... Tab 3

Sept. 29, 2011 Judgment, Doc. No. 59 (USCA5 1110) ........................................ Tab 4

Declaration of Robert Marcario, Doc. No. 35 at 3-6 (USCA5 603-606) .............. Tab 5

Declaration of Rebekah Jennings, Doc No. 35 at 7-12 (USCA5 607-612) ........... Tab 6

Declaration of Brennan Harmon, Doc. No. 35 at 13-19 (USCA5 613-619) ......... Tab 7

Declaration of Andrew Payne, Doc. No. 35 at 20-25 (USCA5 620-625) ............. Tab 8

Exhibits 1-3 for Declarations of Jennings, Harmon, Payne, Fewkes, D'Cruz,
    Anastas-King, Whitman, Doc. No. 35 at 59-69 (USCA5 659-669) ................ Tab 9

# Tab 1

**U.S. District Court**
**Northern District of Texas (Lubbock)**
**CIVIL DOCKET FOR CASE #: 5:10-cv-00140-C**

National Rifle Association of America, Inc., et al v. Bureau of Alcohol, Tobacco, Firearms, and Explosives
Assigned to: Judge Sam R Cummings
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 09/08/2010
Date Terminated: 09/29/2011
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**James A. D'Cruz**
*TERMINATED: 02/10/2011*

represented by **Charles J Cooper**
Cooper and Kirk PLLC
1523 New Hampshire Ave NW
Washington, DC 20036
202/220-9660
Fax: 202/220-9601
Email: ccooper@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H Thompson**
Cooper & Kirk PLLC
1523 New Hampshire Ave NW
Washington, DC 20009
202/220-9600
Fax: 202/220-9601
Email: dthompson@cooperkirk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Fernando M Bustos**
Law Offices of Fernando M. Bustos, P.C.
P.O. Box 1980
Lubbock, TX 79408-1980
806/780-3976
Fax: 806/780-3800
Email: fbustos@bustoslawfirm.com
*ATTORNEY TO BE NOTICED*

**Jesse Panuccio**
Cooper and Kirk PLLC
1523 New Hampshire Ave NW
Washington, DC 20036
202/220-9642
Fax: 202/220-9601
Email: jpanuccio@cooperkirk.com
*TERMINATED: 02/25/2011*
*ATTORNEY TO BE NOTICED*

**Peter A Patterson**
Cooper & Kirk PLLC
1523 New Hampshire Ave NW
Washington, DC 20036
202/220-9600
Fax: 202/220-9601
Email: ppatterson@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**National Rifle Association of America, Inc.**

represented by **Charles J Cooper**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian S Koukoutchos**
Law Office of Brian S Koukoutchos
28 Eagle Trace
Mandeville, LA 70471
985/626-5052
Email: bkoukoutchos@gmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H Thompson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Fernando M Bustos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Panuccio**
(See above for address)
*TERMINATED: 02/25/2011*
*ATTORNEY TO BE NOTICED*

**Peter A Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>
**Andrew M. Payne**                        represented by **Brian S Koukoutchos**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles J Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Fernando M Bustos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Panuccio**
(See above for address)
*TERMINATED: 02/25/2011*
*ATTORNEY TO BE NOTICED*

**Peter A Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>
**Rebekah Jennings**                      represented by **Brian S Koukoutchos**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles J Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H Thompson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Fernando M Bustos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Panuccio**
(See above for address)
*TERMINATED: 02/25/2011*
*ATTORNEY TO BE NOTICED*

**Peter A Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>
**Brennan Harmon**                        represented by **Brian S Koukoutchos**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles J Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H Thompson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Fernando M Bustos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Panuccio**
(See above for address)
*TERMINATED: 02/25/2011*
*ATTORNEY TO BE NOTICED*

**Peter A Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.
**Defendant**

**Bureau of Alcohol, Tobacco, Firearms, and Explosives**          represented by  **Daniel M Riess**
US Department of Justice - Civil Division
20 Massachusetts Ave NW
Washington, DC 20530
202/353-3098
Fax: 202/616-8460
Email: Daniel.Riess@usdoj.gov
*LEAD ATTORNEY*

**Jessica Beth Leinwand-DOJ**
US Department of Justice
20 Massachusetts Ave
Washington, DC 20001
202/305-8628
Fax: 202/305-8517
Email: Jessica.B.Leinwand@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kenneth Melson**                                               represented by  **Daniel M Riess**
*in his official capacity as Acting Director of of the Bureau of*                (See above for address)
*Alcohol, Tobacco, Firearms, and Explosives*                                    *LEAD ATTORNEY*

**Jessica Beth Leinwand-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Attorney General Eric H. Holder, Jr.**                          represented by  **Daniel M Riess**
*in his official capacity as Attorney General of the United States*             (See above for address)
*LEAD ATTORNEY*

**Jessica Beth Leinwand-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Brady Center to Prevent Gun Violence**                          represented by  **Scott Medlock**
Texas Civil Rights Project
1405 Montopolis Dr
Austin, TX 78741-3438
512/474-5073
Fax: 512/474-0726
Email: scott@texascivilrightsproject.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2010 | 1 | COMPLAINT against Bureau of Alcohol, Tobacco, Firearms, and Explosives, Kenneth Melson, Eric H. Holder, Jr filed by James A. D'Cruz. Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. (Filing fee $350; Receipt number 0539-3455233) (Attachments: # 1 Cover Sheet, # 2 Certificate of Interested Persons) (Cooper, Charles) Per Attorney Jesse Panuccio, Attorney Fernando Bustos will prepare Summons(es) and deliver to Clerk's Office for issuance. Modified on 9/8/2010 (jdg). (Entered: 09/08/2010) |
| 09/08/2010 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by James A. D'Cruz. (Cooper, Charles) (Entered: 09/08/2010) |
| 09/08/2010 | 3 | Application for Admission Pro Hac Vice with Cert. of Good Standing for Attorney Charles J. Cooper (Filing fee $25; Receipt number 0539-3455933) filed by James A. D'Cruz (Attachments: # 1 Certificate of Good Standing) (Cooper, Charles) (Entered: 09/08/2010) |
| 09/08/2010 | 4 | Application for Admission Pro Hac Vice with Cert. of Good Standing for Attorney David H. Thompson (Filing fee $25; Receipt number 0539-3456016) filed by James A. D'Cruz (Attachments: # 1 Certificate of Good Standing) (Cooper, Charles) (Entered: 09/08/2010) |
| 09/08/2010 | 5 | Application for Admission Pro Hac Vice with Cert. of Good Standing for Attorney Jesse Panuccio (Filing fee $25; Receipt number 0539-3456028) filed by James A. D'Cruz (Attachments: # 1 Certificate of Good Standing) (Cooper, Charles) (Entered: 09/08/2010) |
| 09/08/2010 | 6 | Summons Issued as to Bureau of Alcohol, Tobacco, Firearms, and Explosives; Eric H. Holder - Attorney General of the United States, Kenneth |

| | | Melson; and U.S. Attorney. (jdg) (Entered: 09/08/2010) |
|---|---|---|
| 09/09/2010 | 7 | ORDER granting 3 Application for Admission Pro Hac Vice of Charles J. Cooper. Clerk shall deposit application fee to the Non-Appropriated Fund of this Court. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Sam R Cummings on 9/9/2010) (bdg) (Entered: 09/09/2010) |
| 09/09/2010 | 8 | ORDER granting 5 Application for Admission Pro Hac Vice of Jesse Panuccio. Clerk shall deposit application fee to the Non-Appropriated Fund of this Court. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Sam R Cummings on 9/9/2010) (bdg) (Entered: 09/09/2010) |
| 09/09/2010 | 9 | ORDER granting 4 Application for Admission Pro Hac Vice of David H. Thompson. Clerk shall deposit application fee to the Non-Appropriated Fund of this Court. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Sam R Cummings on 9/9/2010) (bdg) (Entered: 09/09/2010) |
| 09/20/2010 | 10 | SUMMONS Returned Executed as to Bureau of Alcohol, Tobacco, Firearms, and Explosives ; served on 9/10/2010. (Bustos, Fernando) (Entered: 09/20/2010) |
| 09/20/2010 | 11 | SUMMONS Returned Executed as to Eric H. Holder, Jr ; served on 9/9/2010. (Bustos, Fernando) (Entered: 09/20/2010) |
| 09/20/2010 | 12 | SUMMONS Returned Executed as to Kenneth Melson ; served on 9/10/2010. (Bustos, Fernando) (Entered: 09/20/2010) |
| 09/20/2010 | 13 | SUMMONS Returned Executed as to James T. Jacks, United States Attorney on 9/10/10. (Bustos, Fernando) Modified on 9/20/2010 (jdg). (Entered: 09/20/2010) |
| 10/21/2010 | 14 | AMENDED COMPLAINT against All Defendants filed by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne. (Cooper, Charles) (Entered: 10/21/2010) |
| 10/21/2010 | 15 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne. (Cooper, Charles) (Entered: 10/21/2010) |
| 11/05/2010 | 16 | Unopposed MOTION to set briefing schedule filed by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Cooper, Charles) (Entered: 11/05/2010) |
| 11/08/2010 | 17 | ORDER GRANTING: 16 Unopposed MOTION to set briefing schedule. It is therefore ORDERED that the following schedule is established in this matter: 12/17/2010: Defendants' Answer and/or dispositive motion due; 1/14/2011: Plaintiffs' response to Defendants' dispositive motion due; Plaintiffs' motion for summary judgment due; 2/14/2011: Defendants' reply in support of dispositive motion due; Defendants' response to Plaintiffs' motion for summary judgment due; 3/11/2011: Plaintiffs' reply in support of motion for summary judgment due. It is further ORDERED that while no discovery will proceed at this time, Plaintiffs reserve the right to seek discovery after Defendants file a dispositive motion or a response to Plaintiffs' motion for summary judgment. Defendants reserve the right to oppose any such discovery. Plaintiffs' willingness to agree to this schedule at this time will not be a legitimate basis for resisting later discovery. (Ordered by Judge Sam R Cummings on 11/8/2010) (lkw) (Entered: 11/08/2010) |
| 12/13/2010 | 18 | NOTICE of Attorney Appearance by Daniel M Riess on behalf of All Defendants. (Riess, Daniel) (Entered: 12/13/2010) |
| 12/13/2010 | 19 | Unopposed MOTION for Extension of Time to File Dispositive Motion filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson (Attachments: # 1 Proposed Order) (Riess, Daniel) (Entered: 12/13/2010) |
| 12/14/2010 | 20 | ORDER granting 19 Unopposed Motion for Extension of Time to File Dispositive Motion. Defendants' motion due by 12/22/2010. (Ordered by Judge Sam R Cummings on 12/14/2010) (lkw) Modified text on 12/14/2010 (lkw). (Entered: 12/14/2010) |
| 12/22/2010 | 21 | MOTION to Dismiss or, in the Alternative, Motion for Summary Judgment () filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Exhibit(s) 1, # 3 Exhibit (s) 2, # 4 Additional Page(s), # 5 Additional Page(s), # 6 Exhibit(s) 3, # 7 Exhibit(s) 4, # 8 Exhibit(s) 5, # 9 Exhibit(s) 6, # 10 Exhibit(s) 7, # 11 Exhibit(s) 8, # 12 Proposed Order) (Riess, Daniel) (Entered: 12/22/2010) |
| 12/23/2010 | 22 | ADDITIONAL ATTACHMENTS (Certificate of Service) to 21 MOTION to Dismiss or, in the Alternative MOTION for Summary Judgment by Defendants Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson. (Riess, Daniel) (Entered: 12/23/2010) |
| 12/28/2010 | 23 | MOTION for Leave to File Application of Amici Curiae Brady Center to Prevent Gun Violence filed by Brady Center to Prevent Gun Violence with Brief/Memorandum in Support.. Party Brady Center to Prevent Gun Violence added. (Medlock, Scott) (Entered: 12/28/2010) |
| 12/29/2010 | 24 | Application for Admission Pro Hac Vice with Cert. of Good Standing for Attorney Peter A. Patterson (Filing fee $25; Receipt number 0539-3648118) filed by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne (Attachments: # 1 Certificate of Good Standing) (Patterson, Peter) (Entered: 12/29/2010) |
| 12/30/2010 | 25 | ORDER granting 24 Application for Admission Pro Hac Vice of Peter A. Patterson. Clerk shall deposit application fee to the Non-Appropriated Fund of this Court. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Sam R Cummings on 12/30/2010) (bdg) (Entered: 12/30/2010) |
| 01/07/2011 | 26 | Unopposed MOTION to Extend Time of Briefing Deadlines filed by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne (Bustos, Fernando) (Entered: 01/07/2011) |
| 01/10/2011 | 27 | ORDER GRANTING PLAINTIFFS' 26 Unopposed MOTION to Extend Time of Briefing Deadlines filed by James A. D'Cruz, Andrew M. Payne, National Rifle Association of America, Inc. The scheduling order entered November 8, 2010 (Doc. No. 17), is amended as follows: Plaintiffs' deadline to respond to Defendants' Motion for Summary Judgment and to file Plaintiffs' cross-motion for summary judgment is extended two (2) weeks, until January 28, 2011. Plaintiffs' cross-motion for summary judgment is due on March 7, 2011. Plaintiffs' reply brief in support of their upcoming cross-motion for summary judgment is due April 15, 2011. (Ordered by Judge Sam R Cummings on 1/10/2011) (lkw) (Entered: 01/10/2011) |
| 01/26/2011 | 28 | Unopposed MOTION TO CLARIFY AND SET PAGE LIMITS FOR SUMMARY JUDGMENT BRIEFING filed by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne (Bustos, Fernando) (Entered: 01/26/2011) |
| 01/27/2011 | 29 | ORDER granting 23 Motion for Application to File an Amicus Brief in Support of Defendants. Amici curiae shall file their amicus brief within 7 days of the date of this Order. (Ordered by Judge Sam R Cummings on 1/27/2011) (lkw) (Entered: 01/27/2011) |
| 01/27/2011 | 30 | ORDER granting Plaintiffs' 28 Unopposed MOTION TO CLARIFY AND SET PAGE LIMITS FOR SUMMARY JUDGMENT BRIEFING. Plaintiffs' deadline to respond to Defendants' motion for summary judgment and to file Plaintiffs' cross-motion for summary judgment is January 28, 2011; Plaintiffs may file a single, omnibus brief of not more than 75 pages incorporating both Plaintiffs' response to Defendants' motion for summary judgment and Plaintiffs' brief in support of their cross-motion for summary judgment; Defendants' reply brief in support of their motion for summary judgment and Defendants' response to Plaintiffs' cross-motion for summary judgment is due March 7, 2011; and Plaintiffs' reply brief in support of their cross-motion for summary judgment is due April 15, 2011. (Ordered by Judge Sam R Cummings on 1/27/2011) (lkw) (Entered: 01/27/2011) |

