# United States Court of Appeals

*for the*

# Fifth Circuit

_____

Case No. 11-10959
_____

NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED;
ANDREW M. PAYNE; REBEKAH JENNINGS; BRENNAN HARMON,

*Plaintiffs-Appellants,*

– v. –

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES;
KENNETH MELSON, In His Official Capacity as Acting Director
of the Bureau of Alcohol, Tobacco, Firearms, and Explosives;
ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Civil Case No. 5:10-cv-00140-C (Honorable Sam Cummings)

## BRIEF OF THE NATIONAL SHOOTING SPORTS FOUNDATION, INC., AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

LAWRENCE G. KEANE
  *Of Counsel*
THE NATIONAL SHOOTING SPORTS
  FOUNDATION, INC.
Flintlock Ridge Office Center
11 Mile Hill Road
Newtown, Connecticut 06470
(203) 426-1320

CHRISTOPHER P. JOHNSON
MEREDITH A. WHOLLEY
  *Counsel of Record*
KASOWITZ BENSON TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1736

*Attorneys for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. National Shooting Sports Foundation, Inc. (the "NSSF"), *Amicus Curiae.* The NSSF is a non-stock, non-profit corporation. Accordingly, it has no parent corporations and no publicly-held company owns 10% or more of its stock.

2. Kasowitz, Benson, Torres & Friedman, LLP, Counsel for *Amicus Curiae* (Christopher P. Johnson and Meredith A. Wholley).

3. Lawrence G. Keane, National Shooting Sports Foundation, Of Counsel for *Amicus Curiae.*

4. National Rifle Association of America, Inc. ("NRA"), Plaintiff-Appellant.

5. Rebekah Jennings, Brennan Harmon, and Andrew Payne, Plaintiffs-Appellants.

6. Paul White, owner and operator of My Favorite Gun Store in Richmond, Utah. *See* USCA5 670.

7. Roger Koeppe, owner and operator of Armory Management and Supply Services in Houston, Texas. *See* USCA5 673.

8.   Cooper & Kirk, PLLC, Counsel for Plaintiffs-Appellants (Charles J. Cooper,

     David H. Thompson, Howard C. Nielson, Jr., and Peter A. Patterson).

9.   Law Offices of Fernando M. Bustos, P.C., Counsel for Plaintiffs-Appellants

     (Fernando M. Bustos).

10.  Brian S. Koukoutchos, Counsel for Plaintiff-Appellant.

Dated:  December 12, 2011

/s/ Christopher P. Johnson
Attorney of Record for *Amicus Curiae*

## CONSENT OF PARTIES

Pursuant to Fed. R. App. P. 29(a), counsel for the National Shooting Sports Foundation, Inc. hereby certifies that he has obtained consent from all parties to the filing of the instant *amicus curiae* brief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS

CONSENT OF PARTIES

INTEREST OF THE *AMICUS CURIAE*...............................................................1

ARGUMENT ..........................................................................................................3

    THE DISTRICT COURT MISINTERPRETED THE PUBLIC POLICY
    AND SAFETY CONCERNS THAT MOTIVATED ITS OPINION.............3

    A.    Striking the Ban on the Licensed Sale of Handguns and Handgun
           Ammunition to Adults Aged 18 to 20 Years Old Will Yield
           Significant Safety and Other Benefits for Those Purchasers...............6

    B.    To the Extent FFL Regulations Are Intended to Ensure
           "Public Safety," Then Prohibiting 18- to 20-Year-Old
           Adults From Buying from FFLs is Counterproductive........................9

    C.    The Ban Creates an Illogical Distinction Between the Professional
           and Private Lives of the Nation's Armed Forces Service Members...13

CONCLUSION .....................................................................................................15

CERTIFICATE REGARDING PRIVACY REDACTIONS AND
VIRUS SCANNING

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)......................................................................3, 4, 9

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ...............................................................3

*McDonald v. City of Chicago*,
   130 S. Ct. 3020 (2010)...................................................................... 4, 9

