IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
————————————

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ANDREW M. PAYNE,
REBEKAH JENNINGS, BRENNAN HARMON,

Plaintiffs - Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, B. TODD
JONES, in his official capacity as Acting Director of BATF, ERIC J. HOLDER, JR., in
his official capacity as Attorney General of the United States,

Defendants - Appellees.
————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
————————————

BRIEF FOR APPELLEES
————————————

*Of Counsel:*

MELISSA ANDERSON
Bureau of Alcohol, Tobacco,
Firearms & Explosives
99 New York Avenue, N.E.
Washington, D.C. 20226
Tel: (202) 648-7056
Melissa.Anderson@usdoj.gov

TONY WEST
  *Assistant Attorney General*

SARAH R. SALDAÑA
  *United States Attorney*

MICHAEL S. RAAB
  (202) 514-4053
ANISHA S. DASGUPTA
  (202) 514-5428
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7237*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel for defendants-appellees certifies that the following non-governmental persons and entities have an interest in the outcome of this case:

*Plaintiffs-Appellants*
National Rifle Association of America, Inc., Rebekah Jennings, Brennan Harmon, Andrew Payne, Paul White, owner and operator of My Favorite Gun Store in Richmond, Utah, Roger Koeppe, owner and operator of Armory Management and Supply Services in Houston, Texas

*Counsel for Plaintiffs-Appellants*
Charles J. Cooper, David H. Thompson, Howard C. Nielson, Jr., and Peter A. Patterson
Cooper & Kirk, PLLC
1523 New Hampshire Ave, N.W.
Washington, D.C. 20036

*Counsel for Plaintiffs-Appellants*
Fernando M. Bustos
Law Offices of Fernando M. Bustos, P.C.
P.O. Box 1980
Lubbock, TX 79408-1980

*Counsel for Plaintiffs-Appellants*
Brian S. Koukoutchos
Law Office of Brian S. Koukoutchos
28 Eagle Trace
Mandeville, LA 70471

*Amicus supporting Plaintiffs-Appellants*
National Shooting Sports Foundation, Inc.

*Counsel for Amicus*
Christopher P. Johnson, Meredith A. Wholley
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

Lawrence G. Keane
National Shooting Sports Foundation, Inc.
Flintlock Ridge Office Center
11 Mile Hill Road
Newtown, Connecticut 06470

 s/ Anisha S. Dasgupta
Anisha S. Dasgupta

## STATEMENT REGARDING ORAL ARGUMENT

The government believes that oral argument would be appropriate in this case and stands ready to present argument if it would assist the Court in its deliberations.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ........................................................ 2

STATEMENT OF THE CASE ........................................................ 2

STATEMENT OF FACTS ........................................................ 3

    A.    Statutory And Regulatory Background ................................. 3

    B.    Facts And Prior Proceedings ............................................ 9

SUMMARY OF ARGUMENT ........................................................ 14

STANDARD OF REVIEW ........................................................ 18

ARGUMENT ........................................................ 18

    I.    Plaintiffs Lack Standing To Bring This Suit ..................... 18

        A.    The 18-to-20-Year-Old Plaintiffs Have Failed To Establish That They Cannot Lawfully Obtain Handguns and Handgun Ammunition For Use In Self-Defense ........................................................ 18

        B.    The Federal Firearms Licensee Plaintiffs Lack Standing To Challenge The Federal Laws On Behalf of Persons Aged 18 To 20 Years Old ......... 25

    II.    Plaintiffs' Claims Fail On The Merits ............................. 27

        A.    The Challenged Federal Laws Do Not Burden Conduct Protected By The Second Amendment ................... 29

1. Restrictions On The Commercial Sale Of Firearms To Persons Under 21 Comport With Historical Understandings Of The Second Amendment Right ........................................................ 29

2. Federal And State Militia Laws Did Not Create a Vested Right To Purchase Arms For Individuals Aged 18 to 21 ............................................................ 36

B. Even If Plaintiffs' Suit Implicates Their Second Amendment Rights, The Challenged Federal Laws Are Constitutional .................................................. 41

1. At Most This Court Should Apply Intermediate Scrutiny ..................................................... 43

2. The Challenged Federal Laws Satisfy Intermediate Scrutiny .................................................. 44

3. The Challenged Federal Laws Do Not Violate Plaintiffs' Rights To Equal Protection ......................... 52

CONCLUSION ................................................... 55

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARD A(6)

# TABLE OF AUTHORITIES

**Cases:**                                                                    <u>**Page**</u>

Anderson v. Williams,
  104 N.E. 659 (Ill. 1914) ..................................................................... 31

Apache Bend Apartments v. United States,
  964 F.2d 1556 (5th Cir. 1992) .......................................................... 44

Bassett v. Bassett,
  521 P.2d 434 (Okla. Civ. App. 1974) ................................................. 31

Biffer v. City of Chicago,
  116 N.E. 182 (1917) ......................................................................... 35

Blackard v. Blackard,
  426 S.W.2d 471 (Ky. 1968) .............................................................. 31

Buckley v. Valeo,
  424 U.S. 1 (1976) .............................................................................. 51

Bullock v. Sprowls,
  54 S.W. 657 (Tex. Civ. App. 1899) ................................................... 31

Burgett v. Barrick,
  25 Kan. 526 (Kan. 1881) .................................................................. 31

Carey v. Population Servs. Int'l,
  431 U.S. 678 (1977) ............................................................. 26, 27, 44

Castner v. Walrod,
  83 Ill. 171 (Ill. 1876) ........................................................................ 31

Clark v. Jeter,
  486 U.S. 456 (1988) .................................................................. 17, 44

Coleman v. State,
    32 Ala. 581 (1858) ........................................................................... 34

Craig v. Boren,
    429 U.S. 190 (1976) ................................................................... 26, 27

Crouch v. Crouch,
    187 S.E.2d 348 (N.C. Ct. App. 1972) .............................................. 31

Deerfield Med. Ctr. v. City of Deerfield Beach,
    661 F.2d 328 (5th Cir. 1981) ..................................................... 26, 27

District of Columbia v. Heller,
    554 U.S. 570 (2008) ............................ 12, 15, 27, 28, 29, 30, 33, 35, 41, 42, 43

Doe v. Archdiocese of Milwaukee,
    700 N.W.2d 180 (Wis. 2005) .......................................................... 31

Doe v. Bolton,
    410 U.S. 179 (1973) ........................................................................ 24

Fitz-Gerald v. Bailey,
    58 Miss. 658 (Miss. 1881) .............................................................. 31

Gabree v. King,
    614 F.2d 1 (1st Cir. 1980) ............................................................... 54

Heller v. District of Columbia,
    —F.3d —, 2011 WL 4551558 (D.C. Cir., Oct. 4, 2011) ..................... 30, 43, 44

Houston Chronicle Pub. Co. v. City of League City,
    488 F.3d 613 (5th Cir. 2007) .......................................................... 52

Jones v. Wells,
    2 Houst. 209 (Del. Super. Ct. 1860) ............................................... 31

Kimel v. Fla. Bd. of Regents,
    528 U.S. 62 (2000) .......................................... 13, 17, 18, 52, 53, 54

Lance v. Coffman,
    549 U.S. 437 (2007) ........................................................................ 23

League of United Latin American Citizens v. City of Boerne,
    659 F.3d 421 (5th Cir. 2011) ........................................................ 23

Mass. Bd. of Ret. v. Murgia,
    427 U.S. 307 (1976) ........................................................................ 52

McDonald v. City of Chicago,
    130 S. Ct. 3020 (2010) .................................................... 12, 28, 29, 43

Memphis Trust Co. v. Blessing,
    58 S.W. 115 (Tenn. 1899) ............................................................ 31

Michael M. v. Superior Court of Sonoma County,
    450 U.S. 464 (1981) ........................................................................ 43

National Federation of the Blind of Texas, Inc. v. Abbott,
    647 F.3d 202 (5th Cir. 2011) ........................................................ 18

National Rifle Ass'n v. Brady,
    914 F.2d 475 (4th Cir. 1990) .......................................................... 7

Okpalobi v. Foster,
    190 F.3d 337 (5th Cir. 1999) ........................................................ 25

Olympic Arms v. Buckles,
    301 F.3d 384 (6th Cir. 2002) ........................................................ 51

In re Opinion of the Justices,
    39 Mass. 571 (1838) ...................................................................... 39

Parman v. Lemmon,
    244 P. 227 (Kan. 1925) .................................................................. 35

Peters v. Jones,
    35 Iowa 512 (Iowa 1872) .............................................................. 31

Powers v. Ohio,
499 U.S. 400 (1991) .......................................................................... 25

Qutb v. Strauss,
11 F.3d 488 (5th Cir. 1993) ............................................................. 50

Reisse v. Clarenbach,
61 Mo. 310 (Mo. 1875) .................................................................... 31

Reliable Consultants, Inc. v. Earle,
517 F.3d 738 (5th Cir. 2008) .................................................... 26, 27

Roe v. Wade,
410 U.S. 113 (1973) .......................................................................... 24

Schall v. Martin,
467 U.S. 253 (1984) .......................................................................... 50

Schenck v. Pro-Choice Network of Western New York,
519 U.S. 357 (1997) .................................................................. 17, 50

State v. Callicutt,
69 Tenn. 714 (Tenn. 1878) .............................................................. 34

Stiles v. Blunt,
912 F.2d 260 (8th Cir. 1990) ........................................................... 44

T & M Jewelry v. Hicks ex rel. Hicks,
189 S.W.3d 526 (Ky. 2006) ............................................................. 50

United States v. Chester,
628 F.3d 673 (4th Cir. 2010) ............................................... 42, 44, 51

United States v. Coil,
442 F.3d 912 (5th Cir. 2006) .................................................... 26, 27

United States v. Darrington,
351 F.3d 632 (5th Cir. 2003) ........................................................... 43

United States v. Emerson,
  270 F.3d 203 (5th Cir. 2001) ............................................. 13, 15, 28, 29, 33, 36

United States v. Lewitzke,
  176 F.3d 1022 (7th Cir. 1999) ....................................................... 51

United States v. Marzzarella,
  614 F.3d 85 (3d Cir. 2010) ............................................................. 42

United States v. Miller,
  307 U.S. 174 (1939) ........................................................................ 38

United States v. Moore,
  84 F.3d 1567 (9th Cir. 1996) .................................................... 19, 20

United States v. Olson,
  473 F.2d 686 (8th Cir. 1973) ......................................................... 54

United States v. Portillo-Munoz,
  643 F.3d 437 (5th Cir. 2011) ......................................................... 18

United States v. Salerno,
  481 U.S. 739 (1987) ................................................................. 17, 50

