No. 11-10959

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————

NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED;
ANDREW M. PAYNE; REBEKAH JENNINGS; BRENNAN HARMON,

*Plaintiffs-Appellants,*

*v.*

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES;
B. TODD JONES, In His Official Capacity as Acting Director of the Bureau of
Alcohol, Tobacco, Firearms and Explosives;
ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

*Defendants-Appellees.*

———————————————————

On Appeal from United States District Court for the Northern District of Texas
Civil Case No. 5:10-cv-00140-C (Honorable Sam Cummings)

———————————————————

**BRIEF OF *AMICI CURIAE* BRADY CENTER TO PREVENT GUN
VIOLENCE, GRADUATE STUDENT ASSEMBLY AND STUDENT
GOVERNMENT OF THE UNIVERSITY OF TEXAS AT AUSTIN,
MOTHERS AGAINST TEEN VIOLENCE, STUDENTS FOR GUN-FREE
SCHOOLS IN TEXAS, AND TEXAS CHAPTERS OF THE BRADY
CAMPAIGN TO PREVENT GUN VIOLENCE IN SUPPORT OF
DEFENDANTS-APPELLEES**

———————————————————

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

1. The Brady Center to Prevent Gun Violence (the "Brady Center"), *Amicus Curiae*. The Brady Center is a § 501(c)(3) non-profit corporation, and no publicly held corporation holds ten percent of its stock.

2. Graduate Student Assembly and Student Government of the University of Texas at Austin, *Amicus Curiae*.

3. Mothers against Teen Violence, *Amicus Curiae*.

4. Students for Gun-Free Schools in Texas, *Amicus Curiae*.

5. Texas Chapters of the Brady Campaign to Prevent Gun Violence, *Amicus Curiae*.

6. Texas Civil Rights Project, Counsel for *Amici Curiae* (Scott C. Medlock).

7. Hogan Lovells US LLP, Counsel for *Amici Curiae* (Jonathan L. Diesenhaus and S. Chartey Quarcoo).

8. Brady Center, Counsel for *Amici Curiae* (Jonathan E. Lowy and Daniel R. Vice).

9. National Shooting Sports Foundation, Inc. (the "NSSF"), *Amicus Curiae*.

10. Kasowitz, Benson, Torres & Friedman, LLP, Counsel for *Amicus Curiae* NSSF (Christopher P. Johnson and Meredith A. Wholley).

11. Lawrence G. Keane, National Shooting Sports Foundation, Of Counsel for *Amicus Curiae* NSSF.

12. National Rifle Association of America, Inc. ("NRA"), Plaintiff-Appellant.

13. Rebekah Jennings, Brennan Harmon, and Andrew Payne, Plaintiffs-Appellants.

14. Paul White, owner and operator of Armory Management and Supply Services in Houston, Texas.

15. Roger Koeppe, owner and operator of Armory Management and Supply Services in Houston, Texas.

16. Cooper & Kirk, PLLC, Counsel for Plaintiffs-Appellants (Charles J. Cooper, David H. Thompson, Howard C. Nielson, Jr., and Peter A. Patterson).

17. Law Offices of Fernando M. Bustos, P.C., Counsel for Plaintiffs-Appellants (Fernando M. Bustos).

18. Brian S. Koukoutchos, Counsel for Plaintiff-Appellant.

Dated: January 30, 2012

 s/ Scott C. Medlock
Scott C. Medlock
Counsel for *Amici Curiae*

**CONSENT TO FILE**

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, *amici* received consent from all parties to file this brief. No party's counsel authored this brief in whole or in part. No party, party's counsel, or person other than *amici*, their members, or their counsel, contributed money intended to fund preparation and submission of this brief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS

CONSENT TO FILE

INTEREST OF *AMICI* ........................................................................... 1

INTRODUCTION ................................................................................. 2

ARGUMENT ........................................................................................ 5

I.   FEDERAL LAW REGULATING THE AGE TO PURCHASE HANDGUNS FROM GUN DEALERS DOES NOT IMPLICATE PROTECTED SECOND AMENDMENT ACTIVITY. ................................................................. 5

    A.   18 U.S.C. §§ 922(b)(1) and 922(c), and 27 C.F.R. §§ 478.99(b)(1), 478.124(a), and 478.96(b) Do Not Implicate Protected Second Amendment Activity Because They Do Not Impact The Right to Possess Firearms in The Home Protected in *Heller* and *McDonald*. .................................................... 6

    B.   The Second Amendment Right Should Not Be Extended to Prevent the Government from Imposing Conditions and Qualifications on Who May Acquire Firearms. ................................ 12

        1.   The acquisition of firearms by individuals under 21 poses unique threats to public safety. ................................................. 13

        2.   Congress specifically recognized the threats posed by the acquisition of firearms by individuals under the age of 21 .......................................................................................... 16

II.  EVEN IF 18 U.S.C. §§ 922(b)(1), 922(c), 27 C.F.R. §§ 478.99(b)(1), 478.124(a), AND 478.96(b) DID IMPLICATE PROTECTED SECOND AMENDMENT ACTIVITY, THEY WOULD WITHSTAND THE APPROPRIATE LEVEL OF SCRUTINY. ................................................................... 20

CONCLUSION ..................................................................................... 23

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARD A6

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bleiler v. Chief, Dover Police Dep't,
927 A.2d 1216 (N.H. 2007) ............................................................ 22

District of Columbia v. Heller,
554 U.S. 570 (2008) ..................................................................passim

Dorr v. Weber,
741 F. Supp. 2d 993 (N.D. Iowa 2010) ....................................5, 9, 11

Glenn v. State,
72 S.E. 927 (Ga. App. Ct. 1911) ....................................................11

Gonzalez v. Village of W. Milwaukee,
No. 09CV0384, 2010 WL 1904977 (E.D. Wis. May 11, 2010) .........9

Heller v. District of Columbia,
698 F. Supp. 2d 179 (D.D.C. 2010)............................................... 20

Huddleston v. United States,
415 U.S. 814 (1974)............................................................... passim

Jackson v. State,
68 So. 2d 850 (Ala. Ct. App. 1953)............................................... 22

Kachalsky v. Cacace,
--- F. Supp. 2d ----, 2011 WL 3962550 (S.D.N.Y. Sept. 2, 2011) ......9