| | | |
|---|---|---|
| 01/28/2011 | 31 | Brief/Memorandum in Support filed by Brady Center to Prevent Gun Violence re 29 Order on Motion for Leave to File *Brief of Amici Curiae in Support of Defendants* (Medlock, Scott) (Entered: 01/28/2011) |
| 01/28/2011 | 32 | MOTION to Amend/Correct *the Complaint* filed by James A. D'Cruz, National Rifle Association of America, Inc., Andrew M. Payne, Rebekah Jennings, Brennan Harmon (Attachments: # 1 Exhibit(s) Second Amended Complaint, # 2 Proposed Order) (Cooper, Charles) (Entered: 01/28/2011) |
| 01/28/2011 | 33 | RESPONSE filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne re: 21 MOTION to Dismiss *or, in the Alternative* MOTION for Summary Judgment (Cooper, Charles) (Entered: 01/28/2011) |
| 01/28/2011 | 34 | Brief/Memorandum in Support filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne re 33 Response/Objection (Cooper, Charles) (Entered: 01/28/2011) |
| 01/28/2011 | 35 | Appendix in Support filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne re 34 Brief/Memorandum in Support of Motion (Cooper, Charles) (Entered: 01/28/2011) |
| 02/08/2011 | 36 | *Consent* MOTION for Extension of Time to File Response/Reply re: 33 Response/Objection filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson (Attachments: # 1 Proposed Order) (Riess, Daniel) (Entered: 02/08/2011) |
| 02/10/2011 | 37 | ORDER granting 32 Motion to Amend the Complaint, Plaintiff D'Cruz's Motion to Withdraw as a Party Plaintiff, and Non-Parties Rebekah Jennings' and Brennan Harmon's Motion to Join as Party-Plaintiffs, together with 36 Defendants' Notice of Consent. Plaintiffs shall have seven (7) days to file their Second Amended Complaint for Declaratory Judgment and Injunctive Relief. (Ordered by Judge Sam R Cummings on 2/10/2011) (lkw) Modified text on 2/10/2011 (lkw). (Entered: 02/10/2011) |
| 02/10/2011 | 38 | ORDER granting 36 Defendants' Consent Motion for Extension of Time to File Responsive Briefs. Defendants shall file their response to Plaintiffs' cross-motion for summary judgment and reply brief in support in Defendants' motion for summary judgment by April 6, 2011, and Plaintiffs shall file their brief in support of their cross-motion for summary judgment by May 18, 2011. (Ordered by Judge Sam R Cummings on 2/10/2011) (lkw) (Entered: 02/10/2011) |
| 02/11/2011 | 39 | AMENDED COMPLAINT *(SECOND)* against Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson filed by National Rifle Association of America, Inc., Andrew M. Payne, Rebekah Jennings, Brennan Harmon. (Bustos, Fernando) Modified text to add Andrew M. Payne on 2/11/2011 (cb). (Entered: 02/11/2011) |
| 02/11/2011 | 40 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Brennan Harmon, Rebekah Jennings, Andrew Payne, and National Rifle Association of America, Inc. (Bustos, Fernando) Modified text add Andrew Payne on 2/14/2011 (lkw). (Entered: 02/11/2011) |
| 02/11/2011 | 41 | Certificate of Service by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne as to 40 Cert. Of Interested Persons/Disclosure Statement. (Bustos, Fernando) Modified text on 2/14/2011 (lkw). (Entered: 02/11/2011) |
| 02/24/2011 | 42 | MOTION to Withdraw as Attorney filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne (Panuccio, Jesse) (Entered: 02/24/2011) |
| 02/25/2011 | 43 | ORDER granting 42 Motion to Withdraw as Attorney. Attorney Jesse Panuccio terminated. (Ordered by Judge Sam R Cummings on 2/25/2011) (bdg) (Entered: 02/25/2011) |
| 03/28/2011 | 44 | Consent MOTION to Set Page Limits for Summary Judgment Briefing filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson (Attachments: # 1 Proposed Order) (Riess, Daniel) (Entered: 03/28/2011) |
| 03/30/2011 | 45 | ORDER granting 44 Motion to Set Page Limits for Summary Judgment Briefing. It is therefore ORDERED that on or before April 6, 2011, Defendants may file a single, omnibus brief of not more than 75 pages incorporating both Defendants' response to Plaintiffs' cross-motion for summary judgment and Defendants' reply brief in support of their motion for summary judgment. (Ordered by Judge Sam R Cummings on 3/30/2011) (bdg) (Entered: 03/30/2011) |
| 04/05/2011 | 46 | NOTICE of Attorney Appearance by Jessica Beth Leinwand-DOJ on behalf of Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson. (Leinwand-DOJ, Jessica) (Entered: 04/05/2011) |
| 04/06/2011 | 47 | REPLY filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson re: 21 MOTION to Dismiss *or, in the Alternative* MOTION for Summary Judgment (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s)) (Riess, Daniel) (Entered: 04/06/2011) |
| 04/06/2011 | 48 | Appendix in Support filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson re 47 Reply, *and Response to Plaintiffs' Cross-Motion for Summary Judgment* (Attachments: # 1 Additional Page(s)) (Riess, Daniel) (Entered: 04/06/2011) |
| 04/29/2011 | 49 | Application for Admission Pro Hac Vice with Cert. of Good Standing for Attorney Brian S. Koukoutchos (Filing fee $25; Receipt number 0539-3859067) filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne (Koukoutchos, Brian) (Entered: 04/29/2011) |
| 05/02/2011 | 50 | ORDER granting 49 Application for Admission Pro Hac Vice of Brian S. Koukoutchos. Clerk shall deposit application fee to the Non-Appropriated Fund of this Court. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Sam R Cummings on 5/2/2011) (lkw) (Entered: 05/02/2011) |
| 05/12/2011 | 51 | NOTICE *of Recent Authority* filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson (Attachments: # 1 Exhibit(s), # 2 Exhibit(s)) (Riess, Daniel) (Entered: 05/12/2011) |
| 05/18/2011 | 52 | REPLY filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne re: 47 Reply, (Cooper, Charles) (Entered: 05/18/2011) |
| 07/18/2011 | 53 | Unopposed MOTION for Leave to File Notice of Supplemental Authority filed by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne (Attachments: # 1 Exhibit(s) A- Plaintiffs' Notice of Supplemental Authority, # 2 Proposed Order) (Cooper, Charles) (Entered: 07/18/2011) |
| 07/18/2011 | 54 | ORDER granting 53 Plaintiffs' Motion for Leave to File Notice of Supplemental Authority. (Ordered by Judge Sam R Cummings on 7/18/2011) (lkw) (Entered: 07/18/2011) |
| 07/18/2011 | 55 | Supplemental Document by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne as to 33 Response/Objection *Notice of Supplemental Authority*. (Attachments: # 1 Exhibit(s) A) (Cooper, Charles) (Entered: 07/18/2011) |
| 07/22/2011 | 56 | Unopposed MOTION for Leave to File Response to Plaintiffs' Notice of Supplemental Authority filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson (Attachments: # 1 Exhibit(s) 1 --- Defendants' Response to Plaintiffs' Notice of Supplemental Authority, # 2 Proposed Order) (Riess, Daniel) (Entered: 07/22/2011) |
| 07/22/2011 | 57 | ORDER granting 56 Defendants' Unopposed Motion for Leave to File Response to Plaintiffs' Notice of Supplemental Authority, filed July 22, 2011. Defendants should file their response within 7 days of the date of this Order. (Ordered by Judge Sam R Cummings on 7/22/2011) (lkw) (Entered: 07/22/2011) |

| | | |
|---|---|---|
| 07/22/2011 | 58 | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives, Eric H. Holder, Jr, Kenneth Melson re: 55 Supplemental Document (Riess, Daniel) (Entered: 07/22/2011) |
| 09/29/2011 | 59 | ORDER denying 21 Motion to Dismiss; granting 21 Motion for Summary Judgment. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) is DENIED; as to the Second Amendment issue, Defendants' Motion for Summary Judgment is GRANTED, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is DENIED as moot, and Plaintiffs' Motion for Summary Judgment is DENIED; and as to the Equal Protection issue, Defendants' Motion for Summary Judgment is GRANTED, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is DENIED as moot, and Plaintiffs' Motion for Summary Judgment is DENIED. (Ordered by Judge Sam R Cummings on 9/29/2011) (lkw) (Entered: 09/29/2011) |
| 09/29/2011 | 60 | JUDGMENT: For the reasons stated in the Court's order of even date, IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Rebekah Jennings, Brennan Harmon, Andrew Payne, and National Rifle Association of America, Inc., take nothing as against Defendants, the Bureau of Alcohol, Tobacco, Firearms and Explosives; Kenneth E. Melson, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States. Costs of court are taxed against Plaintiffs. (Ordered by Judge Sam R Cummings on 9/29/2011) (lkw) (Entered: 09/29/2011) |
| 10/04/2011 | 61 | NOTICE OF APPEAL to the Fifth Circuit as to 60 Judgment,, by Brennan Harmon, Rebekah Jennings, National Rifle Association of America, Inc., Andrew M. Payne. Filing fee $455, receipt number 0539-4158710. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. (Cooper, Charles) (Entered: 10/04/2011) |
| 10/11/2011 | | Record on Appeal for USCA5 11-10959 (related to 61 appeal): Record consisting of: 1 ECF electronic record, certified to USCA. To request a copy of the record (on disk or on paper), contact the appeals deputy in advance to arrange delivery. (lkw) (Entered: 10/11/2011) |
| 10/13/2011 | | Record on Appeal for USCA5 11-10959 (related to 61 appeal): transmitted to Charles J Cooper on disk only sent by mail. (lkw) (Entered: 10/13/2011) |
| 10/17/2011 | 62 | Transcript Order Form: re 61 Notice of Appeal, transcript not requested. (Cooper, Charles) (Entered: 10/17/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/02/2011 15:23:57 | | |
| **PACER Login:** | cc0358 | **Client Code:** | 334-0 |
| **Description:** | Docket Report | **Search Criteria:** | 5:10-cv-00140-C |
| **Billable Pages:** | 10 | **Cost:** | 0.80 |