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ...................................................................3

STATUTES

10 U.S.C. § 311(a) ...................................................................................14

18 U.S.C. § 922(b) .................................................................................2, 3

18 U.S.C. § 922(g) ...................................................................................10

18 U.S.C. § 922(t) ....................................................................................10

18 U.S.C. § 922(x) .................................................................................5, 6

18 U.S.C. § 922(z) ...............................................................................8, 12

18 U.S.C. § 923(d) .............................................................................7, 8, 12

18 U.S.C. § 923(g) ...................................................................................11

18 U.S.C. § 923(h) .....................................................................................7

50 U.S.C. § 453(a) ...................................................................................14

OTHER AUTHORITIES

27 C.F.R. § 478.22 ...................................................................................11

27 C.F.R. § 478.25a ..................................................................................11

27 C.F.R. § 478.47(b) ........................................................................7

27 C.F.R. § 478.57 ..........................................................................11

27 C.F.R. § 478.96(b) ....................................................................2, 3

27 C.F.R. § 478.99(b) ....................................................................2, 3

27 C.F.R. § 478.102 ........................................................................10

27 C.F.R. § 478.103 ........................................................................12

27 C.F.R. § 478.121 ........................................................................11

27 C.F.R. § 478.124 ........................................................................10

27 C.F.R. § 478.124(a) ..................................................................2, 3

27 C.F.R. § 478.125 ........................................................................11

27 C.F.R. § 478.127 ........................................................................11

27 C.F.R. § 478.129(b) ....................................................................11

U.S. Const. amend. II. ................................................................*passim*

U.S. Const. amend. XIV .....................................................................3

# INTEREST OF THE *AMICUS CURIAE*[1]

The *amicus curiae* is the National Shooting Sports Foundation, Inc. (the "NSSF"), the trade association for the firearms, ammunition, hunting, and shooting sports industry. Formed in 1961, the NSSF is a Connecticut non-profit tax-exempt corporation with a membership of more than 6,000 firearms manufacturers, distributors, and retailers; sportsmen's organizations; shooting ranges; gun clubs; publishers; and individuals. The NSSF's mission is to promote, protect and preserve hunting and the shooting sports. The NSSF provides trusted leadership in addressing industry challenges; advances participation in and understanding of hunting and the shooting sports; reaffirms and strengthens its members' commitment to the safe and responsible use of their products; and promotes a political environment that is supportive of America's traditional hunting heritage and firearms freedoms. As a guardian of our nation's rich hunting and shooting traditions, the NSSF believes that lawful commerce in firearms and firearm-related products must be protected – and that, in particular, no law or regulation should unreasonably limit the lawful transfer of firearms to law-abiding adults who have a constitutional right guaranteed by the Second

---

[1]    No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the *amicus curiae*, or its counsel, made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

Amendment to the United States Constitution to purchase, own, possess and use such firearms.

The NSSF's interest in this action derives principally from the fact that the NSSF's firearms manufacturer, distributor, and retailer members provide the lawful commerce in firearms that makes the exercise of Second Amendment rights possible,[2] and include the Federal Firearm License Holders ("FFLs") from whom 18- to 20-year old adults are prohibited from purchasing firearms and ammunition by the challenged statute and regulations, 18 U.S.C. §§ 922(b)(1) and (c)(1); 27 C.F.R. §§ 478.99(b)(1), 478.96(b) and 478.124(a). More specifically, the NSSF submits this brief to expand upon the Appellants' description of the different channels of commerce in firearms (*see* Appellants' Br. at 38-39), and to explain to this Court i) the myriad benefits that would be available to 18- to 20-year-old adults (and society) if those adults could purchase from the primary market of FFLs and ii) the illogic of directing those 18- to 20-year-old adults away from the primary market and into the secondary market. For these reasons, the NSSF supports the Appellants and urges this Court to reverse the decision below of the United States District Court for the Northern District of Texas (the "District Court").