United States v. Skoien,
  614 F.3d 638 (7th Cir. 2010) .................................................... 30, 42

Vincenty v. Bloomberg,
  476 F.3d 74 (2d Cir. 2007) ............................................................ 20

Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,
  425 U.S. 748 (1976) ....................................................................... 24

Walker v. Walker,
  17 Ala. 396 (Ala. 1850) ................................................................. 31

Whitt v. Whitt,
  490 S.W.2d 159 (Tenn. 1973) ........................................................ 31

Womack v. Greenwood,
   6 Ga. 299 (Ga. 1849) ........................................................ 31

Ysursa v. Pocatello Educ. Ass'n,
   129 S. Ct. 1093 (2009) ..................................................... 43

**Constitution:**

ALA. CONST. art. I, § 27 (1819) ........................................... 35

**Statutes:**

18 U.S.C. § 922(a)(1) ............................................................. 6

18 U.S.C. § 922(a)(21) ........................................................... 6

18 U.S.C. § 922(a)(21)(C) ...................................................... 6

18 U.S.C. § 922(b)(1) ........................................... 2, 6, 9, 14, 16

18 U.S.C. § 922(c)(1) ........................................... 2, 6, 9, 14, 16

18 U.S.C. § 922(x) ......................................................... 7, 49

18 U.S.C. § 926(a) ............................................................... 7

28 U.S.C. § 1291 ................................................................. 2

28 U.S.C. § 1331 ................................................................. 1

1 Stat. 271 (1792) ............................................................... 39

Pub. L. No. 90-351, 82 Stat. 197 (1968) ........... 3, 4, 5, 13, 14, 16, 45, 47

Pub. L. No. 90-618, 82 Stat. 1213 (1968) ............................... 5, 6

Pub. L. No. 103-322, 108 Stat. 1796 (1994) ......................... 7, 49

ch. 76, §§ 1-2, 1884 MASS. ACTS AND RESOLVES 57 ..................................... 37

**Regulations:**

27 C.F.R. § 478.96 .................................................................. 2, 3, 9, 14

27 C.F.R. § 478.96(b) ........................................................................ 8

27 C.F.R. § 478.99(b) ........................................................................ 8

27 C.F.R. § 478.99(b)(1) .......................................................... 2, 3, 8, 9, 14

27 C.F.R. § 478.124 ................................................................. 2, 3, 9, 14

27 C.F.R. § 478.124(a) ...................................................................... 8

27 C.F.R. § 478.124(c)(1) .................................................................. 8

27 C.F.R. § 478.124(f) ...................................................................... 8

**Rules:**

Fed. R. App. P. 4(a) ........................................................................ 2

**Legislative Materials:**

114 Cong. Rec. 12279 (1968) ......................................... 4, 7, 17, 45, 49

Federal Firearms Act: Hearings Before the Subcomm. to Investigate
Juvenile Delinquency of the Sen. Comm. on the Judiciary,
89th Cong. 67 (1965), available at http://www.lexisnexis.com/
congcomp/getdoc?HEARING-ID=HRG-1965-SJS-0054 ..................... 5, 46, 51

Federal Firearms Act: Hearings Before the Subcomm. to Investigate
Juvenile Delinquency of the Sen. Comm. on the Judiciary,
90th Cong. 57 (1967), available at http://www.lexisnexis.com/
congcomp/getdoc?HEARING-ID=HRG-1967-SJS-0031 ........................... 4, 46

S. Rep. 88-1340 (1964) ............................................................... 3, 16, 45

S. Rep. 89-1866 (1966) ................................................... 5, 46, 47, 48, 49

S. Rep. 90-1097 (1968) ...................................... 3, 5, 7, 9, 14, 16, 19, 45, 47, 48

**Other Authorities:**

An Act For The Better Ordering And Regulating Such As Are Willing
   And Desirous To Be United For Military Purposes Within This
   Province, Nov. 25, 1755, in 3 Jared Sparks, ed., <u>The Works of
   Benjamin Franklin</u> 78 (1836) ........................................................... 41

Black's Law Dictionary (9th ed. 2009). ............................................... 36

<u>Gun Crime in the Age Group 18-20</u> (June 1999), <u>available at</u>
   http://www.psn.gov/pubs/index.aspx#1999 .................................... 48

Op. of Kentucky Att'y Gen. 94-14 (March 3, 1994) ............................. 35

Thomas M. Cooley, <u>Treatise on Constitutional Limitations</u> (5th ed. 1883) ......... 33

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
————————————

No. 11-10959
————————————

NATIONAL RIFLE ASSOCIATION, ANDREW M. PAYNE, REBEKAH
JENNINGS, BRENNAN HARMON,

Plaintiffs - Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, B.
TODD JONES as Acting Director of BATF, ERIC J. HOLDER, JR., as Attorney
General of the United States,

Defendants - Appellees.
————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
————————————

BRIEF FOR APPELLEE
————————————

**STATEMENT OF JURISDICTION**

Plaintiffs-appellants invoked the district court's jurisdiction under 28 U.S.C.

§ 1331.  USCA5 704.  On September 29, 2011, the district court granted summary

judgment in favor of the federal defendants.   USCA5 1094/Appellee's Record

Excerpts ("RE") Tab 8.  Plaintiffs filed a timely notice of appeal on October 4, 2011.

USCA5 1111/RE Tab 9; Fed. R. App. P. 4(a).  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This is a pre-enforcement challenge to the constitutionality of federal statutes and regulations providing that federal firearms licensees may sell handguns and handgun ammunition only to persons 21 years and older, <u>see</u> 18 U.S.C. §§ 922(b)(1), (c)(1); 27 C.F.R. §§ 478.99(b)(1), 478.124, 478.96.  The issues presented are:

1.  Whether plaintiffs have standing to bring this suit.

2.  Whether the Second Amendment and the equal protection component of the Fifth Amendment permit Congress to prohibit federally licensed firearms dealers from selling or delivering handguns or handgun ammunition to persons less than 21 years old.

## STATEMENT OF THE CASE

Plaintiffs — three individuals and the National Rifle Association of America, Inc. — bring this pre-enforcement challenge to the constitutionality of federal criminal statutes making it unlawful for federal firearms licensees to sell handguns and handgun ammunition to persons under 21 years of age, 18 U.S.C. §§ 922(b)(1), (c)(1), and federal regulations implementing those statutory provisions, 27 C.F.R.

§§ 478.99(b)(1), 478.124, 478.96. <u>See</u> USCA5 710. The district court concluded that plaintiffs had standing to sue but determined that the Second Amendment and the equal protection component of the Fifth Amendment did not prohibit Congress from placing these limits on commercial sales of handguns. USCA5 1099-1108. The court accordingly entered summary judgment for the federal defendants. USCA5 1108-09. This appeal followed.

## STATEMENT OF FACTS

### A.  Statutory And Regulatory Background.

1. Following a multi-year inquiry into violent crime that included "field investigation and public hearings," S. Rep. 88-1340, at 1 (1964), Congress found "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians . . . and others whose possession of such weapons is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States," Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225. Congress established that "juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of the total arrests in this category." S. Rep. 90-1097, at 77 (1968). "[M]inors under

the age of 21 years accounted for 35 percent of the arrests for the serious crimes of violence including murder, rape, robbery, and aggravated assault," and 21 percent of the arrests for murder.  114 Cong. Rec. 12279, 12309 (1968) (Sen. Dodd).

Based on its investigations, Congress found "a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior."  Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 225-26. Federal law enforcement officials testified that "[t]he greatest growth of crime today is in the area of young people, juveniles and young adults" and that "[t]he easy availability of weapons makes their tendency toward wild, and sometimes irrational behavior that much more violent, that much more deadly . . ." Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary, 90th Cong. 57 (1967) ("Firearms Act: 1967 Hearings") (testimony of Sheldon S. Cohen).[1]  Law enforcement officers from New York City, Los Angeles, St. Louis, Chicago, Philadelphia, and Atlanta provided Congress with "statistics documenting the misuse of firearms by juveniles and minors," which "take on added significance when one considers the fact that in each of the jurisdictions referred to the lawful acquisition of concealable firearms by these persons was

---

[1] Available at http://www.lexisnexis.com/congcomp/getdoc?HEARING-ID =HRG-1967-SJS-0031.

prohibited by statute." S. Rep. 89-1866, at 59 (1966); see also id. at 58, 60.

Congress's investigations revealed that "almost all of these firearms[] are put into the hands of juveniles by importers, manufacturers, and dealers who operate under licenses issued by the Federal Government." Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary, 89th Cong. 67 (1965) ("Firearms Act: 1965 Hearings") (testimony of Sheldon S. Cohen).[2] Congress thus concluded that concealable firearms "have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior," Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 226, and "that only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible," id. § 901(a)(3), 82 Stat. at 225.

To that end, Congress included statutory provisions designed to address "[t]he clandestine acquisition of firearms by juveniles and minors," S. Rep. 90-1097, at 79, in both the Omnibus Crime Control Act and the Gun Control Act of 1968, Pub. L. No.

_____

[2] Available at http://www.lexisnexis.com/congcomp/getdoc?HEARING-ID =HRG-1965-SJS-0054.

90-618, Title I, § 101, 82 Stat. 1213.  These provisions include 18 U.S.C. §§ 922(b)(1)

and (c)(1), which regulate the sale of firearms by federal firearms licensees ("FFLs")

to persons under 21 years old.[3]

Section 922(b)(1) provides that FFLs may sell or deliver only "a shotgun or

rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows

or has reasonable cause to believe is less than twenty-one years of age" but above

eighteen.  18 U.S.C. § 922(b)(1).  FFLs may not sell or deliver "any firearm or

ammunition to any individual who the licensee knows or has reasonable cause to

believe is less than eighteen years of age."  Ibid.  Section 922(c)(1) provides that an

FFL may not "sell a firearm to [an unlicensed] person who does not appear in person

at the licensee's business premises" unless "the transferee submits to the transferor a

sworn statement" attesting "that, in the case of any firearm other than a shotgun or a

rifle, [the transferee is] twenty-one years or more of age, or that, in the case of a

shotgun or a rifle, [the transferee is] eighteen years or more of age."  Id. § 922(c)(1).

---

[3] A federal firearms license is required to "engage in the business of importing, manufacturing, or dealing in firearms [or ammunition]."  Id. § 922(a)(1).  A person is "engaged in the business" of dealing firearms, id. § 921(a)(21), if that person "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit," id. § 921(a)(21)(C).