Kimel v. Fla. Bd. of Regents,
528 U.S. 62 (2000).....................................................................5, 11

Louisville Gas Co. v. Coleman,
277 U.S. 32 (1928).........................................................................12

Lowery v. United States,
3 A.3d 1169 (D.C. 2010)..................................................................8

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010) ............................................................................ *passim*

*Oregon v. Mitchell*,
    400 U.S. 112 (1970) ....................................................................................11

*Osterweil v. Bartlett*,
    No. 1:09-cv-825, 2011 WL 1983340 (N.D.N.Y. May 20, 2011) ......................21

*People v. Aguilar*,
    944 N.E.2d 816 (Ill. App. Ct. 2011) ................................................................9

*Piszczatoski v. Filko*,
    --- F. Supp. 2d ----, 2012 WL 104917 (D.N.J. Jan. 12, 2012) .............................9

*Richard v. County of Yolo*,
    --- F. Supp. 2d ----, 2011 WL 1885641 (E.D. Cal. May 16, 2011) ......................9

*Riddick v. United States*,
    995 A.2d 212 (D.C. 2010) .............................................................................9

*Robertson v. City & County of Denver*,
    874 P.2d 325 (Colo. 1994) ...........................................................................22

*Schweiker v. Wilson*,
    450 U.S. 221 (1981) ....................................................................................12

*Sims v. United States*,
    963 A.2d 147 (D.C. 2008) .............................................................................10

*State v. Cole*,
    665 N.W.2d 328 (Wis. 2003) ....................................................................... 22

*State v. Comeau*,
    448 N.W.2d 595 (Neb. 1989) ....................................................................... 22

*State v. Dawson*,
    159 S.E.2d 1 (N.C. 1968) ............................................................................ 22

*State v. Hamdan,*
   665 N.W.2d 785 (Wis. 2002) ........................................................................ 22

*State v. Knight,*
   241 P.3d 120 (Kan. Ct. App. 2010) .................................................................9

*State v. Sieyes,*
   225 P.3d 995 (Wash. 2010) ............................................................................11

*Trinen v. City of Denver,*
   53 P.3d 754 (Colo. Ct. App. 2002) ............................................................... 22

*United States v. Bledsoe,*
   No. SA-08-CR-13(2)-XR, 2008 WL 3538717 (W.D. Tex. Aug. 8, 2008) ......... 5

*United States v. Cardoza,*
   129 F.3d 6 (1st Cir. 1997) .........................................................................4, 10

*United States v. Chester,*
   628 F.3d 673 (4th Cir. 2010) ..........................................................................21

*United States v. Darrington,*
   351 F.3d 632 (5th Cir. 2003) ..........................................................................20

*United States v. Hart,*
   726 F. Supp. 2d 56 (D. Mass. 2010) .................................................................9

*United States v. Hayes,*
   555 U.S. 415 (2009) .....................................................................................1, 7

*United States v. Laurent,*
   --- F. Supp. 2d ----, 2011 WL 6004606 (E.D.N.Y. Dec. 2, 2011) .......................9

*United States v. Marzzarella,*
   595 F. Supp. 2d 596 (W.D. Pa. 2009), *aff'd* 614 F.3d 85 (3d Cir. 2010) ......8, 21

*United States v. Masciandaro,*
   638 F.3d 458 (4th Cir. 2011).......................................................................... 9

*United States v. Peters*,
   403 F.3d 1263 (11th Cir. 2005) ..................................................................... 23

*United States v. Reese*,
   627 F.3d 792 (10th Cir. 2010) ........................................................................21

*United States v. Rene E.*,
   583 F.3d 8 (1st Cir. 2009) ...............................................................4, 7, 8, 10

*United States v. Rozier*,
   598 F.3d 768 (11th Cir. 2010) ..........................................................................8

*United States v. Rybar*,
   103 F.3d 273 (3d Cir. 1996) ..............................................................4, 10, 22

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) ..........................................................................21

*United States v. Tooley*,
   717 F. Supp. 2d 580 (S.D.W. Va. 2010) ...........................................................9

*Williams v. State*,
   10 A.3d 1167 (Md. 2011) ................................................................................. 8

*Wilt v. Texas Dep't of Public Safety*,
   No. 06-03-00147-CV, 2004 WL 1459375 (Tex. App. Ct. June 30, 2004) .......22

**STATUTES**

18 U.S.C. § 922(b)(1) ...................................................................................*passim*

18 U.S.C. § 922(c) .......................................................................................*passim*

18 U.S.C. § 922(g)(9) .........................................................................................7

18 U.S.C. § 923(d)(1) .......................................................................................17

27 C.F.R. § 478.96(b) ..................................................................*passim*

27 C.F.R. § 478.99(b)(1)..............................................................*passim*

27 C.F.R. § 478.124(a)..................................................................*passim*

430 Ill. Comp. Stat. 65/3(a)..................................................................13

430 Ill. Comp. Stat. 65/4(a)(2)(i). ........................................................13

D.C. Code Ann. § 7-2502.03................................................................13

D.C. Code Ann. § 22-4507....................................................................13

Del. Code Ann. tit. 24, § 903 ...............................................................13

Haw. Rev. Stat. Ann. § 134-2(d)..........................................................13

I.C.A. § 724.22(2) ...............................................................................13

Mass. Gen. Laws ch. 140, § 130 ..........................................................13

Md. Code Ann., Pub. Safety § 5-134 ...................................................13

N.J. Stat. Ann. § 2C:58-6.1 .................................................................13

Ohio Rev. Code Ann. § 2923.21 ..........................................................13

Omnibus Crime Control and Safe Streets Act of 1968 ........................17

R.I. Gen. Laws § 11-47-30...................................................................13

R.I. Gen. Laws § 11-47-35(a) ..............................................................13

**CONSTITUTIONAL PROVISIONS:**

U.S. Const., amend. II ...................................................................*passim*

U.S. Const., amend. XXVI .................................................................11


**OTHER AUTHORITIES:**

Adam Ortiz, *Adolescence, Brain Development, and Legal Culpability*,
   American Bar Association, Juvenile Justice Center ......................................3, 15

Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683 .......22

Bureau of Alcohol, Tobacco & Firearms, *Crime Gun Trace Reports 2000* ...........15

Bureau of Alcohol, Tobacco & Firearms, *Crime Gun Trace Reports 1999* ...........15