Tab 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **REBEKAH JENNINGS; BRENNAN** | § | |
| **HARMON; ANDREW PAYNE;** | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | |
| **AMERICA, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Case No. 5:10-cv-00140-C** |
| **v.** | § | **Judge Sam R. Cummings** |
| | § | |
| **THE BUREAU OF ALCOHOL,** | § | |
| **TOBACCO, FIREARMS, AND** | § | |
| **EXPLOSIVES; KENNETH E. MELSON,** | § | |
| **in his official capacity as Acting Director** | § | |
| **of the Bureau of Alcohol, Tobacco,** | § | |
| **Firearms, and Explosives; ERIC** | § | |
| **HOLDER, in his official capacity as** | § | |
| **Attorney General of the United States,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' NOTICE OF APPEAL

Notice is hereby given that Plaintiffs, Rebekah Jennings, Brennan Harmon, Andrew

Payne, and National Rifle Association of America, Inc., appeal to the United States Court of

Appeals for the Fifth Circuit from the Final Judgment entered in this cause on September 29,

2011, and all adverse rulings subsumed therein.

Dated:  October 4, 2011                    Respectfully submitted,

                                           s/ Charles J. Cooper
Fernando M. Bustos                         Charles J. Cooper*
Texas Bar No. 24001819                     David H. Thompson*
LAW OFFICES OF FERNANDO                     Peter A. Patterson*
   M. BUSTOS, P.C.                          COOPER & KIRK, PLLC
1001 Main Street, Suite 501                1523 New Hampshire Avenue, NW
Lubbock, TX  79401                         Washington, DC 20036
Phone (806) 780-3976; Fax: (806) 780-3800  Tel: (202) 220-9600; Fax: (202) 220-9601
*Local Counsel for Plaintiffs*             Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA  70471
Tel. (985) 626-5052
Email: bkoukoutchos@gmail.com
* Admitted *pro had vice.*

*Counsel for Plaintiffs*


**CERTIFICATE OF SERVICE**

On October 4, 2011, I electronically submitted the foregoing document to the clerk of

court for the U.S. District Court, Northern District of Texas, using the electronic case filing

system of the court.  I hereby certify that I have served all counsel and/or *pro se* parties of record

electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


s/ Charles J. Cooper
Charles J. Cooper

Tab 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

REBEKAH JENNINGS; BRENNAN          )
HARMON; ANDREW PAYNE;              )
NATIONAL RIFLE ASSOCIATION OF      )
AMERICA, INC.,                     )
                                   )
              Plaintiffs,          )
                                   )
v.                                 )
                                   )
THE BUREAU OF ALCOHOL,             )
TOBACCO, FIREARMS AND              )
EXPLOSIVES, et al.,                )
                                   )
              Defendants.          )    Civil Action No. 5:10-CV-140-C

**<u>JUDGMENT</u>**

For the reasons stated in the Court's order of even date,

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Rebekah Jennings,

Brennan Harmon, Andrew Payne, and National Rifle Association of America, Inc., take nothing

as against Defendants, the Bureau of Alcohol, Tobacco, Firearms and Explosives; Kenneth E.

Melson, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms

and Explosives; and Eric H. Holder, Jr., in his official capacity as Attorney General of the United

States.  Costs of court are taxed against Plaintiffs.

Dated September 29, 2011.


SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE

Tab 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

REBEKAH JENNINGS; BRENNAN          )
HARMON; ANDREW PAYNE;              )
NATIONAL RIFLE ASSOCIATION OF      )
AMERICA, INC.,                     )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )
                                   )
THE BUREAU OF ALCOHOL,             )
TOBACCO, FIREARMS AND              )
EXPLOSIVES, et al.,                )
                                   )
            Defendants.            )   Civil Action No. 5:10-CV-140-C

**ORDER**

On this date, the Court considered:

(1)     Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives; Kenneth E.
        Melson, in his official capacity as Acting Director of the Bureau of Alcohol,
        Tobacco, Firearms and Explosives; and Eric H. Holder, Jr., in his official capacity
        as Attorney General of the United States' ("Defendants") Motion to Dismiss or,
        in the Alternative, for Summary Judgment, Brief, and Appendix, filed December
        22, 2010;

(2)     Plaintiffs' Response and Cross-Motion for Summary Judgment, Brief, and
        Appendix, filed January 28, 2011;

(3)     Defendants' Combined Reply in Support of their Motion to Dismiss or, in the
        Alternative, for Summary Judgment and Response to Plaintiffs' Cross-Motion for
        Summary Judgment, Brief, and Appendix, filed April 6, 2011;

(4)     Plaintiffs' Reply in Support of Plaintiffs' Cross-Motion for Summary Judgment,
        filed May 18, 2011;

(5)     Defendants' Notice of Recent Authority, filed May 12, 2011;

(6)     Plaintiffs' Notice of Supplemental Authority, filed July 18, 2011;

USCA5 1093

(7)     Defendants' Response, filed July 22, 2011; and

(8)     Brief of *Amici Curiae* Brady Center to Prevent Gun Violence, Graduate Student
        Assembly and Student Government of the University of Texas at Austin, Mothers
        Against Teen Violence, Students for Gun-Free Schools in Texas, and Texas
        Chapters of the Brady Campaign to Prevent Gun Violence in Support of
        Defendants, filed January 28, 2011.

After considering the relevant arguments and authorities, the Court **DENIES** Defendants'

Motion to Dismiss Pursuant to Rule 12(b)(1), **GRANTS** Defendants' Motion for Summary

Judgment, **DENIES** as moot Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), and

**DENIES** Plaintiffs' Cross-Motion for Summary Judgment.

## I.  FACTS

### a.  Preliminary Statement

Plaintiffs bring this action for declaratory judgment and injunctive relief challenging the

constitutionality of federal statutes and regulations that ban the sale by federal firearm license

holders ("FFLs") of handguns and handgun ammunition to persons under the age of twenty-one

("the ban").  The crux of Plaintiffs' allegations is that the ban violates both the Second

Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution.

### b.  Statutory Scheme

The statutes and regulations that implement the ban, and thus are the subject of this

lawsuit, are the following:

(1)     18 U.S.C. § 922(b)(1), which states: "It shall be unlawful for any licensed
        importer, licensed manufacturer, licensed dealer, or licensed collector to
        sell or deliver any firearm or ammunition to any individual who the
        licensee knows or has reasonable cause to believe is less than eighteen
        years of age, and, if the firearm, or ammunition is other than a shotgun or
        rifle, or ammunition for a shotgun or rifle, to any individual who the

USCA5 1094

licensee knows or has reasonable cause to believe is less than twenty-one years of age."

(2)     18 U.S.C. § 922(c)(1), which prescribes that "a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises . . . only if" the person signs a sworn statement attesting "that, in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age."

(3)     27 C.F.R. § 478.99(b)(1), which provides: "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver any firearm or ammunition . . . if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age."

(4)     27 C.F.R. §§ 478.124(a), 478.96(b), which require that federal firearms licensees obtain a signed copy of Form 4473 before transferring a handgun to a purchaser.  Form 4473 states that the information provided therein "will be used to determine whether [the transferee is] prohibited under law from receiving a firearm" and instructs licensees that it is "unlawful for a licensee to sell any firearm other than a shotgun or rifle to any person under the age of 21."[1]

Each of these laws operates in reference to FFLs.  Title 18, Section 922(a)(1)(A) of the

U.S. Code requires any person who "engage[s] in the business of importing, manufacturing, or

dealing in firearms" to obtain a federal firearms license.  A firearms "dealer," in turn, is any

person who, inter alia, "engage[s] in the business of selling firearms at wholesale or retail,"

including pawnbrokers.  18 U.S.C. § 921(a)(11)(A), (C).  A person "engage[s] in the business"

of selling firearms, and therefore must obtain a federal firearms license, if he "devotes time,

attention, and labor to dealing in firearms as a regular course of trade or business with the

principal objective of livelihood and profit through the repetitive purchase and resale of

---

[1]Plaintiffs do not challenge 18 U.S.C. § 922(x), which prohibits anyone, not just FFLs, from transferring handguns to individuals under 18 and also prohibits individuals under 18 from possessing handguns, subject to specified exceptions.

USCA5 1095

firearms." *Id.* § 921(a)(21)(C).  In other words, anyone who engages in the firearms business regularly must become an FFL, and the ban therefore forecloses 18- to 20-year-olds from gaining access to the entire licensed market for handguns and handgun ammunition.  The ban, however, does not apply to other avenues such as gifts or to those who sell arms on an irregular basis only.[2]

### c. Plaintiffs

Rebekah Jennings is a 19-year-old resident of Boerne, Texas.  She is a decorated competitive pistol shooter but does not own a pistol of her own and must rely on her father to loan her his pistol for practice and competition.  Jennings reportedly desires to purchase her own handgun from an FFL, both for her self-protection and to further her interest in competitive pistol shooting.

Brennan Harmon is a 19-year-old resident of San Antonio, Texas, where she lives alone in an apartment.  There have been shooting incidents in apartment complexes that neighbor Harmon's apartment.  Harmon's family owns several firearms, and her father has instructed her in their proper and safe handling.  Harmon currently owns a rifle and a shotgun, but she does not own a handgun.  She finds the long guns insufficient for self-defense.  Harmon therefore desires to own a handgun for self-defense and other lawful purposes, and she would purchase one from an FFL if such a transaction were not prohibited under the ban.

---

[2]The Court emphasizes that the ban does *not* prohibit the possession of handguns or handgun ammunition by 18- to 20-year-olds.  Those in this age group are free to acquire handguns and ammunition from sources other than FFLs.  Even still, the ban is temporal in nature, meaning the prohibition expires once the would-be buyer reaches the age of 21.

4

USCA5 1096

Andrew Payne is an 18-year-old resident of Lubbock, Texas.  Payne and his father visit shooting ranges for recreation and to gain proficiency in the effective use of firearms, including handguns.  Payne does not own a handgun, but he would purchase a handgun and handgun ammunition if such a transaction were not illegal under the ban.

The National Rifle Association ("NRA") is a membership organization committed to protecting and defending the fundamental right to keep and bear arms, as well as the safe and responsible use of firearms for self-defense and other lawful purposes.  Many of the NRA's members are 18-to-20 years old or will enter that age bracket during the pendency of this litigation.  Under the ban, these members are unable to purchase a handgun or handgun ammunition from an FFL.