---

[2]    Members of the industry supply the United States armed forces and federal, state, and local law enforcement with the firearms they use to protect America's national security and keep our communities safe, and also supply hunters, sportsmen, and gun owners with the firearms they use for lawful purposes.

# ARGUMENT

## THE DISTRICT COURT MISINTERPRETED THE PUBLIC POLICY AND SAFETY CONCERNS THAT MOTIVATED ITS OPINION

The Second Amendment to the United States Constitution preserves "the right of the people to keep and bear Arms" and declares that this right "shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court made abundantly clear that a ban on the possession of handguns – "an entire class of 'arms' that is overwhelmingly chosen by American society for [the] lawful purpose of self-defense" – runs afoul of this constitutional provision. 554 U.S. at 628. Given that the right to possess and use a handgun is meaningless absent the right to purchase or otherwise acquire a handgun,[3] the instant action challenges a federal ban – 18 U.S.C. §§ 922(b)(1) and (c)(1); 27 C.F.R. §§ 478.99(b)(1), 478.96(b) and 478.124(a) (together, "the Ban") – that prohibits FFLs from selling handguns and handgun ammunition to adults aged 18 to 20. The Ban unreasonably infringes upon the Second Amendment right of adults aged 18 to 20, and violates their Fourteenth Amendment right to Equal Protection under the law, U.S. Const. amend. XIV, § 1 ("No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.").

---

[3]     *See Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use"); *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (recognizing that a law "prohibiting the commercial sale of firearms" is "a result [that] would be untenable under *Heller*").

The District Court erroneously upheld the Ban based upon a misreading of *Heller*,[4] and an improper deference to the legislature to assess constitutional violations on its own.[5]  Moreover, because the District Court wrongly decided the Second Amendment issue, it also applied the wrong standard of review to Appellants' Equal Protection argument.[6]  Because the Appellants have addressed these issues fully, however, the NSSF will not burden the Court with a repetitive analysis.

Rather, the NSSF wishes to address certain erroneous conclusions that underlie the District Court's holding:  i) that a legitimate state interest – "public safety" – justifies the Ban and ii) that 18- to 20- year-old adults are "emotionally

---

[4]     In upholding the Ban, the District Court purports to rely on *Heller*'s "specific exception of conditions and qualifications on the commercial sale of arms from the individual right to keep and bear arms…."  USCA5 1106.  *Heller*, however, stands for no such exception.  *Heller* simply stated in *dicta* that the Second Amendment is not absolute, and noted that its identification of certain qualifications was not exhaustive.  554 U.S. at 626-27.  This unremarkable statement cannot form the basis for a decision in the instant case, which addresses only a specific issue – age – not at issue in *Heller.*

[5]     The District Court concluded that "it is within the purview of Congress, not the courts, to weigh the relevant policy considerations and to make decisions as to the age of the customer to whom those licensed by the federal government may sell handguns and handgun ammunition."  USCA5 1106.  This cannot be categorically true, however, because Congress' policy determinations must still pass constitutional muster.  If policy considerations, for example, led Congress to increase the minimum age of lawful handgun purchasers to 30, surely it would be within the purview of the courts to correct Congress' clear violation of the adults' right to bear arms.  Moreover, Congress enacted the provisions being challenged here – and weighed the policy considerations upon which the District Court relies – prior to *Heller* and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), when the law did not so clearly recognize the scope of the Second Amendment's protections.

[6]     The District Court employed a "rational basis" standard of review to Plaintiffs' Equal Protection argument, because it held that "Plaintiffs' claims do not raise Second Amendment concerns…."  USCA5 1107.

immature," "thrill-bent juveniles and minors prone to criminal behavior." *See* USCA5 1108.