Congress recognized that, under these provisions, "a minor or juvenile would not be restricted from owning, or learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. 90-1097, at 79. "At the most," therefore, these provisions "could cause minor inconveniences to certain youngsters who are mature, law abiding, and responsible, by requiring that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. at 12309 (Sen. Dodd). Congress subsequently limited the circumstances under which individuals under 18 years old may possess handguns, but has not placed any similar age-related limits on the possession of handguns by individuals between 18 and 20 years old. See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title XI, § 110201, 108 Stat. 1796, 2010 (adding 18 U.S.C. § 922(x)).

2. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is authorized to issue "such rules and regulations as are necessary to carry out" title 18's provisions relating to firearms. 18 U.S.C. § 926(a); National Rifle Ass'n v. Brady, 914 F.2d 475, 477 (4th Cir. 1990) ("The Secretary of the Treasury was authorized to promulgate regulations to facilitate the enforcement of the Gun Control Act" and "[t]his responsibility was delegated within the Department of the Treasury to the Bureau of Alcohol, Tobacco and Firearms.").

The implementing regulations promulgated by ATF include 27 C.F.R. § 478.99(b), which closely tracks Congress's limitations on commercial sales of firearms to persons under 21 years of age, 18 U.S.C. § 922(b)(1).[4] ATF has also provided that FFLs "shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any [transferee who is not federally licensed] unless the licensee records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a); see also 27 C.F.R. § 478.96(b) (imposing same restrictions with respect to out-of-state and mail order sales). The Form 4473 establishes the transferee's eligibility to possess a firearm by recording, among other things, the transferee's "date and place of birth," 27 C.F.R. § 478.124(c)(1), and the transferee's certification that if "the firearm to be transferred is a shotgun or rifle, the transferee is 18 years or more of age," and if "the firearm to be transferred is a firearm other than a shotgun or rifle, the transferee is 21 years or more of age," id. § 478.124(f).

ATF applies these implementing regulations consistently with Congress's understanding that "a minor or juvenile would not be restricted from owning, or

---

[4] The regulation at 27 C.F.R. § 478.99(b) provides that a federal firearm licensee "shall not sell or deliver (1) any firearm or ammunition to any individual who the [licensee] knows or has reasonable cause to believe is less than 18 years of age" or (2) any firearms "other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the [licensee] knows or has reasonable cause to believe is less than 21 years of age . . ."

learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. 90-1097, at 79.  Accordingly, ATF has explained that a dealer may lawfully sell a firearm to a parent or guardian who is purchasing it for a minor child as long as the minor is not otherwise prohibited from receiving or possessing a firearm.  USCA5 902-03/RE Tab 3 (ATF Chief Counsel Op. 23362 (Dec. 5, 1983)).

## B. Facts And Prior Proceedings.

1.  This is a pre-enforcement suit for declaratory and injunctive relief brought by the National Rifle Association of America, Inc., on behalf of its members, and by Rebekah Jennings, Brennan Harmon, and Andrew Payne — members of the National Rifle Association who are over 18 years old but under 21 years of age, and who wish to purchase handguns.  USCA5 707-10.[5]  Plaintiffs challenge the constitutionality of federal statutes providing that federal firearms licensees may not sell or deliver handguns to persons under 21 years of age, see 18 U.S.C. §§ 922(b)(1), (c)(1), and federal regulations implementing those statutory provisions, 27 C.F.R. §§ 478.99(b)(1), 478.124, 478.96.  USCA5 710.  They contend that the Second

---

[5] This action was originally filed by plaintiff James D'Cruz.  USCA5 12.  In February 2011, after defendants moved to dismiss or in the alternative for summary judgment, the district court granted D'Cruz's motion to withdraw as a named plaintiff and permitted Jennings and Harmon to be added as named plaintiffs.  USCA5 700.

Amendment and the equal protection component of the Fifth Amendment prohibit enactment of the challenged provisions.

Rebekah Jennings uses pistols loaned to her by father to undertake competitive pistol shooting and "practic[e] the safe and effective use of handguns," including through "a firearms course in home safety and defense." USCA5 607-08. She "want[s] to be able to buy [her] own handgun so that [she] can freely choose or modify the style and features that are best suited to [her] needs both for competitive shooting and self-defense purposes." USCA5 611. Jennings states that "[a]lthough it is legal for [her] parents to gift [her] a handgun, they have not done so," and that, in any event, she does "not believe [she] should have to ask [her] parents' (or anyone else's) permission to exercise [her] right to armed self-defense." Ibid.

Brennan Harmon owns a shotgun and a rifle that she uses for target shooting but wishes to purchase a handgun to use for self-defense. USCA5 614. Harmon recently sought to purchase a handgun from a federally licensed firearms dealer but was informed "that federal law barred him from selling [her] this handgun." USCA5 615-16. "Although it is legal for [Harmon's] parents to gift [her] a handgun under federal law, they have not done so," and Harmon does "not believe [she] should have to ask [her] parents' (or anyone else's) permission to exercise [her] right to armed self-defense." USCA5 616.

Andrew Payne recently visited a federally licensed firearms dealer to purchase a handgun "for personal protection and for use at a shooting range," but was told "that [he] was ineligible to purchase the handgun because [he] was not 21 years of age." USCA5 622. Payne states that "[his] parents have not purchased a handgun for [him], and [he does] not believe [he] should have to rely on them to do so in order to exercise [his] right to own and possess a handgun for self-defense and other lawful purposes." USCA5 624.

The National Rifle Association ("NRA") is a membership organization that advocates "the safe and responsible use of firearms for self-defense and other lawful purposes." USCA5 1097. "Many of the NRA's members are 18-to-20 years old or will enter that age bracket during the pendency of this litigation." Ibid. The NRA's members also include at least 330 federal firearms licensees. USCA5 605.

Defendants moved to dismiss plaintiffs' suit or in the alternative for summary judgment, contending that plaintiffs had not established any injury-in-fact and that their legal claims lacked merit. USCA5 87, 729. Defendants explained that federal law permits persons below 21 to acquire handguns through their parents, and that the under-21 plaintiffs had not demonstrated that this alternative was unavailable to them. USCA5 758. Defendants argued that the NRA had failed to established the claimed economic injury to its members who were federal firearms licensees because the

licensees had not demonstrated the existence of any actual lost profits. USCA5 753-54.

3.  The district court granted defendants' motion for summary judgment, holding that plaintiffs had standing but that their claims failed on the merits. The court rested its standing analysis on its conclusion that the challenged federal laws prevented purchases of handguns from federal firearms licensees by 18- to 20-year-olds "who would likely purchase these items were it legal to do so," and that invalidation of these laws thus "could provide the relief that Plaintiffs seek." USCA5 1100/ RE Tab 9; see also USCA5 1103/RE Tab 9 (concluding that "the NRA also has standing to bring this suit on behalf of its FFL members" because "the ban restricts a would-be buyers' market").

The district court determined that "Plaintiffs' claims do not raise Second Amendment concerns," USCA5 1107 n.3/RE Tab 9, in light of the Supreme Court's recent admonition "that the right to bear arms is not absolute" and that "conditions and qualifications on the commercial sale of arms [are] presumptively lawful regulatory measures," USCA5 1104/RE Tab 9 (citing District of Columbia v. Heller, 554 U.S. 570, 626-27 & n.26 (2008)). The court observed that "[o]utside the list of examples of presumptively lawful limitations, neither Heller nor its companion case, McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), directly addresses the buying and selling of firearms, let alone holds this to be at the 'core' of the Second Amendment right." USCA5 1105/RE Tab 9. The district court also noted this Court's recognition that

"young persons do not enjoy the same guarantees of the Second Amendment as do their elders of society." Ibid./RE Tab 9.  Notwithstanding the Second Amendment's protection of "an individual right to bear arms, . . .'felons, infants and those of unsound mind may be prohibited from possessing firearms.'" Ibid. (quoting United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001)).  The district court accordingly concluded that the Second Amendment does not prohibit Congress from providing that commercial sales of handguns may be made only to persons 21 years old and above.  USCA5 1106/RE Tab 9.

The district court further concluded that the federal laws did not impermissibly distinguish "between 18- to 20-year-olds and those over the age of 20."  USCA5 1107/RE Tab 9.  The district court observed that because "'[a]ge is not a suspect classification under the Equal Protection Clause,'" USCA5 1107/RE Tab 9 (quoting Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000)), "[t]he Constitution permits legislators to 'draw lines on the basis of age when they have a rational basis for doing so at a class-based level,'" ibid./RE Tab 9 (quoting Kimel at 86).  The court explained that, here, Congress "found 'that there is a causal relationship between the easy availability of firearms other than rifles and shotguns, and juvenile and youthful criminal behavior, and that such firearms have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior.'"  USCA5 1107-08/RE Tab 9 (quoting Pub. L. No.

90-351, Title IV, § 901(a)(6), 82 Stat. 226). Congress accordingly passed the challenged laws "in an attempt to 'increase safety and strengthen local regulation' by 'establishing minimum ages of 18 for the purchase of long guns and 21 for the purchase of handguns.'" USCA5 1108/RE Tab 9 (quoting S. Rep. 90-1097, at 205 (brackets omitted)). Thus, because "Congress identified a legitimate state interest—public safety—and passed legislation that is rationally related to addressing that issue," Congress "acted within its constitutional powers and in accordance with the Equal Protection Clause." Ibid./RE Tab 9.

## SUMMARY OF ARGUMENT

Plaintiffs seek preenforcement review of federal statutes and regulations providing that federal firearms licensees may sell handguns and handgun ammunition only to persons 21 years and older, *see* 18 U.S.C. §§ 922(b)(1), (c)(1); 27 C.F.R. §§ 478.99(b)(1), 478.124, 478.96. However, they fail to demonstrate any injury-in-fact conferring standing to sue.

Plaintiffs acknowledge that the challenged federal laws permit persons aged 18 to 20 to possess and use handguns, and to acquire handguns through non-commercial channels such as a gift from a parent. The 18-to-20-year-old plaintiffs state that they do not believe they should have to ask their parents' (or anyone else's) permission to

exercise their right to armed self defense, but they make no showing that they have actually been impeded from obtaining handguns and ammunition through their parents or others. And although the dealer plaintiffs state that the challenged laws have prevented purchases of handguns by 18-to-20-year-old persons, the dealers have not established that the parents of these 18-to-20-year-old persons are unable or unwilling to buy these handguns for them. Thus, the dealers have failed to demonstrate that they have in fact lost any sales.