Matthew Miller, et al., *Guns at College*, J. Am. College Health, Vol. 48,
   Issue 1 ................................................................................15

S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N 2112 ........... 17, 18, 19

U.S. Census Bureau, *U.S. Population Projections* ............................................3, 14

U.S. Dep't of Justice, *Crime in the United States* ............................................3, 14

U.S. Dep't of the Treasury and U.S. Dep't of Justice, *Gun Crime in the Age
   Group 18-20* ........................................................................3, 13, 14

U.S. Military Acad. Regs., Section II, 1-6(b)(1)....................................................16

## INTEREST OF *AMICI*

*Amicus* Brady Center to Prevent Gun Violence is the nation's largest non-partisan, non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Through its Legal Action Project, the Brady Center has filed numerous *amicus curiae* briefs in cases involving both state and federal gun laws including *District of Columbia v. Heller*, 554 U.S. 570 (2008), *United States v. Hayes*, 555 U.S. 415 (2009), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). *Amicus* brings a deep perspective to the issues raised here and has a compelling interest in ensuring that the Second Amendment does not impede reasonable government action to prevent gun violence.

*Amici* Graduate Student Assembly and Student Government serve as the official voice of 62,000 students at the University of Texas at Austin, the flagship institution of the University of Texas System. Student Government has a clear interest in preserving student safety and preventing suicide, both of which are implicated by increased access to firearms by young people. Many graduate students work, live, and teach on University of Texas's several campuses, and Graduate Student Assembly is concerned that increased access to firearms by undergraduates may compromise workplace safety.

*Amicus* Mothers Against Teen Violence is a Texas organization that works to provide information, education, and advocacy for teen violence prevention, public health, and public safety. Mothers Against Teen Violence recognizes the dangers posed by teens and young people under 21 purchasing firearms and opposes lifting restrictions on the sale of arms to such persons.

*Amicus* Students for Gun-Free Schools in Texas is an Austin-based organization founded by survivors of the Virginia Tech shooting, as well as family and friends of victims. The organization pursues proactive measures for safer campuses, and is concerned about the risk of concealed, loaded firearms on and around schools and college campuses.

*Amicus* Texas Chapters of the Brady Campaign to Prevent Gun Violence is a grassroots organization that strives to educate Texans about gun violence. Texas Chapters of the Brady Campaign also work to enact sensible gun laws in Texas and prevent dangerous gun bills from being passed by the Texas House and Senate.

## INTRODUCTION

The right to keep and bear arms recognized in *District of Columbia v. Heller* is unique among constitutional rights in the risks it presents. 554 U.S. 570 (2008). Guns are designed to kill, and gun possession and use subject others to a serious risk of deadly harm. As federal law recognizes, these risks are heightened when teens and young persons under 21 are permitted to acquire firearms.

Teens and young people under 21 often lack the same ability as adults to "govern impulsivity, judgment, planning for the future, [and] foresight of consequences."[1] Arrests for violent crimes peak from ages 18 to 20.[2] Though 18-20 year olds make up only about 5% of the population, they account for about 20% of homicide and manslaughter arrests.[3] In recognition of what law enforcement considers "[t]he significant role that 18 to 20 year olds have in gun crime and violence in our Nation,"[4] federal law strikes an appropriate balance by regulating firearm sales by gun dealers to this age group. It prohibits the sale of handguns and certain other particularly dangerous weapons, such as pistol grip firearms that expel a shotgun shell, by gun dealers directly to teens and young persons under 21, while allowing law-abiding adults to purchase such firearms as gifts for them.[5]

Appellants ask this Court to hold that the government may not restrict 18 year-olds from acquiring handguns directly from a particular source – federally

---

[1] Adam Ortiz, *Adolescence, Brain Development, and Legal Culpability*, AMERICAN BAR ASSOCIATION, JUVENILE JUSTICE CENTER at 2 (January 2004).

[2] U.S. Department of Justice, *Crime in the United States*, Arrests, by Age, 2009, at Table 38, accessible at http://www2.fbi.gov/ucr/cius2009/data/table_38.html.

[3] *Id.*; U.S. Census Bureau, *U.S. Population Projections*, State Interim Population Projections by Age and Sex: 2004 – 2030, Annual projections by single year of age, accessible at http://www.census.gov/population/www/projections/projectionsagesex.html.

[4] U.S. Department of the Treasury and U.S. Department of Justice, *Gun Crime in the Age Group 18-20* (June 1999), at 4.

[5] 18 U.S.C. § 922(b)(1).

licensed dealers.  The ruling they seek would undermine federal efforts to set

reasonable conditions on handgun sales "to insure that … weapons could not be

obtained by individuals whose possession of them would be contrary to the public

interest."  *Huddleston v. United States*, 415 U.S. 814, 825 (1974).   As the district

court correctly surmised, it would also contravene the *Heller* Court's explicit

directives.  While the *Heller* Court held that the Second Amendment protects a

right to possess a gun in the home for self-defense, it made clear that "nothing in

[its] opinion should be taken to cast doubt on . . . laws imposing conditions and

qualifications on the commercial sale of arms." *Heller* at 626-27.

   The Supreme Court has long recognized the prudence of restricting gun sales

"to keep firearms out of the hands of those not legally entitled to possess them

because of age, criminal background, or incompetency."  *Huddleston v. United*

*States*, 415 U.S. at 824 (internal quotations omitted).  So have Circuit courts.  *See*

*United States v. Cardoza*, 129 F.3d 6, 12 (1st Cir. 1997) (recognizing Congress's

authority to restrict youth "demand for firearms (possession), and the sale or

transfer designed to meet that demand"); *United States v. Rybar*, 103 F.3d 273,

279-82 (3d Cir. 1996) (Alito, J., dissenting) (tracking history of restrictions on

firearm transfers).  Courts post-*Heller* continue to uphold such age restrictions.

*See, e.g.*, *United States v. Rene E.*, 583 F.3d 8, 12-15 (1st Cir. 2009) (noting

"presumptive" lawfulness of laws prohibiting gun sales to underage persons);

*United States v. Bledsoe*, No. SA-08-CR-13(2)-XR, 2008 WL 3538717, *4 (W.D. Tex. Aug. 8, 2008) ( "[The assertion that] regulations governing the sale of handguns for the 18-20 year-old age group do not further a substantial governmental interest is meritless.").