One representative NRA member in this class is Halie Fewkes, a 19-year-old resident of Washington.  She lives in Pullman, where she attends college.  She plans to live in an off-campus apartment next semester, and she would like to purchase a new handgun to keep in that apartment for self-defense and for use in target shooting.  The ban, however, prevents her from purchasing a handgun from a licensed dealer.  She is not aware of anyone she knows selling a used firearm, and she is uncomfortable with the idea of engaging in a face-to-face transaction with an unlicensed stranger.

The NRA's licensed dealer members also allege to be harmed by the ban, as the law prohibits them from making profitable handgun sales and handgun ammunition sales to otherwise qualified 18- to 20-year-olds.  Roger Koeppe and Paul White are two such members; they own and operate FFLs in Houston, Texas, and Richmond, Utah, respectively.

USCA5 1097

## II.  STANDARDS

### a.  Motion to Dismiss

A court must dismiss a claim pursuant to a Rule 12(b)(1) motion if it lacks subject matter jurisdiction over the claim asserted in the complaint.  Fed. R. Civ. P. 12(b)(1).  If a Rule 12(b)(1) motion is filed conjunctively with any other Rule 12 motions, the court should consider the Rule 12(b)(1) attack first.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The party seeking the federal forum bears the burden of establishing jurisdiction.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Standing is one aspect of justiciability, and a federal court's jurisdiction is invoked only when the plaintiff has actually suffered injury resulting from the conduct of the defendant. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) ("[T]he constitutional limitation continues to arise when plaintiff fails to allege a personalized injury.").  Additionally, because Article III standing requires an injury-in-fact caused by a defendant's challenged conduct that is redressable by a court, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), a party is ordinarily denied standing to assert the rights of third persons.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263-64 (1977).

### b.  Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); that is, "[a]n issue is material if its resolution could affect the outcome of the action."

USCA5 1098

*Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002).  When reviewing a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006).  In doing so, the court "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Where parties have filed cross-motions for summary judgment, the court must consider each motion separately because each movant bears the burden of showing that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law.  *Shaw Constructors, Inc. v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

### III.  ANALYSIS

#### a.  Standing

Defendants challenge the standing to bring suit of both firearms dealers subject to the ban's criminal prohibition and the 18- to 20-year-olds whose constitutional rights are allegedly burdened by the statutory scheme.  Article III restricts the judicial power to actual "cases" and "controversies," a limitation understood to confine the federal judiciary to "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1148 (2009); *see* U.S. Const. art. III, § 1.  The doctrine of standing enforces this limitation.  *Summers*, 129 S. Ct. at 1149; *Lujan*, 504 U.S. at 559-60.

In general, individuals who allege that their constitutional rights are burdened by a law have standing to sue.  In *Doe v. Bolton*, for example, the Supreme Court held that not only "Georgia-licensed doctors consulted by pregnant women" but also a pregnant woman herself has

USCA5 1099

standing to challenge a statute criminalizing the provisions of most abortions even though "[t]he physician [was] the one against whom these criminal statutes directly operate[d] . . . ."  410 U.S. 179, 187-88 (1973); *see also Roe v. Wade*, 410 U.S. 113, 124 (1973) (holding that "a pregnant single woman thwarted by the Texas criminal abortion laws, had standing to challenge those statutes.").  Similarly, in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, the Court allowed a challenge to a statute prohibiting pharmacists from advertising their prices for prescription drugs brought "not by one directly subject to its prohibition, that is, a pharmacist, but by prescription drug consumers who claim they would greatly benefit if the prohibition were lifted and advertising freely allowed."  425 U.S. 748, 753 (1976).

The Individual Plaintiffs do not own handguns, but each of them desires to obtain one for lawful purposes, including self-defense.  They have all identified a specific handgun they would purchase from an FFL if lawfully permitted to do so.  The FFLs from whom Harmon and Payne would purchase their handguns have refused to sell them handguns in the past because they are under 21.  Were the Court to hold that the ban is unconstitutional, it could provide the relief that Plaintiffs seek.  Therefore, the Individual Plaintiffs have standing to sue even though they have not been threatened with or been subject to prosecution under the ban.

Once a court has determined that at least one plaintiff has standing, it need not consider whether the remaining plaintiffs have standing to maintain the suit.  *Arlington Heights*, 429 U.S. at 264.  Nevertheless, out of an abundance of caution, the Court will address whether the NRA, as an association or organization, has standing as well.

8

USCA5 1100

An association may have standing solely as the representative of its members, even in the absence of injury to itself.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1972). The test for representational standing requires that

(1)     the members of the association would have standing individually,

(2)     the interests pursued through the litigation are germane to the

        association's purpose, and

(3)     neither the claim asserted nor the relief requested requires the participation

        of individual members in the lawsuit.

*Nat'l Treasury Emps. Union v. United States Dep't of the Treasury*, 25 F.3d 237, 241 (5th Cir. 1994) (citing *Hunt*, 432 U.S. at 343).

The NRA has a stated interest in vindicating the Second Amendment rights of its membership, and this suit does not require the participation of its individual members in light of the equitable relief it seeks.  Furthermore, in addition to Jennings, Harmon, and Payne, whom the Court has held have standing and each of whom is an NRA member, the NRA presents evidence of several other similarly situated members between the ages of 18 and 20 who allege to have been injured by the ban in ways similar to those asserted by the Individual Plaintiffs.  Therefore, the NRA has standing to bring this suit on behalf of its law-abiding 18- to 20-year-old members.

The NRA also brings this suit on behalf of its FFL, or vendor, members.  As the Supreme Court has explained, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function."  *Craig v. Boren*, 429 U.S. 190, 195 (1976) (collecting cases). In *Craig*, for example, the Supreme Court held that a licensed vendor of low-alcohol beer had

9

USCA5 1101

standing to challenge an Oklahoma statute that barred the vendor from selling such beer to 18- to 20-year-old men but allowed its sale to 18- to 20-year-old women.  As the Court noted:

> The legal duties created by the statutory sections under challenge are addressed directly to vendors such as appellant.  She is obliged either to heed the statutory discrimination, thereby incurring a direct economic injury through the constriction of her buyers' market, or to disobey the statutory command and suffer, in the words of Oklahoma's Assistant Attorney General, "sanctions and perhaps loss of license."  This Court repeatedly has recognized that such injuries establish the threshold requirements of a "case or controversy" mandated by Art. III.

*Id.* at 194 (internal citations omitted).  The Court further held that "[a]s a vendor with standing to challenge the lawfulness of [the sales restriction], appellant . . . is entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force."  *Id.* at 195.  "Otherwise," explained the Court, "the threatened imposition of governmental sanctions might deter appellant . . . and other similarly situated vendors from selling 3.2% beer to young males, thereby ensuring that 'enforcement of the challenged restriction against the [vendor] would result indirectly in the violation of third parties' rights.'"  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 510 (1975)).

Both the Supreme Court and the Fifth Circuit have repeatedly applied this rationale to hold that vendors and service providers have standing to challenge sales and similar restrictions that burden their would-be customers' constitutional rights.  *See, e.g.*, *Carey v. Population Servs. Int'l*, 431 U.S. 678, 681-84 (holding that "corporation primarily engaged in the mail-order retail sale of nonmedical contraceptive devices" had standing to challenge a statute that made it a crime, *inter alia*, "for anyone other than a licensed pharmacist to distribute contraceptives to persons 16 or over" and could assert the privacy rights of its would-be customers); *Reliable*

USCA5 1102

*Consultants, Inc. v. Earle*, 517 F.3d 738, 740, 743 (5th Cir. 2008) (vendor had standing to challenge statute criminalizing the sale of "a device designed or marketed for sexual stimulation" and could assert the constitutional rights of its customers); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 333-34 (5th Cir. 1981) (holding that plaintiffs who wished to open an abortion clinic had standing to challenge an adverse zoning decision and could assert the rights of their would-be clients); *see generally United States v. Coil*, 442 F.3d 912, 915 n.2 (5th Cir. 2006) ("The Supreme Court has consistently upheld the standing of vendors to challenge the constitutionality of statutes on their customers' behalf where those statutes are directed at the activity of the vendors.").

The ban prevents 18- to 20-year-olds from purchasing handguns and handgun ammunition from FFLs who would likely purchase these items were it legal to do so. The NRA presents evidence from its vendor members that they have lost profits from refusing to sell handguns to 18- to 20-year-olds and would sell handguns to law-abiding citizens in this age range if it were legal to do so. The fact that the ban restricts a would-be buyers' market demonstrates a judicially cognizable injury directly affecting FFLs. *See Craig*, 429 U.S. at 194. As such, the NRA also has standing to bring this suit on behalf of its FFL members. Therefore, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**.

### b. Second Amendment

The text of the Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court held in *District of Columbia v. Heller* that

11

USCA5 1103

the Second Amendment guarantees an individual right to possess and carry weapons.  554 U.S.

570, 592 (2008).  The Court stated, however, that the right to bear arms is not absolute:

> Like most rights, the right secured by the Second Amendment is
> not unlimited.  From Blackstone through the 19th-century cases,
> commentators and courts routinely explained that the right was not
> a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose.  For example, the majority
> of the 19th-century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the
> Second Amendment or state analogues.  Although we do not
> undertake an exhaustive historical analysis today of the full scope
> of the Second Amendment, ***nothing in our opinion should be
> taken to cast doubt on*** longstanding prohibitions on the possession
> of firearms by felons and the mentally ill, or laws forbidding the
> carrying of firearms in sensitive places such as schools and
> government buildings, or ***laws imposing conditions and
> qualifications on the commercial sale of arms***.

*Heller*, 554 U.S. at 626-27 (citations omitted and emphasis added).  In so qualifying the Second

Amendment, the Court carved out conditions and qualifications on the commercial sale of arms

as presumptively lawful regulatory measures.  *See id.* at 627 n.26.

   While this Court has found no case dealing with a post-*Heller* interpretation of the ban,

most courts that have considered challenges to other above-mentioned presumptively lawful

regulations have made relatively short shrift of them.  *See, e.g.*, *United States v. Scroggins*, 599

F.3d 433, 451 (5th Cir. 2010) (post-*Heller* decision upholding as constitutional 18 U.S.C.

§ 922(g)(1), which criminalizes the possession of a firearm by a felon); *United States v.

Dorosan*, 350 F. App'x 874, 875-76 (5th Cir. 2009) (upholding as constitutional under the

"sensitive places" exception in *Heller* 39 C.F.R. § 232.1(l), which criminalizes bringing a

handgun onto property belonging to the United States Postal Service); *United States v. McRobie*,

No. 08-4632, 2009 U.S. App. LEXIS 617, at *2-3 (4th Cir. 2009) (post-*Heller* decision

12

USCA5 1104

upholding as constitutional 18 U.S.C. § 922(g)(4), which criminalizes the possession of a firearm by a person committed to a mental institution).  The Court finds no reason to treat laws imposing conditions and qualifications on the commercial sale of arms, such as the ban, any differently.

Outside the list of examples of presumptively lawful limitations, neither *Heller* nor its companion case, *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), directly addresses the buying and selling of firearms, let alone holds this to be at the "core" of the Second Amendment right.  The Fifth Circuit, however, has recognized a distinction between the right to "keep and bear arms" and "dealing in firearms" and has held that at least one statutory scheme related to dealing in firearms is not violative of the Second Amendment.  *See United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976).  Although *King* was decided pre-*Heller*, its holding is likely of the nature contemplated by the Court's articulated exceptions to the Second Amendment.

The Fifth Circuit, albeit pre-*Heller*, has also recognized that young persons do not enjoy the same guarantees of the Second Amendment as do their elders of society.  In *United States v. Emerson*, the court held that the Second Amendment protects an individual right to bear arms but also noted that "felons, *infants* and those of unsound mind may be prohibited from possessing firearms."  270 F.3d 203, 261 (5th Cir. 2001) (emphasis added); *see also id.* at 227 n.21 (quoting Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 Okla L. Rev. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded *infants*, idiots, lunatics, and felons [from possessing firearms].")); Stephen P. Halbrook, *What the Framers Intended*: A Linguistic Analysis of the Right to "Bear Arms", 49 Law & Contemp. Probs. 151 (1986) ("violent criminals, *children*, and those of unsound mind may be deprived of firearms . . . .") (alterations in the

13

USCA5 1105

original and emphasis added)).  The exception to the right to bear arms carved out for "infants" in *Emerson* seems to be congruent with the notion in *Heller* that conditions and qualifications on the commercial sale of arms are presumptively lawful regulatory measures.