**First**, Congress has already conclusively spoken on "public safety," because the same statute that prohibits 18- to 20-year-old adults from acquiring handguns and handgun ammunition from FFLs permits those 18- to 20-year-old adults to use and possess handguns. *See* 18 U.S.C. § 922(x). Because Congress has authorized these 18- to 20-year-old adults to use handguns, there cannot be any "public safety" justification whatsoever for the Ban. Indeed, in addition to unjustifiably restricting the exercise of Second Amendment rights, the Ban accomplishes nothing other than forcing this class of adults, who are most likely to be first-time handgun purchasers, i) away from the primary market of FFLs and ii) into the unregulated channels of the secondary market, where 18- to 20-year-olds may buy handguns and ammunition, if and when they are available, from unlicensed dealers. Because FFLs are qualified by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") and closely monitored by the Attorney General to ensure public safety, the Ban's redirection of buyers away from the primary market of FFLs cannot have anything to do with "public safety." If anything, FFLs are best suited to equip 18- to 20-year-olds with firearms

best fitting the needs of the particular consumer, which promotes safety, as well as firearm safety educational materials, instruction and training.

**Second**, if public safety is the predicate for many of the regulations imposed on FFLs – *i.e.*, mandating that FFLs perform backgrounds checks, keep extensive records of sale, and transfer a handgun with a secure storage and/or safety mechanisms – then the society as a whole is safer when first-time handgun purchasers buy in the primary market.

**Third**, the District Court's notion that 18- to 20-year-olds, as a class, are insufficiently mature to purchase handguns is belied by common experience – most especially the 18- to 20-year-old members of the armed forces that NSSF members equip with firearms, including handguns. For these reasons, discussed more fully below, public policy – and any rational concern for firearm safety – dictates that 18- to 20-year-old adults be permitted to buy handguns and handgun ammunition in the primary firearms market of FFLs.

### A. Striking the Ban on the Licensed Sale of Handguns and Handgun Ammunition to Adults Aged 18 to 20 Years Old Will Yield Significant Safety and Other Benefits for Those Purchasers

Appellees do not – and cannot – dispute that all law-abiding adult citizens, including those aged 18 to 20, have a clear constitutional right to keep and bear arms and thus to use and possess handguns for self-defense and other lawful purposes. *See* U.S. Const. amend. II; 18 U.S.C. § 922(x). The right to keep and

bear arms is so etched in the foundation of American history that the Framers codified it in the Bill of Rights, the list of America's ten most sacred freedoms. Adults having the right to protect home, family and self with a firearm not only have the right to purchase firearms, but logic dictates that they also have the right to acquire the safest, most modern and reliable firearms on the market – *i.e.*, from FFLs in the primary market. Outlawing 18- to 20- year-old adults from purchasing in this highly regulated market, and thereby redirecting first-time handgun purchasers into the less regulated, unlicensed secondary market, simply makes no sense.

The safety benefits to 18- to 20-year-olds from buying handguns in the primary market are unmistakable. As a threshold matter, anyone who enters an FFL's premises to buy a firearm can be assured of the seller's legitimacy, because the FFL must post his license in the store pursuant to 18 U.S.C. § 923(h). This license evidences, among many other things, that the seller has passed a background check and is permitted to ship, transport, receive or possess firearms or ammunition. 18 U.S.C. § 923(d)(1)(B); 27 C.F.R. § 478.47(b). In short, the 18- to 20-year-old, first-time handgun buyer can have every confidence in the reputation of his or her seller.

In addition, there are a myriad of advantages to buying in the primary firearm market that 18- to 20-year olds should not be denied – not unlike the

benefits of buying a car from a dealership instead of from a classified newspaper advertisement. Both a car dealership and an FFL offer a wide array of the newest models with the latest improvements, refinements, and safety features. Like a dealership offering test drives, many FFLs have on-premises shooting ranges that allow a purchaser to test out and compare products to determine which handgun is the best fit for the buyer's build, purpose and experience level. Both offer new product warranties, instruction manuals, and guidance regarding repairs. And, just as a dealer will walk a new buyer through the features of his or her new car, an FFL can provide or arrange for instruction in the proper handling and safe storage of a firearm. Indeed, FFLs offer and/or arrange for instructional courses in marksmanship and typically offer firearm safety videos for customers (especially important for first-time gun owners), as well as gun locks, lock boxes and other safety devices, which they are mandated by law to make available to all customers. 18 U.S.C. § 923(d)(1)(G); *see also* 18 U.S.C. § 922(z).