In any event, plaintiffs' claims fail on the merits because the challenged laws do not burden conduct within the scope of the Second Amendment. "[T]he right secured by the Second Amendment is not unlimited," <u>District of Columbia v. Heller</u>, 554 U.S. 570, 626 (2008), and is subject to exceptions that are "not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country," <u>United States v. Emerson</u>, 270 F.3d 203, 261 (5th Cir. 2001). Restrictions on the purchase and possession of handguns by persons under 21 are longstanding, and historical interpretations of the Second Amendment by courts and commentators confirm that such age qualifications were consistent with the Second Amendment right as it was historically understood. Federal and state militia laws establish that age qualifications likewise applied to militia enrollment — including qualifications setting the minimum age for enrollment at 21 years — and

that even when the minimum age of enrollment was set below 21, it was not presumed that persons under 21 would necessarily be able to acquire firearms independently of their parents or guardians.

In addition, even if plaintiffs' suit implicates their Second Amendment rights, the challenged federal laws all readily withstand heightened scrutiny. Following a multi-year inquiry into violent crime that included "field investigation and public hearings," S. Rep. 88-1340, at 1 (1964), Congress found "a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior," Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 225-26. Congress further found that "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians . . . and others whose possession of such weapons is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States," Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 225. Congress accordingly enacted statutory provisions designed to address "[t]he clandestine acquisition of firearms by juveniles and minors," S. Rep. 90-1097, at 79. These provisions include 18 U.S.C. § 922(b)(1) and (c)(1), which require a minimum age of 21 years for commercial purchases of handguns and handgun ammunition.

Congress was aware "that there are some youngsters under the age of 21 who

are more mature than others," and that these age qualifications on handgun sales "could cause minor inconveniences to certain youngsters who are mature, law abiding, and responsible, by requiring that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. at 12309 (Sen. Dodd). Congress determined, however, that there was not "any way to legislate fairly in this area except to require that, if they are going to have a handgun, the parent or guardian must buy it for them." Ibid. Congress viewed this compromise as not "unreasonable, especially in light of the continuing increase of crimes of violence by persons under 21 years of age." Ibid.

The challenged federal laws are therefore at least "substantially related," Clark v. Jeter, 486 U.S. 456, 461 (1988), to the government's interest in public safety, which the Supreme Court has recognized as "compelling," United States v. Salerno, 481 U.S. 739, 750 (1987); see also Schenck v. Pro-Choice Network of Western New York, 519 U.S. 357, 376 (1997) (referring to the "significant governmental interest in public safety").

For these reasons, plaintiffs' equal protection claims also fail. The government "may discriminate on the basis of age" as long as "the age classification in question is rationally related to a legitimate state interest." Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000). In light of the legislative record here, plaintiffs cannot meet their

burden of establishing that "the government's actions were irrational," or that "the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Id. at 84 (internal quotation marks omitted).

## STANDARD OF REVIEW

"The court reviews questions of jurisdiction, and specifically standing, de novo." National Federation of the Blind of Texas, Inc. v. Abbott, 647 F.3d 202, 208 (5th Cir. 2011). The Court "review[s] de novo the constitutionality of federal statutes." United States v. Portillo-Munoz, 643 F.3d 437, 439 (5th Cir. 2011).

## ARGUMENT

**I.  Plaintiffs Lack Standing To Bring This Suit.**

**A.  The 18-to-20-Year-Old Plaintiffs Have Failed To Establish That They Cannot Lawfully Obtain Handguns and Handgun Ammunition For Use In Self-Defense.**

1.  Although plaintiffs allege that the challenged federal laws burden "Ms. Jennings', Ms. Harmon's, Mr. Payne's, and NRA members' right to keep and bear arms under the Second Amendment," USCA5 710, they have not established the existence of such a burden as a matter of law or fact. Sections 922(b)(1) and (c)(1) regulate only commercial sales of firearms and ammunition to persons under the age

of 21, including circumstances where "an underaged person is using a straw purchaser as his agent to purchase a firearm and the underaged person is the actual purchaser." USCA5 902-03/RE Tab 3 (ATF Chief Counsel Op. 23362).

As Congress recognized, these laws do not bar other channels of firearm acquisition by persons who are 18 to 20 years old. Nor do they prohibit such persons from possessing firearms, including handguns. See, e.g., S. Rep. 90-1097, at 79. ATF has thus made clear that these laws "were intended to prevent juveniles from acquiring firearms without their parents' or guardian's knowledge," not to prohibit them "from possessing, owning, or learning the proper usage of firearms." USCA5 902-903.

ATF has explained that if "the actual purchaser, a person of legal age, is acquiring the firearm for the purpose of loaning or giving it to an underaged person[,] [n]either the sale nor the minor's subsequent receipt and possession of the firearm would violate Federal law, provided that the person is not otherwise disabled" from possessing a firearm. USCA5 903. Thus, for example, a dealer may lawfully sell a firearm to a parent or guardian who is purchasing it for a minor child as long as the minor is not otherwise prohibited from receiving or possessing a firearm. Ibid Indeed, as the Ninth Circuit has noted, it is not illegal for a parent to buy a gun for his or her child even if "the child's own money" is used to make the purchase. United States v. Moore, 84 F.3d 1567, 1571 (9th Cir. 1996).

Plaintiffs acknowledge that Sections 922(b)(1) and (c)(1) permit persons aged 18 to 20 to "lawfully possess and use handguns," (Appellant Br. 4), and also allow for certain "alternate channels of handgun acquisition," id. at 36. Accordingly, they cannot demonstrate that these laws necessarily burden their "right to keep and bear arms under the Second Amendment." USCA5 710.[6]

Plaintiffs also fail to demonstrate that these laws actually burden their Second Amendment rights, as a matter of fact, by operating to prevent them from acquiring a handgun and handgun ammunition for use in self-defense. Only one declarant, James D'Cruz, states that his parents "have indicated that they will not buy me the new handgun I want," USCA5 637, but D'Cruz also acknowledges that he already owns a handgun, which was "gifted to [him] on [his] eighteenth birthday, along with a box of ammunition," USCA5 635.

None of the other declarants assert that they have asked their parents to purchase a handgun and ammunition for them, much less that their parents are unable or unwilling to do so. Indeed, declarant Josh Whitman states that he already owns

_____

[6] Plaintiffs therefore err in their reliance (Appellant Br. 30, 37) on Vincenty v. Bloomberg, 476 F.3d 74 (2d Cir. 2007). The challenged law there imposed a "blanket prohibition against young adults' public possession of graffiti implements, encompassing possession for purely lawful purposes." Id. at 89 (emphasis added).

"two shotguns, a rifle, and a 9mm handgun," and that "[his] father gifted [him] each of these firearms."  USCA5 649.

The declarants who do not already own handguns recognize that "it is legal for [their] parents to gift [them] a handgun under federal law," and state only that their parents "have not done so."  USCA5 611, 616, 624, 642 (declarations of Rebekah Jennings, Brennan Harmon, Andrew Payne, and Grant Anastas-King).  They make no showing that their parents cannot or will not purchase a handgun and ammunition for them.  Rebekah Jennings, for example, states that her father has made his pistols available to her since she was 13 years old such that she has been able to spend "thousands of hours practicing the safe and effective use of handguns," including through "a firearms course in home safety and defense."  USCA5 607-08.  Brennan Harmon already owns a shotgun and a rifle, and "[t]hrough [her] father's instruction, and through personal study" has had the opportunity to become "well acquainted with the proper and safe handling, use, and storage of firearms and ammunition."  USCA5 614.  Andrew Payne, who owns two long guns, has received "training in the proper and safe handling of firearms, including handguns," through "regularly accompan[ying] [his] father on visits to a shooting range" and "hunt[ing] together."  USCA5 620.  Grant Anastas-King already owns a rifle and has become "familiar with the safe and proper way to handle and use firearms, including handguns," through

activities including "shooting at ranges with [his] parents." USCA5 639-40. Although Halie Fewkes asserts that she "[does] not believe [her] parents will buy" her a handgun as a gift, she does not state the basis for this belief. USCA5 628. But she does state that "under [her] father's instruction," she "use[s] a .44 magnum handgun for target practice," and that "[t]hrough instruction from [her] father over the years, as well as personal study," she is "well acquainted with the proper and safe handling, use, and storage of firearms and ammunition." USCA5 626.

No federal law limits the amount of handgun ammunition that can be purchased at one time or prohibits the sale of ammunition to persons between 18 and 20 years old by commercial enterprises without a federal firearms license, such as convenience stores. Plaintiffs are therefore not aided by their assertions that they "do not believe it will be feasible to rely on [their] parents every time [they] need ammunition," USCA5 624, 628, 637.

Because federal law also does not prohibit persons 18 through 20 from receiving a handgun as a bona fide gift from a responsible adult, plaintiffs are incorrect to suggest that the federal laws provide no mechanism for handguns to be obtained by persons aged 18 through 20 "who do not have living parents, who are estranged from their parents, who do not live in the same state as their parents, or whose parents are legally ineligible . . . or, for whatever reason, unwilling to purchase

a handgun for their son or daughter as a gift," (Appellant Br. 37). In any event, plaintiffs make no showing that these circumstances apply to any members of the plaintiff class.

Plaintiffs thus have not demonstrated any injury-in-fact in light of these available alternative means for obtaining handguns and handgun ammunition for the purpose of self-defense. They cannot establish standing merely by asserting that they "do not believe [they] should have to ask [their] parents' (or anyone else's) permission to exercise [their] right to armed self-defense," USCA5 611, 616, 624, 642. As the Supreme Court has repeatedly explained, plaintiffs lack standing where "they assert[] only an 'undifferentiated, generalized grievance about the conduct of government.'" League of United Latin American Citizens v. City of Boerne, 659 F.3d 421, 430 (5th Cir. 2011) (quoting Lance v. Coffman 549 U.S. 437, 442 (2007)).

The district court misconstrued the claim being asserted by the plaintiffs and thus failed to account for these alternative means for plaintiffs to obtain handguns and handgun ammunition for the purpose of self-defense. The district court stated that plaintiffs had established standing by "identif[ying] a specific handgun they would purchase from an FFL if lawfully permitted to do so." USCA5 1100. But as plaintiffs have emphasized on appeal (Appellant Br. 34), they are not proceeding based on any "supposed right to buy a handgun from a particular source—a commercial firearms

merchant holding an FFL."  Instead, they contend that the challenged laws burden

"Ms. Jennings', Ms. Harmon's, Mr. Payne's, and NRA members' right to keep and

bear arms under the Second Amendment," USCA5 710; see also (Appellant Br. 3).