Moreover, such age limitations do not violate equal protection. "[A]ge is not a suspect classification under the Equal Protection Clause," and age restrictions rationally related to a legitimate government interest are constitutional. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000); s*ee also Dorr v. Weber*, 741 F. Supp. 2d 993, 1004-07 (N.D. Iowa 2010) (denying Second Amendment and Equal Protection challenges by 18-year-old seeking concealed weapon license). The laws here more than clear this threshold.

The district court was correct: federal laws governing the sale of handguns to individuals under 21 do not infringe protected Second Amendment activity or the Equal Protection Clause; they are constitutional. *Amici* thus respectfully request that the Court deny the appeal and affirm the district court's judgment.

## ARGUMENT

## I. FEDERAL LAW REGULATING THE AGE TO PURCHASE HANDGUNS FROM GUN DEALERS DOES NOT IMPLICATE PROTECTED SECOND AMENDMENT ACTIVITY.

The contested statutes, 18 U.S.C. §§ 922(b)(1) and 922(c), and 27 C.F.R. §§ 478.99(b)(1), 478.124(a), and 478.96(b), do not implicate protected Second

Amendment activity because Appellants have no general Second Amendment right to acquire handguns from licensed dealers.

**A.    18 U.S.C. §§ 922(b)(1) and 922(c), and 27 C.F.R. §§ 478.99(b)(1), 478.124(a), and 478.96(b) Do Not Implicate Protected Second Amendment Activity Because They Do Not Impact The Right to Possess Firearms in The Home Protected in *Heller* and *McDonald.***

The Supreme Court's decision in *Heller* recognized that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.  While the Court could have stopped there, it went out of its way to stress that the right is "not unlimited" and even identified a non-exhaustive list of "presumptively lawful" gun laws.  *Id.* at 626-27 & n.26.  Specifically, the Court noted that "nothing in [its] opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27.  Moreover, the Court noted that individuals who do not satisfy statutory conditions and qualifications may be "disqualified from the exercise of Second Amendment rights."  *See id.* at 635.

Two years later, the Court incorporated the Second Amendment to the states, but also "repeat[ed]" the "assurances" it made in *Heller* regarding its limited effect on other gun laws.  *McDonald*, 130 S. Ct. at 3047 (internal citation omitted).  Its limited holding, in each instance, was consistent with the Court's recognition in *Huddleston* that Congress imposed such restrictions to prevent "widespread traffic

- 6 -

in firearms and their general availability to those whose possession thereof was contrary to the public interest." 415 U.S. at 824 (internal quotations omitted).[6]

Appellants argue, in essence, that the *Heller* Court embraced a right of 18-year olds to (a) purchase handguns and (b) purchase them from a particular source – federally licensed dealers, selected, by Congress, as "[t]he principal agent of federal enforcement" of laws restricting gun sales to underage persons. *Huddleston*, 415 U.S. at 824-25. This misreads *Heller*. Indeed, Appellants cannot explain why the *Heller* Court would so explicitly hold that the Second Amendment was "not unlimited," and that "conditions . . . on the sale of commercial arms" remain "presumptively lawful," *Heller* at 626-27, yet silently protect the right of persons under 21 to buy firearms from a particular source.

Here, no court has read *Heller* as conferring the broad right Appellants seek for teenagers and young persons under 21 to acquire firearms from a federally licensed dealer. The Second Amendment does not guarantee individuals a right to acquire guns through particular channels, or to do so unencumbered by statutory conditions and qualifications. *See, e.g.*, *United States v. Rene E.*, 583 F.3d at 17 ("[W]e disagree [with plaintiff] that the Supreme Court's decision in *Heller* had

_____

[6] The narrow scope of the Court's ruling in *Heller* was also apparent in the Court's 2009 opinion in *United States v. Hayes*, 555 U.S. 415 (2009), in which the Court upheld a broad reading of 18 U.S.C. § 922(g)(9) – which prohibits possession of firearms by persons convicted of misdemeanor crimes of domestic violence – without even mentioning the Second Amendment.

any effect" on Congress's power to regulate the transfer of handguns through commerce); *Lowery v. United States*, 3 A.3d 1169, 1175-76 (D.C. 2010) (restrictions on who could register, and by extension lawfully possess, handguns were unaffected by *Heller*).

Nor have courts extended *Heller* to find restrictions on who may qualify to acquire firearms – including restrictions based on age, mental health, and criminal background – infringe protected Second Amendment activity. *See United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010) (stating that, post-*Heller*, the "initial question" remains whether one is "qualified" to exercise Second Amendment rights); *Rene E.*, 583 F.3d at 12 (upholding gun conviction based on "longstanding tradition of prohibiting juveniles from both receiving and possessing handguns"); *United States v. Marzzarella*, 595 F. Supp. 2d 596, 603 (W.D. Pa. 2009) (noting "significan[ce]" of *Heller*'s "sanctioning of laws imposing conditions and qualifications on the commercial sale of arms and laws prohibiting presumptively risky individuals from possessing firearms"), *aff'd* 614 F.3d 85 (3d Cir. 2010).

Instead, courts have repeatedly held that the right recognized in *Heller* is confined to possession of guns in the home. *See Williams v. State*, 10 A.3d 1167, 1177 (Md. 2011) (stating that "prohibition of firearms in the home was the gravamen of the certiorari questions in both *Heller* and *McDonald* and their answers," and "[i]f the Supreme Court . . . meant its holding to extend beyond

home possession, it will need to say so more plainly"); *People v. Aguilar*, 944

N.E.2d 816, 823 (Ill. App. Ct. 2011) (*Heller* and *McDonald* limit the "right to

possess handguns in the home, not the right to possess to handguns outside the

home."); *State v. Knight*, 241 P.3d 120, 133 (Kan. Ct. App. 2010) ("It is clear that

the [*Heller*] Court was drawing a narrow line regarding violations solely to use of a

handgun in the home for self-defense purposes."); *see also United States v.*

*Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) (refusing to "push *Heller* beyond

its undisputed core holding" by extending the right to carry beyond the home).[7]