Considering *Heller's* specific exception of conditions and qualifications on the commercial sale of arms from the individual right to keep and bear arms, along with the Fifth Circuit's treatment of the distinction between possession and dealing of firearms and its exempting young persons from Second Amendment guarantees, the Court is of the opinion that the ban does not run afoul of the Second Amendment to the Constitution.  *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (citing *Heller*, 128 S. Ct. at 2817) (suggesting that, under a proper reading of *Heller*, the right to bear arms is enjoyed only by those not disqualified from the exercise of the Second Amendment rights; disqualification likely includes those affected by the aforementioned presumptively lawful regulatory measures).

In essence, it is within the purview of Congress, not the courts, to weigh the relative policy considerations and to make decisions as to the age of the customer to whom those licensed by the federal government may sell handguns and handgun ammunition.  *See Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) ("Under the system of government created by our Constitution, it is up to the legislatures, not courts, to decide on the wisdom and utility of legislation.").  Therefore, with regard to the Second Amendment issue, Defendants' Motion for Summary Judgment is **GRANTED**, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is **DENIED** as moot, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

USCA5 1106

### c. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Although this clause applies expressly to the states only, the Supreme Court has held that its protections are encompassed by the Due Process Clause of the Fifth Amendment and are therefore applicable to the federal government as well.  *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).  Plaintiffs claim that the ban violates their right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment.  The focus of Plaintiffs' claim is the allegedly unequal treatment effected by the ban between 18- to 20-year-olds and those over the age of 20.

"[A]ge is not a suspect classification under the Equal Protection Clause."  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000).  Therefore, the government "may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."[3]  *Id.*  The Constitution permits legislators to "draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it 'is probably not true' that those reasons are valid in the majority of cases."  *Id.* at 86.

Defendants point to evidence that Congress, in passing the ban, found "that there is a causal relationship between the easy availability of firearms other than rifles and shotguns, and juvenile and youthful criminal behavior, and that such firearms have been widely *sold by*

---

[3]Because the Court has held that Plaintiffs' claims do not raise Second Amendment concerns, their Equal Protection argument need not be evaluated based on any heightened standard of scrutiny.

15

USCA5 1107

*federally licensed importers and dealers* to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior."  1968 U.S.C.C.A.N. 2112, 2197-98 (emphasis added).  In so finding, Congress passed the ban in an attempt to "increase safety and strengthen local regulation" by "[e]stablishing minimum ages of 18 for the purchase of long guns and 21 for the purchase of handguns."  *Id.* at 2256.

Congress identified a legitimate state interest—public safety—and passed legislation that is rationally related to addressing that issue—the ban; thus, it acted within its constitutional powers and in accordance with the Equal Protection Clause.  *See Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004) (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) ("Under rational basis review, differential treatment 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'")).  Therefore, with regard to the Equal Protection issue, Defendants' Motion for Summary Judgment is **GRANTED**, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is **DENIED** as moot, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

## IV.  CONCLUSION

For the reasons stated herein,

(1)     Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) is **DENIED**;

(2)     as to the Second Amendment issue,

    (a)     Defendants' Motion for Summary Judgment is **GRANTED**,

    (b)     Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is **DENIED** as moot, and

    (c)     Plaintiffs' Motion for Summary Judgment is **DENIED**; and

16

USCA5 1108

    (3)     as to the Equal Protection issue,

         (a)     Defendants' Motion for Summary Judgment is **GRANTED**,

         (b)     Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is

                   **DENIED** as moot, and

         (c)     Plaintiffs' Motion for Summary Judgment is **DENIED**.

SO ORDERED.

Dated September 29, 2011.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE

17

USCA5 1109

Tab 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

|  |  |  |
|---|---|---|
| JAMES D'CRUZ; ANDREW PAYNE; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:10-cv-00140-C |
| THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; KENNETH E. MELSON, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; ERIC HOLDER, in his official capacity as Attorney General of the United States, | ) ) ) ) ) ) ) ) ) ) | Judge Sam R. Cummings |
| Defendants. | ) | |

## DECLARATION OF ROBERT MARCARIO

I, Robert Marcario, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am a resident of Virginia and am over eighteen years of age. My statements herein are based upon personal knowledge and experience.

2. I am the Managing Director of Membership for the National Rifle Association. I have held this position since 1991. In this capacity, I have access to, and personal knowledge of, the NRA's membership information and practices.

3. The NRA has approximately four million members.

4. The NRA does not ask or know the age of all of its members, but for members who joined as Junior Members or Junior Life Members (15 years of age or younger at the time of application), the NRA does ask their age at the time of the membership application. Thus, the NRA can report a minimum number of members who, based on their age at the time of acquiring Junior

1

**App. 1**

Memberships or Junior Life Memberships, are now 18 to 20 years of age.  Likewise, the NRA

can also report the number of members who, based on their age at the time of acquiring Junior

Membership or Junior Life Membership, are now 15 to 17 years of age and will thus turn 18

during the likely pendency of this litigation.  It is important to stress, however, that these

numbers are merely a minimum.  Based on my personal observation and experience in the NRA,

I can report that there are members, including Life Members, between 18 and 20 years of age

(and between 15 and 17 years of age) who do not report their age as part of their membership

information.

5.  Nationally, the NRA has at least 11,106 members who are currently 18, 19, or 20 years of age,

and at least 9,447 members who are currently 15, 16, or 17 years of age.  These numbers include

both Life and annual members.

6.  In Texas, the NRA has at least 710 members who are currently 18, 19, or 20 years of age, and at

least 639 members who are currently 15, 16, or 17 years of age. These numbers include both Life

and annual members.

7.  Within the geographic region that is covered by the United States District Court for the Northern

District of Texas, the NRA has at least 257 members who are currently 18, 19, or 20 years of

age, and at least 186 members who are currently 15, 16, or 17 years of age.  These numbers

include both Life and annual members.

8.  The NRA's members include Federal Firearms Licensees ("FFLs").  Often, an FFL is issued in

the name of a business rather than an individual.  In addition, the NRA's individual membership

application does not ask if the prospective member holds an FFL.  Thus, based on my

observation and experience, many of the NRA's individual members operate firearms

2

**App. 2**

dealerships, but their membership information does not reflect that their business is the holder of an FFL.

9.  Nonetheless, it is still possible to confirm that the NRA has many FFL members.  Businesses may join the NRA as members through our Business Alliance program.  Nationally, the NRA Business Alliance has at least 330 members who list their businesses as "Firearm Dealers."  In Texas, the NRA Business Alliance has at least 24 members who list their businesses as "Firearm Dealers."  Within the geographic region that is covered by the United States District Court for the Northern District of Texas, the NRA Business Alliance has at least four members who list their businesses as "Firearm Dealers."  Again, based on my personal observation and experience, these numbers are merely a minimum because many firearm dealers who hold individual NRA memberships do not join the Business Alliance.

10.  By law, anyone who engages in business as a firearms dealer must have a Federal Firearms License.  It is thus reasonable to assume that all of the BA members who identify as "Firearm Dealers" are holders of FFLs.  But to confirm this point, I have cross-checked our Business Alliance membership list against the BATF's currently available FFL list, which is found at http://www.atf.gov/about/foia/ffl-list.html.  Based on that cross-check I can confirm that nationally, within Texas, and within the Northern District of Texas, members of the NRA Business Alliance hold currently valid FFLs.  Indeed, within the geographic area covered by the U.S. District Court for the Northern District of Texas, the NRA has at least four members of the Business Alliance who have valid FFLs, according to the most recent list made available by the BATF.

3

**App. 3**

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.

Executed on January _28_, 2011

Robert W. Marcario

4

# Tab 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

|  |  |  |
|---|---|---|
| **JAMES D'CRUZ; ANDREW PAYNE; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **Case No. 5:10-cv-00140-C** |
| **THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; KENNETH E. MELSON, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; ERIC HOLDER, in his official capacity as Attorney General of the United States,** | ) ) ) ) ) ) ) ) ) | **Judge Sam R. Cummings** |
| **Defendants.** | ) ) | |

## <u>DECLARATION OF REBEKAH JENNINGS</u>

I, Rebekah Jennings, make the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am a resident of the State of Texas and am over eighteen years of age.  My statements herein are based upon personal knowledge and experience.

2.      I am a nineteen-year-old female and reside in Boerne, Texas.  I attend college in San Antonio, Texas.

3.      I am a member of the National Rifle Association.

4.      At the age of 13, I began competitive pistol shooting.  I have been a member of the U.S. Olympic Development Team for pistol shooting and a member of the Texas State Rifle Association Junior National Team.  Every year since 2005, I have attended the NRA National

**App. 5**

Shooting Championship as a member of the TSRA Junior Team.  Either I, or the relay team of which I am a part, has broken seven national shooting records.

5.      Because I engage in competitive shooting, I have spent thousands of hours practicing the safe and effective use of handguns.  I have spent hundreds of hours discussing proper pistol technique with experts in the field.  I have also taken a firearms course in home safety and defense.  Given this background, I can confidently state that I am extremely well-trained and well-versed in the responsible, proper, safe, and proficient use of handguns for self-defense and other lawful purposes.

6.      I do not own any firearms.  Instead, I use my father's pistols to practice my shooting.

7.      If it were legal, I would purchase my own pistols right now, rather than continuing to borrow pistols from my father.  I would like to own my own pistol because then I could make adjustments to it (such as changing sites, etc.) without asking my father's permission.

8.      I believe handguns are a useful tool for self-defense.  I would like to purchase my own handgun for self-defense purposes.

9.      Under federal law—namely, 18 U.S.C. § 922(b)(1)—it is "unlawful for any … licensed dealer … to sell or deliver … any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age."  Even if I could find a dealer who was willing to break this law and sell me a handgun, I would not engage in the transaction for fear that I would be charged with (i) aiding and abetting, or conspiring to commit, a violation of 18 U.S.C. § 922(b)(1); (ii) violating 18 U.S.C. § 922(u), which states that it is "unlawful for a person … unlawfully take or carry away

**App. 6**

from the person or the premises of a person who is licensed to engage in the business of …

dealing in firearms, any firearm in the licensee's business inventory that has been shipped or

transported in interstate or foreign commerce"; or, (iii) violating 18 U.S.C. § 924(b), which states

"[w]hoever … with knowledge or reasonable cause to believe that an offense punishable by

imprisonment for a term exceeding one year is to be committed therewith, … receives a firearm

or any ammunition in interstate or foreign commerce shall be fined …, or imprisoned not more

than ten years, or both."

10.     Because of these federal laws, I have not and cannot purchase a handgun from a federally

licensed dealer.  If these federal laws did not prohibit me from doing so, I would purchase a

handgun and handgun ammunition from federally licensed dealers.  Specifically, if I could do so

right now, I would purchase a new Beretta 9mm from an FFL.

11.     As a competitive shooter, I am keenly aware of particular details and features of a

handgun that affect its accuracy, reliability, usability, and appropriateness for various scenarios.

When I shop for handguns, it will be important that I be able to choose among these details and

features.  From my experience, I know that only commercial dealers will offer a range of

handguns with a range of important features.  The non-FFL, used-handgun market simply is not

sufficient or reliable for these purposes.  Moreover, when I buy a handgun, it will be important to

know that someone stands behind the product.  A licensed dealer with a commercial business has

incentives to honor warranties, make repairs, and otherwise keep up good customer relations.  A

one-off seller of a used handgun does not have such incentives.  I would thus prefer to buy my

handguns from a licensed dealer.