Obviously, the benefits that car dealerships and FFLs offer come at a cost, and the products they offer may be more expensive than those in the secondary market. But whether a buyer pays that additional cost to avail himself or herself of those benefits is a decision that should be left to the consumer. This is particularly true with respect to 18- to 20-year-olds, who may be first-time buyers, may have more to gain from the benefits that dealerships or FFLs have to offer, and, thus,

may get more incremental benefit from the added cost relative to a more experienced purchaser.

More to the point, there is simply no rational basis, let alone a compelling state interest, for Congress's decision to deprive 18- to 20-year-olds by legislative fiat of the benefits that FFLs offer, especially to first-time buyers. The District Court erred by ignoring how Congress's irrational distinction – drawn prior to the Supreme Court's *Heller* and *McDonald* decisions – distorts the market, forcing 18- to 20-year-olds into the secondary market and thereby depriving them of the safety and instructional benefits that experienced and professional firearms retailers offer.

### B. To the Extent FFL Regulations Are Intended to Ensure "Public Safety," Then Prohibiting 18- to 20-Year-Old Adults From Buying from FFLs is Counterproductive

Moreover, to the extent the District Court was concerned about "public safety," and the regulations imposed on FFLs are intended to ensure "public safety," then the Ban is counterproductive, because it directs purchases away from those ostensible "public safety" measures. At the very least, there is certainly no societal interest served by prohibiting 18- to 20-year-old adults from buying from the primary market of FFLs.

The Brady Handgun Violence Prevention Act of 1993 requires FFLs to perform background checks on individuals before a firearm may be purchased, unless a valid exception applies, *e.g.,* a state permit to purchase firearms.

18 U.S.C. § 922(t); 27 C.F.R. § 478.102. These checks prevent certain persons from buying or possessing firearms, including any person who (i) has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; (ii) is a fugitive from justice; (iii) is an unlawful user of or addicted to any controlled substance; (iv) has been adjudicated as a mental defective or committed to a mental institution; (v) is an alien illegally or unlawfully in the United States; (vi) has been discharged from the Armed Forces under dishonorable conditions; (vii) having been a citizen of the United States, has renounced U.S. citizenship; (viii) is subject to a court order that restrains the person from harassing, stalking, or threatening an intimate partner or child of such intimate partner; (ix) has been convicted in any court of a misdemeanor crime of domestic violence; or (x) has a record of being a felon. 18 U.S.C. § 922(g). As a result of these regulations, no FFL sale is anonymous, all firearms sold are traceable to purchasers, and each transaction is vetted by the National Instant Criminal Background Check System ("NICS"). *See* 18 U.S.C. § 922(t); 27 C.F.R. § 478.124.

Consistent with this statutory framework, FFLs are required to fill out a Firearms Transaction Record – ATF Form 4473 – for every transaction. This form requires a name, address, date of birth, government-issued photo identification, NICS transaction number, and an affidavit stating that the purchaser is eligible to

purchase a firearm under federal law.[7]  The FFL who verifies the identity of the

buyer must also sign and keep a copy of the form for at least 20 years after the date

of the sale or disposition.[8]  *See* 27 C.F.R. § 478.129(b).   Further, FFLs must keep

a permanent registry of all firearms sales in an ATF-approved "bound book"[9] or

computerized equivalent.  27 C.F.R. §§ 478.22, 478.121 and 478.125.  The ATF is

allowed to inspect these records as part of a criminal investigation or upon a trace

request.  18 U.S.C. § 923(g)(7); 27 C.F.R. § 478.25a.  In addition, FFLs must

report the sale of multiple handguns within five consecutive business days to the

ATF and the state police or local law enforcement agency where the sale occurred.