As explained above, however, plaintiffs have not established the existence of

any actual burdens on the ability of these individuals "to keep and bear arms," USCA5

710, as a matter of law or fact.  The district court therefore erred in concluding that

Roe v. Wade, 410 U.S. 113 (1973) and Doe v. Bolton, 410 U.S. 179 (1973), support

plaintiffs' standing to sue.  See USCA5 1099-1100; Roe, 410 U.S. at 120, 124 (Roe's

showing of the circumstances resulting in her "inability to obtain a legal abortion in

Texas"); Doe, 410 U.S. at 185-86 (same, with respect to plaintiff Doe).  The district

court was likewise incorrect in analogizing this case to Virginia State Board of

Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976).  See USCA5

1100.  The legally-cognizable harm to the consumer plaintiffs in Virginia State Board

of Pharmacy was an injury to their First Amendment right to information, not any

claimed constitutional right to the product they sought to buy.  See 425 U.S. at 757

("If there is a right to advertise, there is a reciprocal right to receive the advertising,

and it may be asserted by these appellees.").

**B. The Federal Firearms Licensee Plaintiffs Lack Standing To Challenge The Federal Laws On Behalf of Persons Aged 18 To 20 Years Old.**

Standing to sue also has not been established by the plaintiff NRA members who are federally licensed firearms dealers and "who — as vendors of arms and ammunition necessary to the exercise of the right to keep and bear arms — seek to vindicate the Second Amendment rights of their customers." USCA5 504-505 (Second Amended Complaint). Every plaintiff must show an injury-in-fact in order to establish standing, even where he or she is attempting to assert the constitutional rights of third parties. See Powers v. Ohio, 499 U.S. 400, 410-11 (1991); Okpalobi v. Foster, 190 F.3d 337, 351 (5th Cir. 1999).

Here, the dealer plaintiffs have not demonstrated any injury-in-fact. Although plaintiffs allege that the federal laws "restrict the handgun-buyers market available to these dealers and therefore cause[] economic injury" to them, USCA5 504, no such economic loss has actually been shown. The federal laws provide that commercial sales of handguns may not be made to persons aged 18 to 20 years old but do not prevent such persons from receiving handguns as a bona fide gift from a responsible adult, such as a parent or guardian. USCA5 903/RE Tab 3 (ATF Chief Counsel Op. 23362). Thus, the dealer plaintiffs cannot establish economic injury solely through assertions that they have "consistently and repeatedly refused to sell handguns and

-25-

handgun ammunition to law-abiding adults between the ages of eighteen and twenty who have asked to purchase these items." USCA5 674 (Declaration of Roger Koeppe); <u>see also</u> USCA5 671 (Declaration of Paul White). The dealer plaintiffs have not demonstrated that the parents of any of these 18 to 20-year-old persons are unable or unwilling to buy these handguns for them.

The district court conflated the constitutional and prudential requirements for standing when it stated that the dealer plaintiffs had standing because "vendors and service providers have standing to challenge sales and similar restrictions that burden their would-be customers' constitutional rights," USCA5 1102-03 (citing <u>Craig v. Boren</u>, 429 U.S. 190 (1976), <u>Carey v. Population Servs. Int'l</u>, 431 U.S. 678 (1977), <u>Reliable Consultants, Inc. v. Earle</u>, 517 F.3d 738 (5th Cir. 2008), <u>Deerfield Med. Ctr. v. City of Deerfield Beach</u>, 661 F.2d 328 (5th Cir. 1981), and <u>United States v. Coil</u>, 442 F.3d 912 (5th Cir. 2006)).

In each of these cases, the vendor plaintiffs independently satisfied the constitutional requirement to show an injury-in-fact. In <u>Craig</u>, a licensed vendor of low-alcohol beer sued to challenge a State law requiring her "to cease [her] proscribed activities" of selling low-alcohol beer to 18-to-20-year-old males or else "suffer appropriate sanctions." 429 U.S. at 196 n.5. The vendor experienced "a direct economic injury" through the provision's "constriction of her buyers' market." <u>Id.</u> at

194. In <u>Carey</u>, the plaintiff "violated the challenged statute in the past," "continues to violate it in the regular course of its business," "has been advised by the authorities responsible for enforcing the statute that it is in violation," and "on at least one occasion, it has been threatened with prosecution." 431 U.S. at 683 n.3. Similarly, in <u>Reliable Consultants</u>, the plaintiff was consciously violating the law by selling sexual devices that were criminalized by challenged statute and therefore "fear[ed] prosecution under the statute." 517 F.3d at 742. In <u>Coil</u>, the constitutional challenge was raised as a defense in an actual criminal prosecution. 442 F.3d at 913. And in <u>Deerfield Medical Center</u>, the plaintiffs were challenging the denial of "an application by plaintiffs for an occupational license to open an abortion facility in an area zoned for business operations." 661 F.2d at 330.

## II.  Plaintiffs' Claims Fail On The Merits

In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), the Supreme Court determined that the Second Amendment conferred an individual right to keep and bear arms, but noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." <u>Id.</u> at 626. The Court provided a non-"exhaustive" list of "presumptively lawful regulatory measures," including "laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27 & n.26. The Court "made it clear in <u>Heller</u> that [its] holding did not cast doubt" on such measures

and "repeat[ed] those assurances" in <u>McDonald v. City of Chicago</u>, 130 S. Ct. 3020, 3047 (2010) (plurality).

Prior to <u>Heller,</u> this Court likewise concluded that the Second Amendment protects "individual rights" but that this "does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." <u>United States v. Emerson</u>, 270 F.3d 203, 261 (5th Cir. 2001). The Court noted that "it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms." <u>Ibid</u>. As plaintiffs recognize, "[a]s a legal matter, the term 'infant' is typically a synonym for 'minor,' which at common law was understood to include individuals under the age of 21." (Appellant Br. 21).

Plaintiffs acknowledge that the age qualification they challenge is a restriction on commercial "handgun *sales* to 18-20-year-olds" that "does not bar *possession*." (Appellant Br. 46-47). This age qualification on sales is less severe than the age qualification on the right to keep and bear arms that this Court, in <u>Emerson</u>, recognized as constitutionally permissible, 270 F.3d at 261. Moreover, the challenged restriction falls squarely within the category of "conditions and qualifications on the commercial sale of arms," and is therefore among the "presumptively lawful

-28-

regulatory measures" expressly identified in <u>Heller</u>, 554 U.S. at 626-27 & n.26, and

<u>McDonald</u>, 130 S. Ct. at 3047.

## A. The Challenged Federal Laws Do Not Burden Conduct Protected By The Second Amendment

### 1. Restrictions On The Commercial Sale Of Firearms To Persons Under 21 Comport With Historical Understandings Of The Second Amendment Right.

As this Court has recognized, the Second Amendment right "is not unlimited,"

<u>Heller</u>, 554 U.S. at 626, and is subject to exceptions that are "not inconsistent with the

right of Americans generally to individually keep and bear their private arms as

historically understood in this country," <u>Emerson</u>, 270 F.3d at 261. The Supreme

Court, in exploring "the historical understanding of the scope of the right," <u>Heller</u>, 554

U.S. at 625, has looked to "a variety of legal and other sources to determine the public

understanding of [the] legal text in the period after its enactment or ratification," <u>id.</u>

at 605 (emphasis omitted). These include "analogous arms-bearing rights," <u>id.</u> at 600,

adopted by states "[b]etween 1789 and 1820," <u>id.</u> at 601-602, and the interpretation

of these provisions by "19th-century courts and commentators," <u>id.</u> at 603. The

Supreme Court has also looked to "[p]ost-Civil War [l]egislation," explaining that

because "those born and educated in the early 19th century faced a widespread effort

to limit arms ownership by a large number of citizens[,] their understanding of the origins and continuing significance of the Amendment is instructive." Id. at 614.

The Supreme Court's analysis accordingly tells us "that the legislative role" in defining the scope of the Second Amendment right "did not end in 1791." United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). "That some categorical limits are proper is part of the original meaning, leaving to the people's elected representatives the filling in of details." Ibid. (emphasis omitted).

Thus, the D.C. Circuit recently concluded "that basic registration of handguns is deeply enough rooted in our history to support the presumption that a registration requirement is constitutional," noting that "Heller considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century," and that "[a]t just about the same time, states and localities began to require registration of handguns." Heller v. District of Columbia, — F.3d —, 2011 WL 4551558, at *6 (D.C. Cir., Oct. 4, 2011) (Heller II). As the D.C. Circuit explained: "[T]he basic requirement to register a handgun is longstanding in American law, accepted for a century in diverse states and cities and now applicable to more than one fourth of the Nation by population[,] [t]herefore we presume the District's basic registration requirement . . . does not impinge upon the right protected by the Second Amendment." Id. at *7.

State laws restricting the purchase or use of firearms by individuals below 21 years of age have been in existence substantially longer than the felony and mental illness disqualifications that <u>Heller</u> characterized as "longstanding," and the handgun registration requirements recently upheld by the D.C. Circuit in <u>Heller II</u>.  Before the end of the nineteenth century, nineteen States and the District of Columbia enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of "minors" while the state's age of majority was set at 21.  USCA5 313-333/RE Tab 2 (chart reproducing State laws).[7]  Twelve of these

------

[7] Alabama and Tennessee (1856), Kentucky (1873), Indiana (1875), Georgia (1876), Mississippi (1878), Missouri (1879), Delaware and Illinois (1881), Maryland and West Virginia (1882), Kansas and Wisconsin (1883), Iowa (1884), Nevada (1885), Louisiana and Wyoming (1890), District of Columbia (1892), North Carolina (1893), and Texas (1897).

For states that prohibited purchase or possession of firearms by "minors" and set the age of majority at 21, see <u>Walker v. Walker</u>, 17 Ala. 396 (Ala. 1850); <u>Jones v. Wells</u>, 2 Houst. 209 (Del. Super. Ct. 1860); <u>Womack v. Greenwood</u>, 6 Ga. 299 (Ga. 1849); <u>Peters v. Jones</u>, 35 Iowa 512 (Iowa 1872); <u>Burgett v. Barrick</u>, 25 Kan. 526 (Kan. 1881); <u>Blackard v. Blackard</u>, 426 S.W.2d 471, 472 (Ky. 1968); <u>Fitz-Gerald v. Bailey</u>, 58 Miss. 658 (Miss. 1881); <u>Crouch v. Crouch</u>, 187 S.E.2d 348, 349 (N.C. Ct. App. 1972); <u>Whitt v. Whitt</u>, 490 S.W.2d 159, 160 (Tenn. 1973); <u>Memphis Trust Co. v. Blessing</u>, 58 S.W. 115, 117 (Tenn. 1899); <u>Bullock v. Sprowls</u>, 54 S.W. 657, 659-60 (Tex. Civ. App. 1899); <u>Doe v. Archdiocese of Milwaukee</u>, 700 N.W.2d 180, 188 (Wis. 2005).  Until the 1970s, Illinois, Missouri, and Oklahoma set the age of majority at twenty-one for men, and eighteen for women.  <u>See</u> <u>Castner v. Walrod</u>, 83 Ill. 171 (Ill. 1876); <u>Anderson v. Williams</u>, 104 N.E. 659, 661 (Ill. 1914); <u>Reisse v. Clarenbach</u>, 61 Mo. 310 (Mo. 1875); <u>Bassett v. Bassett</u>, 521 P.2d 434, 435 n.2 (Okla. Civ. App. 1974).