_____

[7] *See also Piszczatoski v. Filko*, --- F. Supp. 2d, 2012 WL 104917 (D.N.J. Jan. 12,
2012) (declining to extend *Heller* beyond the home); *United States v. Laurent*, ---
F. Supp. 2d ----, 2011 WL 6004606, at *22 (E.D.N.Y. Dec. 2, 2011) ("The right to
self-defense in the home belongs to 'law-abiding citizens for lawful purposes.'  It
does not prohibit government regulation of firearms outside of the home or
limitations on ownership of certain firearms; nor does it prevent the government
from limiting the use of firearms for specific purposes or by specific people."
(quoting *Heller*, 554 U.S. at 627)); *Kachalsky v. Cacace*, --- F. Supp. 2d ----, 2011
WL 3962550, at *23 (S.D.N.Y. Sept. 2, 2011) ("To the extent that Plaintiffs are
attacking New York's statutory scheme as precluding open carry . . . such carrying
is likewise outside the core Second Amendment concern articulated in *Heller*: self-
defense inside the home."); *Richard v. County of Yolo*, --- F. Supp. 2d ----, 2011
WL 1885641, at *3 (E.D. Cal. May 16, 2011); *Gonzalez v. Village of W.*
*Milwaukee*, No. 09CV0384, 2010 WL 1904977, at *4 (E.D. Wis. May 11, 2010)
("The Supreme Court has never held that the Second Amendment protects the
carrying of guns outside the home."); *United States v. Hart*, 726 F. Supp. 2d 56, 60
(D. Mass. 2010); *Dorr v. Weber*, 749 F. Supp. 2d 993, 1005 (N.D. Iowa 2010)
("[A] right to carry a concealed weapon under the Second Amendment has not
been recognized to date."); *United States v. Tooley*, 717 F. Supp. 2d 580, 596
(S.D.W. Va. 2010) ("Additionally, possession of a firearm outside of the home or
for purposes other than self-defense in the home are not within the 'core' of the
Second Amendment right as defined by *Heller*."); *Riddick v. United States*, 995

Further, this understanding of the Second Amendment as subject to conditions and qualifications on who may acquire arms pre-dates *Heller*. The Supreme Court has long upheld Congress's authority to restrict access to the firearms market, particularly on the basis of age. *See Huddleston*, 415 U.S. at 823 (recognizing Congress's authority to impose a vast array of restrictions on the sale of firearms, including prohibitions on the sale of firearms to persons under 21). Lower courts have emphasized the historical foundations of these restrictions, *see Rybar*, 103 F.3d at 279-82 (charting evolution of federal restrictions since the 1934), their longstanding constitutionality, *see Rene E.*, 583 F.3d at 14 (citing 1878 Tennessee Supreme Court decision upholding age restriction on pistol sales), and their application to underage persons, *United States. v. Cardoza*, 129 F.3d at 12 (upholding restriction on sales and possession of handguns to underage persons).

Appellants' Equal Protection challenge, like their Second Amendment claim, runs counter to precedent. The Supreme Court has made clear "that age is not a suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. at 83. Courts have rejected Second Amendment and Equal Protection challenges to laws restricting the access of young persons under 21 to

_____

A.2d 212, 222 (D.C. 2010) (Second Amendment does not "compel the District to license a resident to carry and possess a handgun outside the confines of his home, however broadly defined." (quoting *Sims v. United States*, 963 A.2d 147, 150 (D.C. 2008))).

handguns.  *See  Dorr v. Weber*, 741 F. Supp. 2d at 1004-07 (denying Second

Amendment and Equal Protection challenges by 18-year-old seeking license to

carry concealed weapon); *State v. Sieyes*, 225 P.3d 995, 1004-1006 (Wash. 2010)

(rejecting Second Amendment challenge to ban on 17-year-old possessing

firearms); *see also Glenn v. State*, 72 S.E. 927 (Ga. App. Ct. 1911) (no right of

minor to keep and bear arms).  Indeed, a constitutional amendment was necessary

to give persons under 21 the right to vote, even though voting is a fundamental

right.  *See Oregon v. Mitchell*, 400 U.S. 112, 123 (1970) (there was not "[a]ny

doubt about the powers of Congress to regulate congressional elections, including

the age and other qualifications of the voters."); U.S. Const., Amend. 26 (ratified

July 1, 1971).[8]  And the Supreme Court has recognized that the judiciary should

defer to Congress when it sets reasonable limits, such as those based on age:

> When a legal distinction is determined … between night and day,
> childhood and maturity, or any other extremes, a point has to be fixed
> or a line has to be drawn….  Looked at by itself without regard to the
> necessity behind it the line or point seems arbitrary.  It might as well
> or nearly as well be a little more to one side or the other.  But when it
> is seen that a line or point there must be, and that there is no

---

[8] Appellants' suggestion that their eligibility for military service renders them
qualified to purchase handguns is inapposite.  Gun access in the highly regulated
context of military service, under extensive training, supervision, and command of
adults, is a far cry from gun access in the public domain.  And Appellants have
objected to restrictions on the *commercial sale* of firearms to persons under 21.
That issue is not present in the military context, where Appellants would use
government-owned weapons under the command of military officers.

> mathematical or logical way of fixing it precisely, the decision of the
> legislature must be accepted unless we can say that it is very wide of
> any reasonable mark.

*Schweiker v. Wilson*, 450 U.S. 221, 238 n.23 (1981), quoting *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 41 (1928) (Holmes, J., dissenting).

The laws here easily clear this threshold.  They do not prohibit "law-abiding, responsible citizens" from keeping handguns "in defense of hearth and home." *Heller*, 554 U.S. at 635.  Nor prevent Appellants from acquiring handguns through law-abiding adults or from private sellers.  On the contrary, they are consistent with the Supreme Court's holdings in *Heller* and *McDonald* and are constitutional.

The district court was right.  Neither the Second Amendment, nor the Equal Protection Clause, provides individuals a right to purchase handguns from a particular source.  Thus, the federal government's imposition of conditions and qualifications on those purchases does not implicate protected activity.

**B.** **The Second Amendment Right Should Not Be Extended to Prevent the Government from Imposing Conditions and Qualifications on Who May Acquire Firearms.**

There are profound public safety rationales for imposing conditions and qualifications on who may acquire firearms.  The widespread traffic of firearms – to teenagers and young persons under 21, in particular – poses a number of issues and challenges not presented by mere possession of firearms in the home.