12.     As a competitive shooter, I know that ammunition must be of the highest quality and not

adulterated or disfigured in any way.  I would not be confident buying old ammunition from a

**App. 7**

private seller.  Instead, I would prefer to buy ammunition from a licensed dealer because I would

know the ammunition came directly from the factory and had been stored safely and properly.

13.     Even putting aside the above reasons, I would not necessarily be comfortable engaging in

a face-to-face sale of a used handgun with a stranger who was not a legitimate and licensed

dealer of firearms.  I would have no way of knowing whether the person was offering a serious

sale, or was instead trying to lure me into a personal meeting while I am in a vulnerable position.

14.     There are websites on which handguns are offered for sale by both FFLs and non-FFLs,

but those websites tend to require shipment through FFLs, so they do not provide a way around

Section 922(b)(1)'s ban on transfers from FFLs.  For example, I have attached to this

Declaration, as Exhibits 1-3, true and correct copies of information pages from GunBroker.com,

GunsAmerica.com, and AuctionArms.com.  Gunbroker.com explains:

> By Federal Law, firearms can only be shipped to an FFL Holder. If you do not
> have an FFL, you must make arrangements with an FFL Holder in your state to
> handle the transfer. We maintain a list of FFL Holders who are willing to handle
> transfers for qualified buyers. Please contact an FFL Holder before placing a bid
> to make sure you qualify.

GunsAmerica.com explains:

> The basic premise of the GA Drop Off Location is that a local FFL Dealer
> handles the transfer of the gun for you. That way the gun is legally out of your
> hands, into his "bound book", and out from him to another FFL dealer in the
> buyer´s state.

AuctionArms.com explains:

> How is using Auction Arms different? Well, you'll still have to go in and
> sign papers, and go through the same legal process of transferring
> ownership of that gun as if you were buying the gun from the dealer
> (unless you're an FFL holder, yourself.)…. How are the transfers
> managed? If you win your firearm at auction, you then find someone in
> your area who is an FFL holder. An FFL (Federal Firearms License)
> holder is someone authorized by the Federal government to manage the
> transfer of firearms. Most people who post weapons at this site are FFL
> holders. Any store that sells firearms (legally) is an FFL holder. They'll be

**App. 8**

able to manage the transfer of your gun from the Seller to you. Of course,
that means you'll have to go find an FFL holder, but there are over 90,000
in this country - we don't think that'll be a problem. Just visit your local
gun store, they'll know what you're talking about.

15.     Although it is legal for my parents to gift me a handgun, they have not done so.  In any

event, as noted above, I want to be able to buy my own handgun so that I can freely choose or

modify the style and features that are best suited to my needs both for competitive shooting and

self-defense purposes.  Additionally, as a legal adult with years of training in the proper and safe

handling of handguns, I do not believe I should have to ask my parents' (or anyone else's)

permission to exercise my right to armed self-defense.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND
CORRECT.

Executed on January _28_, 2011

Rebekah Jennings

**App. 10**

Tab 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

|  |  |  |
|---|---|---|
| **JAMES D'CRUZ; ANDREW PAYNE; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **Case No. 5:10-cv-00140-C** |
| **THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; KENNETH E. MELSON, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; ERIC HOLDER, in his official capacity as Attorney General of the United States,** | ) ) ) ) ) ) ) ) ) ) | **Judge Sam R. Cummings** |
| **Defendants.** | ) | |

## <u>DECLARATION OF BRENNAN HARMON</u>

I, Brennan Harmon, make the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am a resident of the State of Texas and am over eighteen years of age.  My statements herein are based upon personal knowledge and experience.

2.      I am a nineteen year old female and reside in an apartment in San Antonio, Texas.  I do not have any roommates.

3.      I am a member of the National Rifle Association.

4.      My father and other members of my family have owned firearms, including long guns and handguns, for my entire life.  They have owned these firearms for several purposes, including self-defense, hunting, and sport.

**App. 11**

5.      Through my father's instruction, and through personal study, I am well acquainted with the proper and safe handling, use, and storage of firearms and ammunition.

6.      I am the owner of a rifle and a shotgun.  I do not own a handgun.

7.      I do not find either the rifle or the shotgun sufficient for armed self-defense.  First, a handgun would be easier to store in a location that would be more readily accessible in an emergency.  Second, a handgun cannot be easily redirected or wrestled away by an attacker.  Third, I find a handgun easier to use and load, as the long guns require significant upper body strength and are not ideal for fast loading or accurate shooting in emergency situations.  Fourth, a long gun requires two hands for operation, whereas a handgun would leave one hand free to call the police while pointing the gun at an intruder.  Fifth, neither long gun is suitable for carriage outside the home (they are cumbersome and conspicuous), whereas a handgun is suitable for this purpose because of its size and concealable nature.

8.      I believe that it is important for a firearms owner to be well trained in the safe and proper use and storage of their firearms.  I therefore like to practice at firing ranges for this purpose.  I also enjoy target shooting for sport purposes.  Of course, ownership of the rifle and the shotgun does not allow me to engage in target shooting with a handgun.

9.      I desire to own a handgun for self-defense and other lawful purposes.

10.      I am a single female and I live alone in a city with a significant crime rate.  There have been shooting incidents at apartment complexes that neighbor my complex.  I therefore sometimes fear for my safety.  I believe that a handgun would better enable me to protect myself if I were ever approached by a criminal.  If I owned a handgun, I would therefore keep it in my home for self-defense purposes.  To the extent it was consistent with Texas law, I would also sometimes carry a handgun outside the home for self-defense purposes.

**App. 12**

11.     Under federal law—namely, 18 U.S.C. § 922(b)(1)—it is "unlawful for any … licensed

dealer … to sell or deliver … any firearm or ammunition to any individual who the licensee

knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or

ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any

individual who the licensee knows or has reasonable cause to believe is less than twenty-one

years of age."  Even if I could find a dealer who was willing to break this law and sell me a

handgun, I would not engage in the transaction for fear that I would be charged with (i) aiding

and abetting, or conspiring to commit, a violation of 18 U.S.C. § 922(b)(1); (ii) violating 18

U.S.C. § 922(u), which states that it is "unlawful for a person … unlawfully take or carry away

from the person or the premises of a person who is licensed to engage in the business of …

dealing in firearms, any firearm in the licensee's business inventory that has been shipped or

transported in interstate or foreign commerce"; or, (iii) violating 18 U.S.C. § 924(b), which states

"[w]hoever … with knowledge or reasonable cause to believe that an offense punishable by

imprisonment for a term exceeding one year is to be committed therewith, … receives a firearm

or any ammunition in interstate or foreign commerce shall be fined …, or imprisoned not more

than ten years, or both."

12.     Because of these federal laws, I have not and cannot purchase a handgun from a federally

licensed dealer.

13.     If it were legal, I would buy a new handgun from a federally licensed dealer.  In general,

I would like a standard Glock pistol or a .22 caliber handgun.  Recently, I visited a federally

licensed dealer, Bass Pro Shops in San Antonio, and examined its inventory of handguns.  I

identified a Ruger SR9 Compact 9mm and asked whether the dealer would sell it to me.  He

informed me that federal law barred him from selling me this handgun.  If it were not illegal, I would buy this handgun from this dealer now and use it for home- and self-defense.

14.     Although it is legal for my parents to gift me a handgun under federal law, they have not done so.  Moreover, as a legal adult, I do not believe I should have to ask my parents' (or anyone else's) permission to exercise my right to armed self-defense.

15.     I am also aware that, under federal law, it is possible for me to buy a used handgun and corresponding ammunition from a private party that does not regularly engage in firearms sales. I do not find this to be a suitable substitute for the ability to purchase a new handgun and corresponding ammunition from a federally licensed dealer.  There are several reasons for this.

    a.  First, a dealer has a wider selection and competitive prices; a dealer is much more likely to have the handgun I want to buy, when I want to buy it, at a price that is fair and competitive.  A dealer that keeps regular hours and a regular inventory is also likely to have the ammunition I need in stock on a regular basis.  Secondary sellers, by definition, do not keep a permanent stock of handguns or corresponding ammunition, do not have to have competitive prices, and may not be regularly available to engage in sales.

    b.  Second, because I believe that firearms safety is important, I place a premium on knowing that my firearms are in good working order and that my ammunition is in good, usable, safe condition.  I do not believe that a one-off seller of a used handgun and ammunition can make these guarantees—and even if the seller made such guarantees, I would not be comfortable with them.  A retail gun dealer, on the other hand, sells handguns and ammunition that come directly from the manufacturer, with

**App. 14**

all of the assurances, warranties, and safety-checks that accompany most retail sales of new products.

16.     Furthermore, the only kind of used sale I could engage in would be a face-to-face sale.  I could not, for example, take advantage of gun auction websites, because those websites require shipment through FFLs—and FFLs are prohibited by federal law from transferring a handgun to me.

17.     For example, I have attached to this Declaration, as Exhibits 1-3, true and correct copies of information pages from GunBroker.com, GunsAmerica.com, and AuctionArms.com.

Gunbroker.com explains:

> By Federal Law, firearms can only be shipped to an FFL Holder. If you do not have an FFL, you must make arrangements with an FFL Holder in your state to handle the transfer. We maintain a list of FFL Holders who are willing to handle transfers for qualified buyers. Please contact an FFL Holder before placing a bid to make sure you qualify.

GunsAmerica.com explains:

> The basic premise of the GA Drop Off Location is that a local FFL Dealer handles the transfer of the gun for you. That way the gun is legally out of your hands, into his "bound book", and out from him to another FFL dealer in the buyer´s state.

AuctionArms.com explains:

> How is using Auction Arms different? Well, you'll still have to go in and sign papers, and go through the same legal process of transferring ownership of that gun as if you were buying the gun from the dealer (unless you're an FFL holder, yourself.)…. How are the transfers managed? If you win your firearm at auction, you then find someone in your area who is an FFL holder. An FFL (Federal Firearms License) holder is someone authorized by the Federal government to manage the transfer of firearms. Most people who post weapons at this site are FFL holders. Any store that sells firearms (legally) is an FFL holder. They'll be able to manage the transfer of your gun from the Seller to you. Of course, that means you'll have to go find an FFL holder, but there are over 90,000 in this country - we don't think that'll be a problem. Just visit your local gun store, they'll know what you're talking about.

**App. 15**

18.      Even if I could find a stranger willing to sell me a used handgun face-to-face, I would not be comfortable engaging in that transaction.  I would be worried about meeting up with a stranger with a firearm.  This would be equally true whether I invited the seller to my home or traveled to the seller's home.  Indeed, I am not sure which would be worse—but both scenarios would make me very nervous.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.

Executed on January 2̲7̲, 2011

Brennan Harmon

7

Tab 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

|  |  |  |
|---|---|---|
| **JAMES D'CRUZ; ANDREW PAYNE;** | ) | |
| **NATIONAL RIFLE ASSOCIATION OF** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:10-cv-00140-C** |
| | ) | **Judge Sam R. Cummings** |
| **THE BUREAU OF ALCOHOL,** | ) | |
| **TOBACCO, FIREARMS, AND** | ) | |
| **EXPLOSIVES; KENNETH E. MELSON,** | ) | |
| **in his official capacity as Acting Director** | ) | |
| **of the Bureau of Alcohol, Tobacco,** | ) | |
| **Firearms, and Explosives; ERIC** | ) | |
| **HOLDER, in his official capacity as** | ) | |
| **Attorney General of the United States,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF ANDREW PAYNE

I, Andrew Payne, make the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am a resident of Lubbock, Texas and am eighteen years of age.  My statements herein are based upon personal knowledge and experience.

2.      I am a member of the National Rifle Association.

3.      I regularly accompany my father on visits to a shooting range.  We also hunt together. These experiences have provided me with training in the proper and safe handling of firearms, including handguns.  I take firearms safety seriously and I understand the appropriate uses of firearms.  I do not, and would not, use a firearm for an inappropriate or illegal purpose.