ATF Form 3310.4.[10]

Finally, FFLs sell the most modern firearms equipped with the latest safety

features and advancements in design.  In fact, FFLs are required by law when

transferring (selling) a handgun to a consumer to provide the purchaser with a

---

[7]      Form 4473 is available at http://www.atf.gov/forms/download/atf-f-4473-1.pdf.  After completing the required ATF Form 4473, FFLs contact NICS – maintained by the FBI – to request a background check with the Form 4473's descriptive information.

[8]      When retiring or otherwise discontinuing its business, an FFL is required by law to send its records to the ATF's Out-of-Business Records Center.  18 U.S.C. § 923(g)(4); 27 C.F.R. §§ 478.57 and 478.127.

[9]      A "bound book" is a permanently bound or orderly arrangement of pages that must be maintained on the business premises.  The format must follow that prescribed in the regulations and the pages must be numbered consecutively.  27 C.F.R. §§ 478.121 and 478.125.

[10]      *Available at* http://www.atf.gov/forms/download/atf-f-3310-4.pdf.

"secure gun storage or safety device,"[11] *e.g.,* a gun lock. 18 U.S.C. § 922(z).[12] No

such requirement exists for sales by non-FFL private parties. Moreover, FFLs

must always have safety devices available for sale in their stores. 18 U.S.C.

§ 923(d)(1)(G). And all FFLs must post ATF-provided safety posters on their

premises that address safe storage of firearms, warnings against the misuse of guns

by juveniles, and federal prohibitions against transferring handguns to persons

under 18, *see e.g.,* ATF I 5300.2.[13]

The NSSF recognizes that these statutes and regulations are motivated by a

desire to ensure "public safety." Members of the firearms industry are strong

---

[11]    18 U.S.C. § 921(a)(34) states:

The term "secure gun storage or safety device" means— (A) a device that, when
installed on a firearm, is designed to prevent the firearm from being operated
without first deactivating the device; (B) a device incorporated into the design of
the firearm that is designed to prevent the operation of the firearm by anyone not
having access to the device; or (C) a safe, gun safe, gun case, lock box, or other
device that is designed to be or can be used to store a firearm and that is designed
to be unlocked only by means of a key, a combination, or other similar means.

[12]    Since 1996, all, or virtually all, manufacturers have voluntarily included a free gun lock
with every new firearm, including handguns, shipped from the factory. Some manufacturers
have done this for decades.

[13]    27 C.F.R. § 478.103(b) states:

The written notification (ATF I 5300.2) required by paragraph (a) of this section
shall state as follows: (1) The misuse of handguns is a leading contributor to
juvenile violence and fatalities. (2) Safely storing and securing firearms away
from children will help prevent the unlawful possession of handguns by juveniles,
stop accidents, and save lives. (3) Federal law prohibits, except in certain limited
circumstances, anyone under 18 years of age from knowingly possessing a
handgun, or any person from transferring a handgun to a person under 18. (4) A
knowing violation of the prohibition against selling, delivering, or otherwise
transferring a handgun to a person under the age of 18 is, under certain
circumstances, punishable by up to 10 years in prison.

supporters of firearm safety, and the NSSF, on behalf of its industry, has an extensive history of supporting and promoting the safe and responsible use and storage of firearms. A few examples of the NSSF's initiatives include its widely-distributed publication entitled *Firearms Safety Depends on You* (2009), http://www.nssf.org/lit/ fsdoy.pdf, and award-winning Project ChildSafe educational initiative, http://projectchildsafe.org/ (last visited Dec. 12, 2011), which is the largest firearm safety program in America and has distributed over 35 million firearm safety kits, each including a free gun lock.[14] As a strong advocate for firearm safety, the NSSF must note the irony and illogic of the District Court's decision. If the District Court's goal was to promote "public safety," the District Court's decision to uphold the Ban is counterproductive, because it directs 18- to 20-year-old buyers **away from** federally mandated firearms safety messages and related products.