States and the District of Columbia had Second Amendment analogues in their respective constitutions when they enacted these qualifications.  USCA5 313-333/RE Tab 2.[8]  By the early twentieth century, three more States restricted the purchase or use of particular firearms by individuals below 21 years of age, and two of these states had Second Amendment analogues in their constitutions.  USCA5 313-333/RE Tab 2.[9]

Thus, by 1923, a total of twenty-two States and the District of Columbia had made 21 the minimum age for purchase or use of particular firearms, and fourteen of these States (and the District of Columbia) had State constitutional analogues to the Second Amendment.  USCA5 313-333/RE Tab 2; supra, notes 7-9.  Within the same time-frame (mid-nineteenth century through early twentieth century) twenty-one other States imposed age qualifications on the purchase or use of certain firearms, setting the minimum age between twelve and twenty.  USCA5 313-333/RE Tab 2.[10]

---

[8] Alabama, Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Tennessee, Texas, and Wyoming.  Because the District of Columbia is a federal enclave, it is directly constrained by the Second Amendment.

[9] Oklahoma (law enacted in 1890, Oklahoma admitted as a State in 1907), New Hampshire (1923), and South Carolina (1923).  Oklahoma and South Carolina have State constitutional provisions protecting the right to bear arms.

[10] Oregon (1868), Ohio (1880), Florida and Pennsylvania (1881), New Jersey (1882), Michigan, New York, and Rhode Island (1883), Washington

(continued...)

-32-

"19th-century courts and commentators," <u>Heller</u>, 554 U.S. at 603, concurred that age restrictions on the purchase of firearms, including restrictions on purchase by individuals under 21, were consistent with the Second Amendment right. "The judge and professor Thomas Cooley, who wrote a massively popular 1868 Treatise on Constitutional Limitations," <u>Heller</u>, 554 U.S. at 616, included among the permissible exercises of State police power "[t]hat the State may prohibit the sale of arms to minors," USCA5 917 (reproducing Thomas M. Cooley, <u>Treatise on Constitutional Limitations</u> 740 n.4 (5th ed. 1883)). Cooley perceived no inconsistency between these age qualifications on sales and the fact that "State constitutions," like the federal constitution, "provide that the right of the people to bear arms shall not be infringed." USCA5 908; <u>see also</u> <u>Heller</u>, 554 U.S. at 616-17 (treating Cooley's interpretations of the Second Amendment as persuasive authority); <u>Emerson</u>, 270 F.3d at 235-36, 258-59 (same).

---

[10](...continued)
(enacted 1883, admitted as a State in 1889), Massachusetts (1884), Minnesota and Virginia (1889), Vermont (1896), South Dakota (1903), Utah (1905), Montana (1907), Idaho and Maine (1909), Arizona (enacted 1883, admitted as a State in 1912), California and Connecticut (1923).

Subsequently, age restrictions were also enacted by New Mexico (1971), Arkansas (1975), Nebraska (1977), Alaska (1978), North Dakota (1985), Hawaii (1988), and Colorado (1993).

The Supreme Court of Tennessee, a State that prohibited the sale of pistols to minors and set the age of majority at 21, <u>see</u> <u>supra</u> note 7, upheld a conviction for selling a pistol to a minor against a challenge brought under the state's Second Amendment analogue, expressly rejecting the defendant's argument "that every citizen who is subject to military duty has the right 'to keep and bear arms,' and that this right necessarily implies the right to buy or otherwise acquire, and the right in others to give, sell, or loan to him." <u>State v. Callicutt</u>, 69 Tenn. 714, 714 (Tenn. 1878). The court explained that the challenged restrictions "were not intended to affect, and do not in fact abridge, the constitutional right of the 'citizens of the State to keep and bear arms for their common defense,' but have been passed with a view 'to prevent crime.'" <u>Ibid.</u> The court stated that "we regard the acts to prevent the sale, gift, or loan of a pistol or other like dangerous weapon to a minor, not only constitutional as tending to prevent crime but wise and salutary in all its provisions." <u>Ibid.</u> A conviction for violating a state law "which makes it a misdemeanor to 'sell, or give, or lend, to any male minor,' a pistol" was likewise upheld by the Supreme court of Alabama, <u>Coleman v. State</u>, 32 Ala. 581 (1858), a State that set the age of majority at 21, <u>supra</u> note 7, and provided in its constitution "[t]hat every citizen has

a right to bear arms in defense of himself and the state," ALA. CONST. art. I, § 26 (1819).[11]

Thus, that age qualifications restricting the purchase of firearms by individuals below 21 years of age comport with "the historical understanding of the scope of the [Second Amendment] right," Heller, 554 U.S. at 625, is confirmed by the interpretation of "analogous arms-bearing rights in state constitutions," id. at 600, by "19th-century courts and commentators," id. at 603. At present, all fifty States and the District of Columbia have minimum-age qualifications for the use or purchase of particular firearms. Id.; see also supra, notes 7-10. And at the time that these minimum-age qualifications were enacted, thirty-five of the fifty States (and the District of Columbia) had constitutional provisions securing the right to keep and bear

---

[11] See also Op. of Kentucky Att'y Gen. 94-14 (March 3, 1994) ("Given the Commonwealth's history of restricting the access of minors to deadly weapons, it is not unreasonable to conclude that the Kentucky constitutional provision recognizing a right to bear arms has no application to minors" and that "[i]f the right to bear arms does extend to minors, it likely is a more limited right than that possessed by adults"); Parman v. Lemmon, 244 P. 227, 228 (Kan. 1925) (rejecting constitutional challenge to provision prohibiting sale and possession of "dangerous weapons to minors," including "any pistol, revolver or toy pistol," in an action alleging that violation of the statute was negligence per se); Biffer v. City of Chicago, 116 N.E. 182, 184-85 (1917) (city ordinance denying concealable weapons permit to "all minors" did not violate the federal or state constitutional right to bear arms).

arms.  <u>See</u> USCA5 313-333.[12]  Twenty-nine of the fifty States (and the District of Columbia) only placed a minimum-age qualification on the purchase or use of handguns – usually defined as pistols, revolvers, or other concealable firearms.  <u>Id.</u>[13]

## 2. Federal And State Militia Laws Did Not Create a Vested Right To Purchase Arms For Individuals Aged 18 to 21.

Plaintiffs acknowledge this Court's recognition "that infants may be prohibited from possessing firearms" (Appellant Br. 21 (quoting <u>Emerson</u>, 270 F.3d at 261 (quotation marks and ellipses omitted)), and further acknowledge that "[a]s a legal matter, the term 'infant' is typically a synonym for 'minor,' which at common law was understood to include individuals under the age of 21," <u>ibid.</u> (citing definition of "infant" in Black's Law Dictionary (9th ed. 2009)).  They nevertheless contend that "Second Amendment rights vest at age 18," (Appellant Br. 17), citing for support federal and state laws that made persons 18 to 20 years old eligible for militia service.

---

[12] Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Wyoming.

[13] Alabama, California, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

Plaintiffs fail to recognize that the ability to bear arms in the highly regulated context of military service is not inconsistent with the existence of conditions on the personal use and purchase of firearms, including age qualifications, as a matter of historical practice and common sense. Massachusetts, for example, provided that "[n]o person shall sell or furnish to a minor under the age of fifteen years, any firearms or other dangerous weapon: provided, that instructors and teachers may furnish military weapons to pupils for instruction and drill." ch. 76, §§ 1-2, 1884 MASS. ACTS AND RESOLVES 57, 57. Other States required parents to furnish the firearms for their minor child's militia duty.[14] In the course of Congressional debate over the 1792 Militia Act, while Congress was considering whether the United States should furnish firearms to persons who were unable to equip themselves,

---

[14] See USCA5 684 (1785 Delaware law, § 7, requiring every "person of the age of eighteen and under twenty-one years, who hath an estate of the value of eighty pounds, or whose parents shall pay six pounds annually towards the public taxes, shall by his parent or guardian respectively be provided with" arms); id. at 686 (1789 Massachusetts law, § XIII, requiring "every non-commissioned officer and private [soldier] of the said militia, not under the control of parents, masters or guardians. . . [to] equip himself. . . with a good fire-arm," and § XIV, requiring that "all parents, masters and guardians, shall furnish those of the said militia who shall be under their care and command, with the arms and equipments aforementioned"); id. at 688 (1786 New Hampshire law, § 6, providing that "Such of the training band as are under the care of parents, masters, or guardians, are to be furnished by them with such arms and accoutrements"); see also USCA5 939-42/RE Tab 7 (reproducing similar laws passed by Vermont (1797), North Carolina (1806), Maine (1821), and Missouri (1825)).

Representative John Vining "asked by what means minors were to provide themselves with the requisite articles?" USCA5 930-31 (reproducing 2 Annals of Cong. 1854-5). The remedy, according to Representative Jeremiah Wadsworth, was that "as to minors, their parents or guardians would prefer furnishing them with arms themselves . . ." Id. (reproducing 2 Annals of Cong. 1855-56).

Thus, for persons under 21 years old, service in the militia did not presuppose the ability to purchase firearms. Plaintiffs are mistaken in relying on United States v. Miller, 307 U.S. 174, 179 (1939), for the opposite proposition. (Appellant Br. 19). Miller does not state that the requirement "to appear bearing arms supplied by themselves" (Appellant Br. 19 (quoting Miller, 307 U.S. at 179)) extended to persons below the age of majority, and in fact the militia laws discussed by Miller include a 1784 Massachusetts provision requiring that "every non-commissioned officer and private soldier of the said militia not under the control of parents, masters or guardians, and being of sufficient ability therefor in the judgment of the Selectmen of the town in which he shall dwell, shall equip himself, and be constantly provided with a good fire arm." 307 U.S. at 180 (emphasis added and internal quotation marks omitted); see also supra note 14.