1. ***The acquisition of firearms by individuals under 21 poses unique threats to public safety.***

The purchase of firearms by teens and young persons under 21 – particularly persons in the age group 18 to 20 – poses a unique set of threats to the general public that is not present when older persons purchase firearms. That is why federal and state laws[9] prohibit licensed gun dealers from selling handguns and handgun ammunition to anyone under 21. Indeed, the federal government has focused its gun law enforcement on 18 to 20 year olds because of "[t]he significant role that 18 to 20 year olds have in gun crime and violence in our Nation . . . ."[10]

Federal handgun sale age restrictions have provided the government with an important tool for more than four decades to restrict teen criminals and gang members' access to the vast handgun inventory of gun shops nationwide. This is crucial given that handguns have "comprised 85 percent of the crime guns known to be recovered from 18 to 20 year olds," and "[a]mong murderers, 18 to 20 year

---

[9] *See* Delaware (Del. Code Ann. tit. 24, § 903); District of Columbia (D.C. Code Ann. §§ 7-2502.03; 22-4507); Hawaii (Haw. Rev. Stat. Ann. § 134-2(d)); Illinois (430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2)(i)); Iowa (I.C.A. § 724.22(2)); Maryland (Md. Code Ann., Pub. Safety § 5-134); Massachusetts (Mass. Gen. Laws ch. 140, § 130); New Jersey (N.J. Stat. Ann. § 2C:58-6.1); Ohio (Ohio Rev. Code Ann. § 2923.21); Rhode Island (R.I. Gen. Laws §§ 11-47-30, 11-47-35(a)).

[10] U.S. Department of the Treasury and U.S. Department of Justice, *Gun Crime in the Age Group 18-20* (June 1999), at 4.

olds were more likely to use a firearm than adults 21 and over."[11] Likewise, "in non-lethal crimes, including assault, rape, and robbery, 18 to 20 year old offenders were more likely to use guns than both younger and older offender age groups."[12]

Arrests for murder, nonnegligent homicides and other violent crimes peaks from ages 18 to 20,[13] such that "18, 19, and 20 year olds ranked first, second, and third in the number of gun homicides committed. For each of these ages, the number of homicides exceeded the number for any ages older or younger than 18 to 20."[14] Even though 18-20 year olds make up only about 5% of the population, they account for about 20% of homicide and manslaughter arrests.[15] This pattern "is consistent with the historical pattern of gun homicides," according to federal law enforcement.[16]

Studies show the dangers of allowing teens and young persons age 18 to 20 to acquire firearms, because "[t]he evidence now is strong that the brain does not

---

[11] *Id.* at 2-3.

[12] *Id.*

[13] U.S. Department of Justice, *Crime in the United States*, Arrests, by Age, 2009, at Table 38, accessible at http://www2.fbi.gov/ucr/cius2009/data/table_38.html.

[14] *Gun Crime in the Age Group 18-20*, at 6.

[15] *Crime in the United States*, Arrests, by Age, 2009, at Table 38,; U.S. Census Bureau, *U.S. Population Projections*, State Interim Population Projections by Age and Sex: 2004 – 2030, Annual projections by single year of age, accessible at http://www.census.gov/population/www/projections/projectionsagesex.html.

[16] *Gun Crime in the Age Group 18-20*, at 2.

cease to mature until the early 20s in those relevant parts that govern impulsivity, judgment, planning for the future, foresight of consequences, and other characteristics that make people morally culpable." Adam Ortiz, *Adolescence, Brain Development, and Legal Culpability*, AMERICAN BAR ASSOCIATION, JUVENILE JUSTICE CENTER at 2 (January 2004). They suggest, moreover, that "age 21 or 22 would be closer to the 'biological' age of maturity." *Id.* Teenagers and young people ages 18 to under 21 are also within the age range most associated with violent crime. The rate of murder offenders per 100,000 population peaks between 18 to 24, at 26.5 murder offenders per 100,000 population.[17] Among firearm homicide offenders, the highest percent of offenders falls into the 18 to 24 year age range at 37.3 percent.[18] Criminal gun possession is highest in this age group and peaks between 19 to 21.[19]

Similar studies have shown that college-aged gun owners are more likely to engage in behavior that puts themselves and others at risk of injury. *See* Matthew Miller, *et al.*, *Guns at College*, J. Am. College Health, Vol. 48, Issue 1 (1999)

---

[17] Bureau of Justice Statistics, *Sourcebook of Criminal Justice Statistics* (2005 data), available at http://www.albany.edu/sourcebook/pdf/t31272005.pdf.

[18] C. Puzzanchera and W. Kang, *Easy Access to the FBI's Supplementary Homicide Reports: 1980-2008* (2010), available at http://ojjdp.gov/ojstatbb/ezashr/.

[19] Bureau of Alcohol, Tobacco & Firearms, Crime Gun Trace Reports (2000), at 6-7 (2002) and Bureau of Alcohol, Tobacco & Firearms, Crime Gun Trace Reports (1999), at 6-7 (2000).

(concluding that "that college gun owners are more likely than those who do not own guns to engage in activities that put themselves and others at risk for severe or life threatening injuries," and noting that these behaviors suggest "an inability to contain aggressive impulses," "poor judgment and indifference to the effect one's actions have on the well-being and safety of others." ).[20]

In light of what studies such as these consistently show – that teens and young people under 21 have less capacity to control impulsivity, make good decisions, and appreciate the consequences of their actions than individuals over 21 – the federal Government is well justified in having laws that restrict the ability of young adults to easily acquire handguns.

### 2. *Congress specifically recognized the threats posed by the acquisition of firearms by individuals under the age of 21.*

The legislative history of the provisions at issue (a) underscores that Congress specifically recognized the threat posed by acquisition by individuals under the age of 21 and (b) belies Appellants' attempt to misconstrue the regulations as offensive to the Second Amendment. When Congress restricted the commercial sale of handguns to person under 21 in 1968, it was particularly

---

[20] Even U.S. military academies, which arguably admit only the most responsible and upstanding of young adults, prohibit the carrying of handguns by anyone under 21. *See* U.S. Military Academy Regulations, Section II, 1-6(b)(1) ("No pistols or handguns may be registered or carried by anyone under the age of twenty-one (21) to include Cadets.").

concerned with "the clandestine acquisition of firearms by juveniles and minors." S. Rep. No. 90-1097, at 51 (1968), *reprinted in* 1968 U.S.C.C.A.N 2112, 2167. It further determined that the "ease with which any person can anonymously acquire firearms (including . . . juveniles or minors without knowledge or consent of their parents)" contributed to the "increasing prevalence of crime in the United States." *Id.* at 28, 1968 U.S.C.C.A.N. at 2114; *see also Huddleston*, 415 U.S. at 824 (discussing same).