4.      I believe that I have the right to self-defense, and that use of arms is the most effective method of self-defense in some circumstances.  I want to own a handgun for purposes of self-defense both inside and outside the home.

5.      I own two long guns, but I do not own any handguns.

6.      I do not find my long guns sufficient for armed self-defense.  A handgun would be easier to retrieve and use in an emergency situation, would be less likely to be wrested away by an attacker, and would leave one hand free to dial the police.  Moreover, long guns are not suitable for carriage outside the home (they are cumbersome and conspicuous), whereas a handgun is suitable for this purpose because of its size and concealable nature.

7.      I understand that under federal law, including 18 U.S.C. § 922(b)(1), it is "unlawful for any … licensed dealer … to sell or deliver … any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age."  Even if I could find a dealer who was willing to break this law and sell me a handgun, I would not engage in the transaction for fear that I would be charged with (i) aiding and abetting, or conspiring to commit, a violation of 18 U.S.C. § 922(b)(1); (ii) violating 18 U.S.C. § 922(u), which states that it is "unlawful for a person … unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of … dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce"; or, (iii) violating 18 U.S.C. § 924(b), which states "[w]hoever … with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, … receives a firearm

**App. 19**

or any ammunition in interstate or foreign commerce shall be fined …, or imprisoned not more than ten years, or both."

8.      Because of these federal laws, I have not and cannot purchase a handgun or handgun ammunition from a federally licensed dealer.

9.      I would like to buy a handgun and handgun ammunition for personal protection and for use at a shooting range.  If it were legal, I would buy a handgun from a federally licensed dealer.

10.     On January 26, 2011, I visited Sharp Shooters, a firearms dealer in Lubbock, Texas. After browsing for a while, I identified a handgun that I wanted to purchase—a new Taurus .357 magnum that was selling for just under $500.  I informed the sales person that I was 18 years of age and asked whether they would sell me the handgun.  The salesperson refused and stated that I was ineligible to purchase the handgun because I was not 21 years of age.  If Sharp Shooters could legally sell me this handgun, I would buy it (or one very similar to it) from that store now.

11.     I want to buy a new handgun.  I do not want to purchase a used handgun or handgun ammunition from a non-dealer.  I want to ensure that my handgun is safe and reliable, and that no improper modifications have been made by anyone.  I think my chances of getting such a gun are greatly increased if I buy it new from a dealer, rather than used from a seller.  For these very reasons, when I bought my two long guns, I bought them new from federally licensed dealers.

12.     I also believe that ammunition sold by a federally licensed dealer would be more trustworthy and safer than old ammunition sold by a non-dealer.  To be safe, ammunition cannot be altered, defaced, or corroded in any way.  When you buy ammunition from a licensed dealer, you know that it comes directly from the manufacturer and has been stored and maintained according to industry standards and controlling laws and regulations.  You do not have any such guarantees when buying old ammunition from a private seller.

**App. 20**

13.     I also believe a federally licensed dealer will have a better selection, better prices, better warranties, and greater knowledge about the products for sale.

14.     Even if I were willing to buy a used handgun from a non-FFL, in my experience it would be very difficult to find one for sale.  I am not aware of any acquaintance, neighbor, or friend who is currently offering a used handgun and handgun ammunition for sale.  I am aware that there are websites where both FFLs and non-FFLs offer new and used guns for sale through Internet-style auctions.  But those websites typically require shipment through FFLs, so they do not provide a way around Section 922(b)(1)'s ban on transfers from FFLs.

15.     For example, I have attached to this Declaration, as Exhibits 1-3, true and correct copies of information pages from GunBroker.com, GunsAmerica.com, and AuctionArms.com.

Gunbroker.com explains:

> By Federal Law, firearms can only be shipped to an FFL Holder. If you do not have an FFL, you must make arrangements with an FFL Holder in your state to handle the transfer. We maintain a list of FFL Holders who are willing to handle transfers for qualified buyers. Please contact an FFL Holder before placing a bid to make sure you qualify.

GunsAmerica.com explains:

> The basic premise of the GA Drop Off Location is that a local FFL Dealer handles the transfer of the gun for you. That way the gun is legally out of your hands, into his "bound book", and out from him to another FFL dealer in the buyer´s state.

AuctionArms.com explains:

> How is using Auction Arms different? Well, you'll still have to go in and sign papers, and go through the same legal process of transferring ownership of that gun as if you were buying the gun from the dealer (unless you're an FFL holder, yourself.)…. How are the transfers managed? If you win your firearm at auction, you then find someone in your area who is an FFL holder. An FFL (Federal Firearms License) holder is someone authorized by the Federal government to manage the transfer of firearms. Most people who post weapons at this site are FFL holders. Any store that sells firearms (legally) is an FFL holder. They'll be

able to manage the transfer of your gun from the Seller to you. Of course,
that means you'll have to go find an FFL holder, but there are over 90,000
in this country - we don't think that'll be a problem. Just visit your local
gun store, they'll know what you're talking about.

16.     My parents have not purchased a handgun for me, and I do not believe I should have to

rely on them to do so in order to exercise my right to own and possess a handgun for self-defense

and other lawful purposes.  I also do not believe it will be feasible to rely on my parents every

time I need ammunition for my handgun.

17.     Aside from my age, I am otherwise qualified to purchase a handgun and handgun

ammunition under federal and state law.

**App. 22**

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.

Executed on January 27, 2011

*Andrew Payne*

Andrew Payne

6

**App. 23**

Tab 9

# EXHIBIT 1

Sign In or Register          For Sellers      For Buyers      My GunBroker      Forums      **Product Center**

The World's Largest Online Auction of Firearms and Accessories™

| View All Categories | Search | All Categories ▾ | | enter keywords here | 🔍 | Advanced Search |

New Buyers      New Sellers      Sell Your Item      Register - It's Free      ❓ Help

## Tools for Buyers

### New Buyers



**Learn More**

| | |
|---|---|
| 💵 | How to Buy |
| $ | Fees & Services |
| ✂ | Tools for Buyers |
| 🚚 | Shipping |
| ❓ | FAQs for Buyers |
| ⊖ | Testimonials |
| FFL | Are you an FFL? |

**Why Buy with GunBroker.com**    Learn the benefits of working with the largest online auction site dedicated to firearms and shooting sports.

**How to Buy**    Learn how to bid on and buy items at GunBroker.com in our detailed buyer's tutorial.

**Register**    Register to buy or sell items on GunBroker.com.

**Buyer's Protection**    Your safety is important to us! Our Buyer's Protection covers items bid on and won at auction.

### Before you Bid

**Find a Transfer Dealer**    By Federal Law, firearms can only be shipped to an FFL Holder. If you do not have an FFL, you must make arrangements with an FFL Holder in your state to handle the transfer. We maintain a list of FFL Holders who are willing to handle transfers for qualified buyers. Please contact an FFL Holder *before placing a bid* to make sure you qualify.

**View User Feedback**    Check the feedback rating of yourself, another bidder, or a seller.

### Tracking your Bids

**My GunBroker**    View your bidding and buying activity organized into various logical views, including **Items I Bid On** and **Items I Won**. You can use **Watch List** to track items you are interested in and view any **Saved Searches** you created.

### After the Auction

**Request User Information**    Retrieve the name and address of a user that you have bought from or sold to.

**Feedback**    Submit feedback on one or more sellers simultaneously.

**Resolving Problems with the Seller**    If you cannot contact the seller, have not received your item, are dissatisfied with your purchase, or have some other problem with a seller, use this form to help resolve the problem.

### Manage your Account

**Edit Account Information**    Change your account information, including your user name, email address, and other contact information.

**Account Status**    Review the financial status of your account, including fees assessed and payments made. You can also print a statement here.

**Opt-in Mail and Newsletter Preferences**    Subscribe to or Unsubscribe from our monthly newsletter or our special promotional offers sent via email.

**Logout**    Logout from GunBroker.com.

### Buyer's Protection

**App. 58**

| | |
|---|---|
| Buyer's Protection | Your safety is important to us! Our Buyer's Protection covers items bid on and won at auction. |
| Fraud Claims | If you have bid on and won an item at GunBroker.com and either have not received the item or received a vastly inferior item you can fill out a Fraud Report. This page tells you how. |

**Third-Party Tools**

| | |
|---|---|
| Escrow Service | An escrow service acts as an intermediary between buyer and seller to ensure that neither side is dissatisfied or gets ripped off during the transaction. Make your purchases with confidence! |
| Get a Free Email Address | Get a free email account from ZapZone. Your email address will be *YourName*@gunbroker.zzn.com |

Make Money with our Affiliate Program      Get your Item Appraised      Dealer Services for FFL Holders      Join our Banner Exchange



**GunBroker.com - The World's Largest Online Auction of Firearms and Accessories™**
Copyright © 1999-2011 GunBroker.com, LLC. "GunBroker.com", the bullet logo, and "The Bidding Starts Now" are registered trademarks used under license. All Rights Reserved Worldwide (WEB7 4.1.25.34)

Contact Us | Privacy Policy | Terms of Service | Site Map | Gun Manufacturers | Gun Models



**App. 59**

 Sign In or Register                For Sellers        For Buyers        My GunBroker        Forums        **Product Center**

The World's Largest Online Auction of Firearms and Accessories™

**View All Categories**

Search   [All Categories ▼]          *enter keywords here*        🔍     Advanced Search

New Buyers        New Sellers        Sell Your Item        Register - It's Free         Help

# How to Buy through GunBroker.com

## What do I need to do first?

You need to be a registered user before you can begin buying or selling with GunBroker.com. We will email you a registration code that must be used to activate your account.

Do you want more detailed information before you dive in? If so, head over to Basic Training on the right, and choose a way to learn.

  Click here to Register

  Check out Basic Training

## How do I bid on an item on GunBroker.com?

1. **Scope out the special listings.**

   View the Charity Auctions and Showcase items on the GunBroker.com home page each time you visit.

2. **Target your item.**

   **Search** immediately for the item you want using the search box, or

   **Browse** the categories on the left hand side to find gun collectibles, sport firearms, hunting gear, knives & swords, air guns, archery and gun accessories. See all our Categories.

3. **Pull the trigger - place your bid!**

   You can follow the bidding on My GunBroker.com to make sure you win.



## Buying Details

| BACKGROUND |
|---|
| • What is GunBroker.com? |
| • Can I buy here? |
| • How can I find a Transfer Dealer? |
| • How does the auction work? |
| • What does it cost? |
| • Is it safe? |

| BROWSING AND SEARCHING |
|---|
| • How can I find what I'm looking for? |
| • How do I browse listings? |
| • How do I browse by category? |

**App. 60**

- How do I search for items and can I save my search criteria to use later?

| BUYING ACTIVITY |
|---|
| - What is a Starting Bid and Reserve Price? |
| - What is a BuyNow! Price? |
| - What is a Dutch Auction? |
| - How do I place a bid? |
| - What is Autobid? |

| AFTER THE AUCTION |
|---|
| - I won an item. Now what? |
| - How do I submit feedback? |
| - What if I have problems with a seller? |

## Questions and Answers

↑ Back to List **What is GunBroker.com?**

GunBroker.com is a gun auction site where sellers can list items for sale, such as gun collectibles, sport firearms, hunting gear, knives & swords, air guns, archery and gun accessories, and potential buyers can browse the listings and bid on the items. Expect to find a limitless number of top name brands from Glock pistols and Remington rifles to Benelli shotguns and Colt firearms. If you bid on the item and win it, you and the seller contact each other directly and make arrangements for payment and delivery of the item you won. GunBroker.com manages the sale process, provides a convenient form of communication between buyer and seller, and offers rich, varied, and up-to-date information on the item being sold (often including pictures).