### C. The Ban Creates an Illogical Distinction Between the Professional and Private Lives of the Nation's Armed Forces Service Members

Finally, the District Court holds that adults between 18 and 20 are "infants" and "children" ineligible for the constitutional right to bear arms. USCA5 1105-06. This is simply not true. Eighteen-year-olds may vote, marry, form a corporation, use and possess long guns or handguns, purchase a long gun (but,

---

[14]     *See generally*, *National Shooting Sports Foundation: Safety*, http://nssf.org/Safety/ (last visited Dec. 12, 2011).

irrationally, not a handgun) from an FFL, and purchase a handgun from a secondary source (but, irrationally, not an FFL).

Because NSSF members supply the United States armed forces with the firearms they use to protect America's national security, the NSSF is also compelled to note that federal statutes consider 18-year-olds members of the national militia, 10 U.S.C. § 311(a), and that 18-year-olds must register for the draft, accepting that they can bear arms – and even die – in service of our country. 50 U.S.C. §§ 453(a). Indeed, an 18-year-old who has volunteered to serve in the United States armed forces can be deployed to Afghanistan to protect America's liberties (which include, of course, the Second Amendment) and use a handgun to defend against enemy forces (hardly an "infant" in doing so). Yet, if this veteran returns home to the United States before his or her 21st birthday, he or she will be denied these very same liberties if he or she seeks to purchase a handgun from an FFL. We entrust young soldiers to use machine guns, and still the law denies them the right to lawfully purchase a handgun from a licensed firearms retailer for use in target shooting or self-defense. Equally disquieting is to prohibit a soldier's 19-year-old spouse from purchasing a handgun from an FFL for household protection while her soldier husband is away fighting for our country. The Ban thus constitutes an irrational, illogical, and unjustifiable infringement on the exercise of a fundamental civil liberty of adults aged 18 to 20.

## CONCLUSION

For the foregoing reasons, as well as those in the Appellants' brief, this Court should reverse the decision of the United States District Court for the Northern District of Texas, and remand for summary judgment in favor of the Plaintiffs.

Dated:  December 12, 2011

Respectfully submitted,

/s/ Christopher P. Johnson
CHRISTOPHER P. JOHNSON
MEREDITH A. WHOLLEY
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 BROADWAY
NEW YORK, NY 10019
(212) 506-1736

Of Counsel:
LAWRENCE G. KEANE
  Counsel of Record
THE NATIONAL SHOOTING SPORTS
  FOUNDATION, INC.
FLINTLOCK RIDGE OFFICE CENTER
11 MILE HILL ROAD
NEWTOWN, CT 06470-2359

*Attorneys for Amicus Curiae*

## CERTIFICATE REGARDING PRIVACY REDACTIONS AND VIRUS SCANNING

I certify (1) that all required privacy redactions have been made in this brief, in compliance with 5th Cir. Rule 25.2.13; (2) that the electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1; and (3) that the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:  December 12, 2011

/s/ Christopher P. Johnson
Attorney of Record for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that, on December 12, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which will send notice of such filing to the following registered CM/ECF users:

Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Peter A. Patterson
ppatterson@cooperkirk.com
COOPER AND KIRK, PLLC
Suite 750
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036

Brian Koukoutchos
bkoukoutchos@gmail.com
28 Eagle Trace
Mandeville, LA 70471

Fernando Manuel Bustos
fbustos@mhbg.com
Law Offices of Fernando M. Bustos, P.C.
Suite 501
1001 Main Street
Lubbock, TX 79401

Anisha Sasheen Dasgupta
anisha.dasgupta@usdoj.gov
U.S. Department of Justice
Room 7533
950 Pennsylvania Ave., N.W.
Washington, DC 20530-000

Dated: December 12, 2011

/s/ Christopher P. Johnson
Attorney of Record for *Amicus Curiae*