In any event, the 1792 Militia Act gave States broad discretion to impose age qualifications on militia service, including discretion to except from service persons

aged below 21 years old. Militia Act § 2, 1 Stat. 272. The Act provided that "each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia." Militia Act § 1, 1 Stat. 271 (emphasis added). In the very next section, the Act made clear that "all persons who now are or may hereafter be exempted by the laws of the respective states, shall be, and are hereby exempted from militia duty, notwithstanding their being above the age of eighteen, and under the age of forty-five years." Id. § 2, 1 Stat. 272 (emphasis added). Indeed, when the governor of Massachusetts requested legal advice on this precise issue, the Massachusetts Supreme Judicial Court concluded: "[I]t is competent for the State legislature by law to exempt from enrolment in the militia, all persons under twenty-one and over thirty years of age." In re Opinion of the Justices, 39 Mass. 571, 576 (1838).

A number of States — Delaware, Georgia, Kansas, New Jersey, North Carolina, Ohio, Pennsylvania — accordingly chose to enroll only individuals over 21 in their respective militias. USCA5 921-23/RE Tab 4 (chart reproducing statutory provisions). Several other states — Michigan, Missouri, and New York — required parental consent for individuals under 21 to serve in their militias. USCA5 924/RE Tab 4.

In eighteenth century Virginia, the minimum age of militia service fluctuated between 18 and 21. USCA5 936-38/RE Tab 6 (chart reproducing statutory provisions). In 1705, during Queen Anne's War (1702-13), Virginia set the age restriction on militia duty at 16. USCA5 936/RE Tab 6. In 1723, it raised the minimum age for militia duty to 21. USCA5 936/RE Tab 6. The minimum age remained at 21 when Virginia passed a later militia law in 1738, and when it sought recruits for a 1754 expedition against the French. USCA5 936-937/RE Tab 6. In 1755, at the beginning of the Seven Years War in 1755, the legislature lowered the minimum age for service to 18. USCA5 937/RE Tab 6. At the beginning of the Revolutionary War, the legislature lowered the minimum age to 16. USCA5 938/RE Tab 6. In 1784, the legislature raised the minimum age back up to 18. USCA5 938/RE Tab 6.

The minimum age of militia service likewise ranged both below and above 18 in eighteenth century New Jersey. In 1777, the New Jersey legislature set 16 as its minimum age for required militia service. USCA5 689. In 1778, it raised the minimum age for required service to 21, while expressly reserving the right to accept volunteers "between the Age of sixteen and twenty-one years. USCA5 935/RE Tab 6. Colonial Pennsylvania in 1755 passed a militia Act, drafted by Benjamin Franklin, that permitted persons under 21 to enroll in the militia but provided "that *no youth*

*under the age of twenty-one years*, nor any bought servant or indented apprentice, shall be admitted to enroll himself, or be capable of being enrolled, in the said companies or regiments *without the consent of his or their parents or guardians*, masters or mistresses, in writing under their hands first had and obtained."  An Act For The Better Ordering And Regulating Such As Are Willing And Desirous To Be United For Military Purposes Within This Province, Nov. 25, 1755, in 3 Jared Sparks, ed., <u>The Works of Benjamin Franklin</u> 78, 82-83 (1836).[15]

The foregoing exceptions of persons under 21 years old from militia service are at odds with plaintiffs' claim that "the contention that Second Amendment rights do not fully vest at age 18 is untenable" because "[t]here is no doubt that 18-to-20-year-olds were understood to be part of the militia at the time the Second Amendment was adopted."  (Appellant Br. 16).

## B.  Even If Plaintiffs' Suit Implicates Their Second Amendment Rights, The Challenged Federal Laws Are Constitutional

The <u>Heller</u> majority rejected the suggestion that laws implicating the Second Amendment right should be subject to "none of the traditionally expressed levels (strict scrutiny, intermediate scrutiny, rational basis)," <u>id.</u> 554 U.S. at 634, but

---

[15] <u>Available at</u> http://books.google.com/books?id=Q2UUAAAAYAAJ &printsec=frontcover&dq=Sparks+Benjamin+Franklin&hl=en&sa=X&ei=n9EVT 47UC6bZ0QGzh6GqAw&ved=0CD0Q6AEwAQ#v=onepage&q=Sparks%20Benj amin%20Franklin&f=false

"declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," ibid., in light of its view that "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights," id. at 628, the District of Columbia's law "totally ban[ning] handgun possession in the home . . . would fail constitutional muster," id. at 628-29.  The Heller majority did provide a non-"exhaustive" list of "presumptively lawful regulatory measures," however, including "laws imposing conditions and qualifications on the commercial sale of arms."  554 U.S. at 626-27 & n.26.  "This is the sort of message that, whether or not technically dictum, a court of appeals must respect, given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings."  Skoien, 614 F.3d at 641.

Accordingly, other courts of appeals considering Second Amendment challenges have noted that even if the regulatory measures identified in Heller "were not historical limitations on the scope of the Second Amendment, the Court could still have viewed the regulatory measures as 'presumptively lawful' if it believed they were valid on their face under any level of means-end scrutiny applied."  United States v. Chester, 628 F.3d 673, 679 (4th Cir. 2010); see also United States v. Marzzarella, 614 F.3d 85, 91 (3d Cir. 2010) (same).

**1.  At Most This Court Should Apply Intermediate Scrutiny.**

In urging this Court to apply strict scrutiny to the challenged provisions (Appellant Br. 41), plaintiffs overlook the Supreme Court's admonition that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures," <u>McDonald</u>, 130 S. Ct. at 3047; <u>Heller</u>, 554 U.S. at 626-27 & n.26.  Strict scrutiny contemplates that a law is "presumptively invalid."  <u>See, e.g.</u>, <u>Ysursa v. Pocatello Educ. Ass'n</u>, 129 S. Ct. 1093, 1098 (2009) ("Restrictions on speech based on its content are 'presumptively invalid' and subject to strict scrutiny."); <u>Michael M. v. Superior Court of Sonoma County</u>, 450 U.S. 464, 497 n.4 (1981) (Stevens, J. dissenting) ("Racial classifications, which are subjected to 'strict scrutiny,' are presumptively invalid because there is seldom, if ever, any legitimate reason for treating citizens differently because of their race.").

This Court has in any event rejected the suggestion that strict scrutiny invariably applies to "any governmental restrictions on [the Second Amendment] right."  <u>United States v. Darrington</u>, 351 F.3d 632, 635 (5th Cir. 2003).  Likewise, other courts of appeals have concluded that strict scrutiny is not triggered by laws that do not "prevent[] an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose," even in the context of challenges brought by law-abiding citizens.  <u>Heller II</u>, 2011 WL 4551558, at *10.

Strict scrutiny is also inappropriate because the challenged laws merely regulate commercial sales through an age qualification with temporary effect. "[I]t is particularly appropriate to apply a deferential standard of review to age requirements affecting young people because such requirements do not result in an absolute prohibition but merely postpone the opportunity to engage in the conduct at issue." Stiles v. Blunt, 912 F.2d 260, 265 (8th Cir. 1990).[16]

## 2. The Challenged Federal Laws Satisfy Intermediate Scrutiny.

A law satisfies intermediate scrutiny if it is "substantially related to an important governmental objective." Clark v. Jeter, 486 U.S. 456, 461 (1988); see also Heller II, 2011 WL 4551558, at *10; Apache Bend Apartments v. United States, 964 F.2d 1556, 1563 (5th Cir. 1992). Applying intermediate scrutiny here, plaintiffs' challenge fails because there is at least "a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." Chester, 628 F.3d at 683.[17]

---

[16] Plaintiffs are misplaced in their reliance on Carey v. Population Servs. Int'l, 431 U.S. 678 (1977), for the proposition that "a restriction on distribution of an item necessary to the exercise of a constitutional right is tantamount to an impermissible restriction on exercise of the right." (Appellant Br. 27-28). Carey in fact expressly recognizes "[t]hat the constitutionally protected right of privacy extends to an individual's liberty to make choices regarding contraception does not, however, automatically invalidate every state regulation in this area," and that "even a burdensome regulation may be validated by a sufficiently compelling state interest." 431 U.S. at 685-86.

[17] For the reasons set forth below, the challenged federal laws would also
(continued...)

Following a multi-year inquiry into violent crime that included "field investigation and public hearings," S. Rep. 88-1340, at 1 (1964), Congress found "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians . . . and others whose possession of such weapon is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States," Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225. Congress established that "juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of the total arrests in this category." S. Rep. 90-1097, at 77 (1968). "[M]inors under the age of 21 years accounted for 35 percent of the arrests for serious crimes of violence including murder, rape, robbery, and aggravated assault," and 21 percent of the arrests for murder. 114 Cong. Rec. at 12309 (Sen. Dodd).

Based on its investigations, Congress found "a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior." Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 225-26. Federal law enforcement officials testified that "[t]he greatest growth of crime today

(...continued)
satisfy strict scrutiny.

is in the area of young people, juveniles and young adults" and that "[t]he easy availability of weapons makes their tendency toward wild, and sometimes irrational behavior that much more violent, that much more deadly . . ." Firearms Act: 1967 Hearings, <u>supra</u>, at 57 (testimony of Sheldon S. Cohen).[18]

Law enforcement officers from New York City, Los Angeles, St. Louis, Chicago, Philadelphia, and Atlanta provided Congress with "statistics documenting the misuse of firearms by juveniles and minors," which "take on added significance when one considers the fact that in each of the jurisdictions referred to the lawful acquisition of concealable firearms by these persons was prohibited by statute." S. Rep. 89-1866, at 59; <u>see also</u> <u>id.</u> at 58, 60. Congress's investigations thus revealed a "serious problem of individuals going across State lines to procure firearms which they could not lawfully obtain or possess in their own State and without the knowledge of their local authorities." S. Rep. No. 89-1866, at 19.

Congress's investigations established that "almost all of these firearms[] are put into the hands of juveniles by importers, manufacturers, and dealers who operate under licenses issued by the Federal Government." Firearms Act: 1965 Hearings,

---

[18] <u>Available at</u> http://www.lexisnexis.com/congcomp/getdoc?HEARING-ID =HRG-1967-SJS-0031.

<u>supra</u>, at 67 (testimony of Sheldon S. Cohen).[19]   Congress thus concluded that

concealable firearms "have been widely sold by federally licensed importers and

dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal

behavior," Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 226, and "that only

through adequate Federal control over interstate and foreign commerce in these

weapons, and over all persons engaging in the businesses of importing,

manufacturing, or dealing in them, can this grave problem be properly dealt with, and

effective State and local regulation of this traffic be made possible," <u>id.</u> § 901(a)(3),

82 Stat. at 225.

Congress therefore included, in both the Omnibus Crime Control Act and the

Gun Control Act, statutory provisions designed to address "[t]he clandestine

acquisition of firearms by juveniles and minors."   S. Rep. 90-1097, at 79.   "[I]n

seeking to reduce the criminal use of firearms," Congress "especially concern[ed]

itself with the particular type of weapon that is predominantly used by the criminal."