Appellants' request that the Court exempt individuals between 18 and 20 from this regulatory scheme thus does not hold water for several reasons. Congress clearly premised its regulatory scheme on the reality that gun acquisition by young people under 21 poses unique risks. As originally passed in the Omnibus Crime Control and Safe Streets Act of 1968, § 922(b)(1) restricted one overarching group – persons under 21. Pub. L. No. 90-351, § 922(b)(1), 82 Stat. 197, 230 (1968) (current version at 18 U.S.C. § 922(b)(1) (1994)) ("The sale by a licensee of any firearm, other than a shotgun or rifle, to anyone less than 21 years is prohibited."). Not until the act was amended to add shotguns and rifles did it include further restrictions on 18 year-olds specific to those arms. Moreover, Congress specifically provided that licensed dealers must be "twenty one years of age or over." 18 U.S.C. § 923(d)(1); *see also* S. Rep. No. 90-1097, at 170, 1968 U.S.C.C.A.N. at 2292 (noting need to "strengthen" dealer license qualifications by

imposing 21 year age requirement).  And the provisions' legislative history is replete with references to the risks posed by both "juveniles,"  "minors," and "young adults" – a distinction that would be unnecessary if, as Appellants imply, the "risk" it described was simply limited to individuals below 18.  *See, e.g.,* S. Rep. No. 90-1097,  at 49, 1968 U.S.C.C.A.N. at 2165 ("In contributing to our ever increasing crime rates, juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of total arrests in this category.").[21]  Appellants would have this Court ignore Congress's specific purpose, and carve out new rights for persons ages 18 to 20.  It need not.

Further, Appellants' protests that federal regulation of licensed dealers relegates young persons to an "irregular" secondary market put the cart before the horse.  Appellants seem to imply that Congress established a "two-tier" regulatory scheme – one for licensed dealers and one for non-licensed dealers (restricting persons 18 to 20 to purchasing handguns from the latter).  This is not so.  To reign in the widespread traffic of firearms, Congress created new rules to govern what it considered the central conduit of that traffic – the licensed dealer.  *See Huddleston*, 415 U.S. at 824 ("[I]t is apparent that the focus of the federal scheme is the

---

[21] *See also id.* ("In addition, juveniles and minors have utilized the anonymity of the mails to order and receive firearms by common carrier in circumvention and contravention of State and local law.").

federally licensed firearms dealer, at least insofar as the Act directly controls access to weapons by user."); *see also* S. Rep. No. 90-1097, at 170, 1968 U.S.C.C.A.N. at 2292 (emphasizing need to strengthen heretofore weak regulations of licensed dealers). While it is true that unlicensed sellers have exploited loopholes in our firearms laws to become an unduly large and dangerous source of guns for criminals and other prohibited persons, there is little evidence that Congress *intended* to create an unregulated firearms market that would undercut the goals of the Gun Control Act to restrict access to firearms. Appellants perplexingly suggest that the emergence of unlicensed sellers, acting outside Congress's regulatory scheme, now mandates that the Court narrow that scheme (and, no less, exempt persons 18 to 20 from existing restrictions). But this makes no sense. If the existence of a less-regulated "secondary market" creates an imbalance between the commercial channels available to them, that supports extending the federal prohibition to include all sales of handguns to teenagers and young persons under 21. It does not support supplanting Congress's clearly stated purpose to restrict sales of firearms to those young persons.

The laws at issue here prevent a number of risks to the public without implicating the Second Amendment activity protected in *Heller*. They are not, moreover, complete prohibitions on the purchase or possession of firearms by young adults. They allow for individuals under the age of 21 to acquire handguns

from their parents or guardians or private sellers, keep handguns in their homes

and cars, and possess and purchase long guns. 18 U.S.C. §§ 922(b)(1) and 922(c),

and 27 C.F.R. §§ 478.99(b)(1), 478.124(a), and 478.96(b), therefore, are

consistent with the Supreme Court's ruling in *Heller* and do not implicate

protected Second Amendment activity.

**II.** **EVEN IF 18 U.S.C. §§ 922(B)(1), 922(C), 27 C.F.R. §§ 478.99(B)(1),
478.124(A), AND 478.96(B) DID IMPLICATE PROTECTED SECOND
AMENDMENT ACTIVITY, THEY WOULD WITHSTAND THE APPROPRIATE
LEVEL OF SCRUTINY.**

Appellants urge this Court to hold that age restrictions on the commercial

sale of arms defy historical understandings of the Second Amendment and, in the

alternative, are subject to (and fail to survive) strict scrutiny. Both charges are

unfounded and unprecedented.

First, as stated above, and by Appellees, Appellee Br. 29-41, restrictions on

the sale of firearms to individuals under 21 date back centuries. Second, this

Circuit has rebuffed the argument that strict scrutiny applies to "any governmental

restrictions on [the Second Amendment] right," *United States v. Darrington*, 351

F.3d 632, 635 (5th Cir. 2003). Moreover, the *Heller* Court implicitly rejected strict

scrutiny. *See Heller v. District of Columbia ("Heller II"),* 698 F. Supp. 2d 179,

187 (D.D.C. 2010) ("[S]trict scrutiny standard of review would not square with the

[*Heller*] majority's references to 'presumptively lawful regulatory

measures' . . . .").  Its reasoning foreclosed any form of heightened scrutiny that would require the government to ensure that firearms legislation has a tight fit between means and ends, as *Heller* recognized that the Constitution provides legislatures with "a variety of tools for combating" the "problem of handgun violence," *Heller*, 554 U.S. at 636, and listed as examples a host of "presumptively lawful" existing firearms regulations without subjecting those laws to any analysis, much less heightened scrutiny.  *Id.* at 626-27 & n.26.

Further, in the wake of *Heller* and *McDonald*, an overwhelming majority of courts have rejected strict scrutiny.  *See, e.g.*, *United States v. Chester*, 628 F.3d 673, 682-83 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010); *United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (en banc); *Osterweil v. Bartlett*, No. 1:09-cv-825, 2011 WL 1983340, at *10 (N.D.N.Y. May 20, 2011); *Heller II*, 698 F. Supp. 2d at 188.  And while these courts have applied some form of intermediate scrutiny, it bears note that state courts construing analogous state rights to bear arms have long applied a more deferential "reasonable regulation"

test.[22]  By that test, a state "may regulate the exercise of [the] right [to bear arms]

under its inherent police power so long as the exercise of that power is reasonable."