An important note: Aside from hats, shirts, and other promotional merchandise bearing our logo, GunBroker.com does not sell any of the items listed on this auction site.

↑ Back to List **Can I buy here?**

You must Register with us to bid on or sell items. Registration is free, safe, and private. We do not share your registration information with any third party and we do not send you junk email. Privacy Policy.

Anyone who is legally allowed to own firearms, ammunition, knives, and gun accessories is allowed to buy or sell them here. It is your responsibility to be in compliance with all Federal, state, and local laws when using this site.

You do not have to be a licensed dealer to buy a firearm. If you are not a licensed firearm dealer (also called an FFL Holder), you must make arrangements with an FFL Holder in your state to receive the item and transfer it to you. Virtually anyone who is involved in the sale or distribution of firearms is an FFL Holder, including gun shops. You must make arrangements with your FFL Holder **before** placing a bid on an item. By contacting the FFL Holder before bidding, the buyer can verify that all state and federal laws will be observed. For most firearms, the buyer must be able to pass a background check.

GunBroker.com has compiled a list of FFL Holders who are willing to manage the legal transfer of firearms to unlicensed persons. Find a Transfer Dealer.

Non-firearm items, such as air guns, knives, ammunition, antique guns that were built in 1898 or earlier firearm accessories, and some gun parts do not require transfer by a licensed dealer. There are age restrictions on many of these items, and you will be asked to verify your age (typically by mailing a photocopy of your driver's license) before you can purchase the item. In general, you must be 18 years old to buy items on this site. (To buy Pistol ammunition, you must be at least 21 years old; at least 18 years old for Rifle ammunition.)

If you have any questions or doubts about whether an item can be shipped to you, please contact your local FFL Holder or send a message to the seller of the item by clicking on the 'Ask seller a question' link located in the item listing.

International buyers: Be sure you get all your information on exporting and importing firearms to the United States.

*See also:* Shipping Guide, Gun Laws, ATF List of State Laws.

↑ Back to List **Where do I find the site's FFL Holder Network?**

GunBroker.com has compiled a list of FFL Holders who are willing to manage the legal transfer of firearms to unlicensed persons. You can browse this list by Zip Code or State using the **Find a Transfer Dealer** link located on the Tools for Buyers page.

See our current FFL Holder Network Member List.

**App. 61**

# EXHIBIT 2





GunsAmerica Drop Off Locations

Login | Quick Register FREE



**Not Now**    **Continue**

### Ship it Yourself

### ... Or Use a GunsAmerica Dropoff Location

**How it Works**

*Option 1 - Sell it Yourself*

The basic premise of the GA Drop Off Location is that a local FFL Dealer handles the transfer of the gun for you. That way the gun is legally out of your hands, into his "bound book", and out from him to another FFL dealer in the buyer´s state. So you, as the true seller of the gun, have established a clear paper trail for the gun that you need not ever maintain (even if an FFL dealer gives up his license his bound book is turned into the ATF). This is the simplest approach because nothing changes with your interaction with GunsAmerica and the buyer. You get to describe the gun, decide who it is sold to and how much it is sold for. And if the gun **doesn´t sell** there is no transfer of the gun back to you. You also pay a simple up front fee, not a commission on the sale itself.

*Option 2 - Sell on Consignment*

Many of our GA Drop Off Location dealers will take the gun in on consignment for you and handle the sale completely. The gun may be sold in their store, on their website or through an ad at GunsAmerica. Those terms you work out with them and the fees for the sale are stated in advance. You also must take into account that the gun might not sell and may have to be transferred back to you. The dealer himself may want to buy the gun outright as well, so your options are varied from dealer to dealer.

Click Here to find the closest drop off location

FFL Dealers Click Here to become a GunsAmerica Drop Off Location

**Sign Me Up!**

© 1997-2010 GunsAmerica.com LLC

GunsAmerica cares about your Privacy. Privacy Policy

Home | Buy Guns | Sell Guns | Blog | Magazine | Forums | Fees | Privacy Policy | FAQ | XML/RSS | Your Account
Guns For Sale | All Categories | Gun Related | Stocking Dealer Services | Shooting Events | GATV | Find an FFL
Create Your Website | Take Credit Cards | Guns On Demand | GA Hosted Sites | Contact GunsAmerica | Archive

~smi~

**App. 63**

# EXHIBIT 3



# AuctionArms.com

**Home** | **Registration** | **Become a Seller** | **Appraisals** | **Sell an Item** | **Help & Info**
**Search** | **Forum** | **Find a FFL** | **My Auctions** | **My Bids** | **Contact Us** | **Log In**

## Auction Arms Help & Info

This is our Help & Info section - where answers to the life and death questions that plague us all can be answered - *as long as it pertains to Auction Arms.* If you don't find an answer to your question, give us a holler and we'll stuff it in there.

## Company Info

- Who We Are, Why We're Doing This, and Other Important Stuff
- Buying GUNS on the Internet?
- Auction Arms Terms & Conditions

## General User Info

- What browser is supported by AuctionArms.com?
- ATF FAQ on Firearms
- How do I register?
- How do I update my email address, password, etc.?
- What do I do if I've lost my password?
- I'm not getting any email from Auction Arms - why?
- What is the FFL & Gunsmith Network?
- What is the NRA Grading Scale?
- Auction Arms Glossary
- What kinds of Auctions does Auction Arms run?
- What's a Reserve Auction?
- What's a Haggle?
- What's a Basic Auction?
- What's a Dutch Auction?
- What's a Best Offer Auction?
- What is a Penny Auction?
- What is the 10-Minute Rule?
- What is a Fibber McGhee's Closet?
- What is BuyItNow?
- What is a (*** HIDDEN ***) Bidder?
- What are Featured Auctions?
- What is Proxy bidding?
- What is the Bid Increment?
- I got outbid by less than the bid increment? Why?
- What is a Watch List? How do I use it?
- How do I contact the seller of an auction?
- Do you guys have an announcements page?

**App. 65**

- Can I make a suggestion?
- Does UPS accept guns? What the heck is their problem? Can I ship a gun via the USPS?

## Seller Information

- Can I sell my guns online?
- How do I become a seller?
- How do I list an item for sale?
- How do I link back to my auctions - from my own website?
- What are Special Services?
- What is 'My Pictures'?
- How do I include pictures in an auction?
- How do I manage my auctions?
- How do I edit an open auction?
- How do I close an auction early?
- What happens after an auction closes?
- How do I contact a high bidder?
- How do I post feedback on a buyer?
- How do I get a refund for a Deadbeat Bidder or Return?
- What is a Relist Credit and how do I use it?
- What are the fees for selling at Auction Arms?
- How do I place my Credit Card on file?
- How do I pay by Check?

## Buyer Information

- How do place a bid?
- How do I keep track of what I've bid on?
- How do I contact the seller?
- How do I post feedback on a seller?
- How do I protect myself from fraud before I bid?
- How do I protect myself from fraud if I have already won an auction?
- What's a Reserve Auction?
- What's a Haggle?
- What's a Basic Auction?
- What's a Dutch Auction?
- What is BuyItNow?

---

### Who We Are, Why We're Doing This, and Other Important Stuff

My name is **Manny Dela Cruz** and I'm the founding member of Auction Arms. I originally came up with the idea of creating a online auction website for guns after seeing other auction websites on the Internet that dabbled in firearms. I wasn't impressed with what was out there, and too many folks were trying to charge big money for poor service. I also have a great love for things that go bang and I spend a lot of time at the range. So I figured it might be fun to create a website that catered to the shooter, while providing a great public service!

A retired Navy Commander toting an MBA and law degree, **Bob Lancaster** has been a key advisor and business consultant since inception. Bob's been living and breathing guns for over 40 years. He's been to see the Elephant, knows the importance of our 2nd amendment and has gone to the line protecting it. An avid hunter, he is a member of the North American Hunting Club, Ducks Unlimited and a life member of California Waterfowl Association. Bob's two favorite sayings are *"there's nothing so sad as an unfilled tag"* and *"so many guns, so little time."* A member of the American Gunsmithing Association, the NRA and the CRPA, he reloads, gunsmiths and deep-sea fishes as hobbies in the off season.

**App. 66**

From 5 inch guns to .17 Remington, if it goes bang, Bob's probably shot it.

Keeping our computers running, and generally wreaking havoc on our system otherwise, **Michael Wiederhold** is our Senior Developer. If you've ever seen an error message at Auction Arms, Michael is most likely the root of it. Seriously, Michael is the source of most of the really hard (but really useful) programming at Auction Arms. As long as we continue to supply him with an unlimited supply of Diet Coke, and a quiet office to listen to his tunes, he'll keep plugging away.

My younger brother and Auction Arms' primary support person, **Marcus Dela Cruz** mans the phones and handles most of your support questions via email. When he's not risking life and limb behind the wheel of his sports car, or killing all comers via xBox, Marcus is doting on his wife and children, or generally keeping me from serious injury in some kind of stupid stunt. Marcus is the one you're most likely to run into if you have questions, or you need a problem resolved, so be nice!

I've pulled the trigger many times and I understand guns. I also understand the hostile climate that many of us who like to shoot, have to endure to perfect our craft. We at Auction Arms believe the Second Amendment is the "keystone" to the Bill of Rights, and we put our money where our mouths are. We contribute on a regular basis to pro-gun causes, and we vote a pro-gun ticket. Even in the current hostile climate, we're not afraid to say, "We're gun owners and members of the NRA!"

We're constantly striving to improve the site, so if you have any suggestions, or a problem with our site, feel free to write us. We're new at this, but we have a strong belief in constant improvement, and we'd like you to be happy with the service. Thanks for visiting and good luck!

Manny Dela Cruz - CEO

## Is This Legal?

That's a question we get asked quite a bit. The answer, of course, is yes. Auction Arms doesn't actually deal in the transfer of firearms. What we deal in, is the bidding process for those who want to sell their firearms.

I'll give you an example: Let's say I want to buy a new gun from a legally authorized dealer. I go in, fill out all the appropriate paperwork, and pay my money. Then, after the end of my waiting period (courtesy of the Brady Bill), I go in and pick up my new toy. How is using Auction Arms different? Well, you'll still have to go in and sign papers, and go through the same legal process of transferring ownership of that gun as if you were buying the gun from the dealer (unless you're an FFL holder, yourself.) But with a dealer, you're pretty well stuck with the dealer's prices. You may shop around from dealer to dealer, but you usually don't get a very good deal.

Buying something at auction gives you the opportunity to find that something at a much lower price. Of course, that won't always be the case. If something is really in demand, you might actually pay more for that item when you buy it at auction. But the chances are, if you're looking for something pretty normal, you're going to get a great price for it.

You don't have the convenience of handling the firearm before buying it. But a reputable dealer will let you return the weapon unused for a refund, if it doesn't meet with your satisfaction. Of course there are no guarantees, but with the ability to post a review of the person you're purchasing from, you're a lot better off.

How are the transfers managed? If you win your firearm at auction, you then find someone in your area who is an FFL holder. An FFL (Federal Firearms License) holder is someone authorized by the Federal government to manage the transfer of firearms. Most people who post weapons at this site are FFL holders. Any store that sells firearms (legally) is an FFL holder. They'll be able to manage the transfer of your gun from the Seller to you. Of course, that means you'll have to go find an FFL holder, but there are over 90,000 in this country - we don't think that'll be a problem. Just visit your local gun store, they'll know what you're talking about.

We're not going to "gild the lily" when it comes to the process. It takes patience to wait for your firearm to show up at the dealer. But going through the process of bidding on an item is fun, and you might as well get a good deal for your money.

*That's where we come in.*

**App. 67**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2011, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Fifth Circuit by using the appellate CM/ECF system, which will send notice

of such filing to the following registered CM/ECF user:

Anisha Sasheen Dasgupta
U.S. Department of Justice
Room 7533
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0000
anisha.dasgupta@usdoj.gov

s/ Charles J. Cooper
Charles J. Cooper