S. Rep. No. 89-1866, at 4.   The handgun's "size, weight, and compactness make it

easy to carry, to conceal, to dispose of, or to transport," and "[a]ll these factors make

it the weapon most susceptible to criminal use."   <u>Ibid.</u>   "The evidence before"

---

[19] <u>Available at</u> http://www.lexisnexis.com/congcomp/getdoc?HEARING-ID
=HRG-1965-SJS-0054.

Congress, moreover, "overwhelmingly demonstrated that the handgun is the type of firearm that is principally used in the commission of serious crime." Id. at 7.[20]

Sections 922(b)(1) and (c)(1) accordingly require a minimum age of 21 years for commercial purchases of handguns and handgun ammunition, and a minimum age of 18 years for commercial purchases of shotguns, rifles, and ammunition for shotguns and rifles. Congress recognized that, under these provisions, "a minor or juvenile would not be restricted from owning, or learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. 90-1097, at 79. "At the most," therefore, these provisions "could cause minor inconveniences to certain

---

[20] Crime statistics reveal that handgun violence by persons under 21, including persons aged 18 to 20, continues to pose a disproportionate threat to public safety. A 1999 report by the U.S. Department of Justice and of the U.S. Department Treasury found that in 1997 and "over the past 10 years," "18, 19 and 20 year olds ranked first, second, and third in the number of gun homicides committed," and that "[o]f all gun homicides where an offender was identified, 24 percent were committed by 18 to 20 year olds." Gun Crime in the Age Group 18-20 (June 1999) ("June 1999 Report"), at 2, available at http://www.psn.gov/pubs/index.aspx#1999. The report further found that "[a]mong murderers, 18 to 20 year olds were more likely to use a firearm than adults 21 and over," and that "in non-lethal crimes, including assault, rape, and robbery, 18 to 20 year old offenders were more likely to use guns than both younger and older offender age groups." Ibid.. "Handguns comprised 85 percent of the crime guns known to be recovered from 18 to 20 year olds in the 27 cities" participating in the study. Id. at 3. See also USCA5 137-141 (statistics from 1990 through 2010 on firearm violence by persons under 21, including persons aged 18 to 20).

youngsters who are mature, law abiding, and responsible, by requiring that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. at 12309 (Sen. Dodd). Congress was aware "that there are some youngsters under the age of 21 who are more mature than others" but determined that there was not "any way to legislate fairly in this area except to require that, if they are going to have a handgun, the parent or guardian must buy it for them." Ibid. It viewed this compromise as not "unreasonable, especially in light of the continuing increase of crimes of violence by persons under 21 years of age." Ibid. Congress subsequently limited the circumstances under which individuals under18 years old may possess handguns, but has not placed any similar age-related limits on the possession of handguns by individuals between 18 and 20 years old. See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title XI, § 110201, 108 Stat. 1796, 2010 (adding 18 U.S.C. § 922(x)).

Thus, Congress sought to "regulate more effectively interstate commerce in firearms so as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them." S. Rep. 89-1866, at 1. Congress recognized that "[t]hose under eighteen are deemed to be, as a matter of law, incompetent, or too immature to possess a handgun without adult supervision" while "[t]hose twenty-one and older are deemed to be, as a matter of law, competent, or mature enough to

possess a handgun without such supervision." T & M Jewelry v. Hicks ex rel. Hicks, 189 S.W.3d 526, 532 (Ky. 2006). Congress further recognized that "eighteen to twenty-one is a transitional period." Ibid. "[S]ome persons in this age group are mature enough to possess a handgun without supervision while others are not." Ibid. Thus, Congress "attempt[ed] to balance the rights of those individuals with a concern for the public interest in keeping handguns away from those who are not mature enough to possess them without supervision." Ibid. Section 922 "does so by making it more difficult for persons within the relevant age group to purchase a handgun from one who is totally indifferent to the buyer's aptitude for safely using a handgun, i.e., the commercial dealer in a retail transaction." Ibid.

As the Supreme Court and this Court have recognized, the government's interest in public safety is "compelling," United States v. Salerno, 481 U.S. 739, 750 (1987); see also Schenck v. Pro-Choice Network of Western New York, 519 U.S. 357, 376 (1997) (recognizing the "significant governmental interest in public safety"); Schall v. Martin, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citation and internal punctuation omitted); Qutb v. Strauss, 11 F.3d 488, 493 (5th Cir. 1993) (upholding a curfew ordinance based on "the state's compelling interest in increasing juvenile safety and decreasing juvenile crime").

There is thus at least a "reasonable fit" between the challenged federal laws and "a 'substantial' government objective," Chester, 628 F.3d at 683. Contrary to plaintiffs' assertions, the laws are not made unconstitutional by the fact that their focus on federal firearms licensees has the effect of permitting 18-to-20-year olds to purchase handguns "second-hand from a private gun owner," (Appellant Br. 48). "In deciding the constitutional propriety of the limitations" in a statute, courts are "guided by the familiar principles that a statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Buckley v. Valeo, 424 U.S. 1, 105 (1976) (internal citations, brackets, and quotation marks omitted); United States v. Lewitzke, 176 F.3d 1022, 1027 (7th Cir. 1999) (same); see also Olympic Arms v. Buckles, 301 F.3d 384, 390 (6th Cir. 2002) ("Congress may work incrementally in protecting public safety").

Here, Congress focused on sales by federal firearms licensees because its investigations established that they were the source of "almost all" of the firearms being misused by juveniles. Firearms Act: 1965 Hearings, supra, at 67 (testimony of

Sheldon S. Cohen).[21]  See Houston Chronicle Pub. Co. v. City of League City, 488 F.3d 613, 622 (5th Cir. 2007) (rejecting an underinclusiveness challenge to City's prohibition of street-vendor solicitations at traffic intersections controlled by traffic signal lights only, because such intersections were "the most heavily trafficked" and the "most dangerous," and thus the challenged law still "serve[d] a compelling interest at the heart of the government's function:  public safety").

### 3. The Challenged Federal Laws Do Not Violate Plaintiffs' Rights To Equal Protection.

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976).  As the district court correctly recognized, strict scrutiny is not triggered here because plaintiffs have not established an impermissible interference with their Second Amendment rights and because "'age is not a suspect classification under the Equal Protection Clause.'"  USCA5 1107 & n.3 (quoting Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000)).

"Age classifications, unlike governmental conduct based on race or gender, cannot be characterized as so seldom relevant to the achievement of any legitimate

---

[21] Available at http://www.lexisnexis.com/congcomp/getdoc?HEARING-ID =HRG-1965-SJS-0054.

state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy." Kimel, 528 U.S. at 83 (internal quotation marks omitted). Thus, the government "may discriminate on the basis of age without offending" the constitutional guarantee of equal protection "if the age classification in question is rationally related to a legitimate state interest." Ibid.

Where age classifications are concerned, "[t]he rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision." Id. at 83. Accordingly, although "[r]acial classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests," id. at 84 (internal punctuation omitted), and "gender classifications are constitutional only if they serve important governmental objectives and the discriminatory means employed are substantially related to the achievement of those objectives," ibid. (internal punctuation omitted), the government "may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests," ibid.

"The Constitution does not preclude reliance on such generalizations," ibid., "even if it is probably not true that those reasons are valid in the majority of cases," id. at 86 (internal quotation marks omitted). "That age proves to be an inaccurate

proxy in any individual case is irrelevant." Id. at 84.[22]

Consequently, courts will not overturn age classifications unless they are "so unrelated to the achievement of any combination of legitimate purposes" that one "can only conclude that the government's actions were irrational." Ibid. (internal punctuation omitted). And "because an age classification is presumptively rational, the individual challenging its constitutionality bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Ibid. (internal quotation marks omitted).

In light of the legislative record, see supra Sec. II.B.2, plaintiffs here cannot meet their burden of showing that the age qualifications that Congress decided to impose on commercial handgun purchases were based on facts that "could not reasonably be conceived to be true by the governmental decisionmaker," Kimel, 528

---

[22] Thus, for example, legislatures have traditionally had broad discretion to prescribe minimum age limits for the exercise of the different privileges and rights that collectively constitute adulthood, and to raise and lower those limits as long as there is a rational basis for the legislature's decisions. See, e.g., Gabree v. King, 614 F.2d 1, 2 (1st Cir. 1980) (recognizing that "eighteen to twenty-one year olds have historically been denied full rights of adulthood while shouldering such burdens of citizenship as military service," and rejecting equal protection challenge to a state law raising the drinking age to twenty-one); United States v. Olson, 473 F.2d 686, 687-88 (8th Cir. 1973) (upholding prior version of federal law setting 21 as the age for jury service after Congress amended law to lower the minimum age for jury service to 18).

U.S. at 84 (internal quotation marks omitted). Plaintiffs' equal protection claims therefore fail.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

TONY WEST
  *Assistant Attorney General*

SARAH R. SALDAÑA
  *United States Attorney*

MICHAEL S. RAAB
  (202) 514-4053
  s/ Anisha S. Dasgupta
ANISHA S. DASGUPTA
  (202) 514-5428
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7237*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

JANUARY 2012

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2012, I electronically filed the foregoing

brief with the Clerk of the Court via the CM/ECF system, which will send notice of

such filing to the following registered CM/ECF user:

Charles J. Cooper
Cooper & Kirk, PLLC
1523 New Hampshire Ave, N.W.
Washington, D.C. 20036


 s/ Anisha S. Dasgupta
Anisha S. Dasgupta

Attorney for Defendants-Appellees
Civil Division, Room 7237
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001
202-514-5428
anisha.dasgupta@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 12,929 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared using Corel WordPerfect X5 in a proportionally spaced typeface, 14-point Times New Roman font.

s/ Anisha S. Dasgupta
Anisha S. Dasgupta

Attorney for Defendants-Appellees
Civil Division, Room 7237
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001
202-514-5428
anisha.dasgupta@usdoj.gov

**CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARD A(6)**

I hereby certify that:

(1) any required privacy redactions have been made;

(2) the electronic submission is an exact copy of the paper document; and

(3) the document has been scanned for viruses with Microsoft Forefront Endpoint Protection 2010 (version 1.119.373.0., last updated 1/23/2010), and is free of viruses.

 s/ Anisha S. Dasgupta
Anisha S. Dasgupta

Attorney for Defendants-Appellees
Civil Division, Room 7237
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001
202-514-5428
anisha.dasgupta@usdoj.gov