*Robertson v. City & County of Denver*, 874 P.2d 325, 328 (Colo. 1994).[23]

Regardless, by any measure, the laws here are constitutional.  As noted

above, there is a profound governmental interest in regulating the transfer and

acquisition of firearms.  *Huddleston*, 415 U.S. at 824 (recognizing Congress's

interest in curbing the widespread traffic in firearms); *Rybar*, 103 F.3d at 280

---

[22]  *See* Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683, 686-87, n. 12 (2007) (describing "hundreds of opinions" by state supreme courts with "surprisingly little variation" that have adopted the "reasonableness" standard of review for right-to-bear-arms cases); *see also Bleiler v. Chief, Dover Police Dep't*, 927 A.2d 1216, 1222 (N.H. 2007); *Robertson v. City & County of Denver*, 874 P.2d 325, 328, 333 n.10 (Colo. 1994); *State v. Comeau*, 448 N.W.2d 595, 599 (Neb. 1989); *Jackson v. State*, 68 So. 2d 850, 852 (Ala. Ct. App. 1953). *See Wilt v. Texas Dep't of Public Safety*, No. 06-03-00147-CV, 2004 WL 1459375 (Tex. App. Ct. June 30, 2004) (noting that federal government and states "may impose reasonable regulations on gun ownership.").[22]

[23]  Though more deferential than intermediate scrutiny, the test is more demanding than the rational basis test that the majority opinion in *Heller* rejected (and also than the "interest balancing" test suggested by Justice Breyer in dissent) because it does not permit states to prohibit all firearm ownership.  Instead, it focuses on whether "the restriction . . . is a reasonable exercise of the State's inherent police powers" and not "merely on whether any conceivable rationale exists under which the legislature may have concluded the law could promote the public welfare." *State v. Cole*, 665 N.W. 2d 328, 338 (Wis. 2003) (adding that a principle of the "reasonable regulation" is that "the right [to bear arms] must not be allowed to become illusory").  Laws that "eviscerate," *State v. Hamdan*, 665 N.W.2d 785, 799 (Wis. 2002), render "nugatory," *Trinen v. City of Denver*, 53 P.3d 754, 757 (Colo. Ct. App. 2002), or result in the effective "destruction" of a Second Amendment right, *State v. Dawson*, 159 S.E.2d 1, 11 (N.C. 1968), would be struck down.

(noting legislative history indicating that "increasing rate of crime and lawlessness and the growing use of firearms clearly attest to a need to strengthen Federal regulation of interstate firearms traffic") (citation omitted); *United States v. Peters*, 403 F.3d 1263, 1276-77 (11th Cir. 2005) (approving prohibition on sale of firearms to felons "as a valid exercise of Congress['s]" authority"). Regulations on the acquisition of firearms are an essential exercise of that authority.

Finally, it bears repeating that these provisions do not amount to an outright ban on young adults possessing or carrying firearms and thus do not even approach the blanket prohibition on handgun ownership that the Supreme Court struck down in *Heller*. Appellants remain free to own handguns and exercise the right, enunciated in *Heller*, to keep and use those guns for self-defense in the home. Under the laws they challenge, they may even continue to acquire handguns. The provisions at issue merely prevent teens and young adults from acquiring handguns from licensed dealers until they reach the age of 21.

## CONCLUSION

For all the foregoing reasons, *amici* respectfully requests that the Court find that 18 U.S.C. §§ 922(b)(1) and 922(c), and 27 C.F.R. §§ 478.99(b)(1), 478.124(a), and 478.96(b) to be constitutional.

Dated: January 30, 2012       Respectfully submitted,

/s/ Scott C. Medlock
Scott C. Medlock
Texas Civil Rights Project
1405 Montopolis Dr.
Austin, TX 78741
Phone: (512) 474-5073
Facsimile: (512) 474-0726

Jonathan L. Diesenhaus
S. Chartey Quarcoo
Hogan Lovells US LLP
555 13th Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

Jonathan E. Lowy
Daniel R. Vice
Brady Center to Prevent Gun Violence
Legal Action Project
1225 Eye Street, NW, Suite 1100
Washington, DC 20005

*Counsel for Amici Curiae*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5843 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in Times New Roman 14-point font.

/s/ Scott C. Medlock
Scott C. Medlock
Counsel for *Amici Curiae*

**CERTIFICATE OF SERVICE**

I certify that, on January 30, 2012, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit

by using the appellate CM/ECF system, which will send notice of such filing to the

following registered CM/ECF users:

Charles J. Cooper
David H. Thompson
Peter A. Patterson
Cooper & Kirk PLLC
Suite 750
1523 New Hampshire Avenue, N.W.
Washington, DC 20036

Fernando M. Bustos
Law Offices of Fernando M. Bustos, P.C.
Suite 501
1001 Main Street
Lubbock, TX 79401

Brian S. Koukoutchos
28 Eagle Trace
Mandeville, LA 70471

Anisha S. Dasgupta
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Daniel M. Riess
U.S. Department of Justice

Civil Division Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530

Christopher P. Johnson
Meredith A. Wholley
Kasowitz, Benson, Torres & Friedman, L.L.P.
1633 Broadway
New York, NY 10019


Dated:  January 30, 2012

 /s/ Scott C. Medlock
Scott C. Medlock
Counsel for *Amici Curiae*

**CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARD A(6)**

Counsel for *amici curiae* Brady Center to Prevent Gun Violence, Graduate Student Assembly and Student Government of the University of Texas at Austin, Mothers Against Teen Violence, Students for Gun-Free Schools in Texas, and Texas Chapters the Brady Campaign to Prevent Gun Violence hereby certifies that:

1.    There are no required privacy redactions to be made in this brief;

2.    The electronic submission is an exact copy of the paper document; and

3.    The electronic submissions have been scanned for viruses with the most recent version of a commercial virus scanning program (Symantec Endpoint Protection, Version 11.0.7000.975, updated October 2011) and, according to the program, are free of viruses.

s/ Scott C. Medlock
Scott C. Medlock
Counsel for *Amici Curiae*