No. 11-10959

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.; ANDREW M.
PAYNE; REBEKAH JENNINGS; BRENNAN HARMON,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES;
B. TODD JONES AS ACTING DIRECTOR OF BATF; ERIC J.
HOLDER, JR., AS U.S. ATTORNEY GENERAL,

Defendants-Appellees.

_____

**RESPONSE OF DEFENDANTS TO
PLAINTIFFS' PETITION FOR REHEARING EN BANC**

_____

STUART F. DELERY
 *Principal Deputy Assistant Attorney General*

BETH S. BRINKMANN
 *Deputy Assistant Attorney General*

SARAH R. SALDAÑA
 *United States Attorney*

MICHAEL S. RAAB
 (202) 514-4053
ANISHA S. DASGUPTA
 (202) 514-5428
 *Attorneys, Appellate Staff*
 *Civil Division*
 *United States Department of Justice*
 *950 Pennsylvania Ave., N.W., Rm. 7320*
 *Washington, D.C. 20530-0001*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel for defendants-appellees certifies that the following non-governmental persons and entities have an interest in the outcome of this case:

*Plaintiffs-Appellants*
National Rifle Association of America, Inc., Rebekah Jennings, Brennan Harmon, Andrew Payne, Paul White, owner and operator of My Favorite Gun Store in Richmond, Utah, Roger Koeppe, owner and operator of Armory Management and Supply Services in Houston, Texas

*Counsel for Plaintiffs-Appellants*
Cooper & Kirk, PLLC (Charles J. Cooper, David H. Thompson, Howard C. Nielson, Jr., and Peter A. Patterson)

Law Offices of Fernando M. Bustos, P.C. (Fernando M. Bustos)

Law Office of Brian S. Koukoutchos (Brian S. Koukoutchos)

*Amicus for Plaintiffs-Appellants*
National Shooting Sports Foundation, Inc.

*Counsel for Amicus Supporting Plaintiffs*
Kasowitz, Benson, Torres & Friedman LLP (Christopher P. Johnson, Meredith A. Wholley)

National Shooting Sports Foundation, Inc. (Lawrence G. Keane)

*Amici for Defendants-Appellees*
Brady Center to Prevent Gun Violence, Graduate Student Assembly and Student Government of the University of Texas at Austin, Mothers Against Teen Violence, Students For Gun-Free Schools In Texas, Texas Chapters of the Brady Campaign to Prevent Gun Violence

*Counsel for Amici Supporting Defendants*
Texas Chapter of the Brady Campaign to Prevent Gun Violence (Scott Charles Medlock)

Hogan Lovells US LLP (Jonathan L. Diesenhaus and S. Chartey Quarcoo)

Brady Center (Jonathan E. Lowy and Daniel R. Vice)

s/ Anisha S. Dasgupta
ANISHA S. DASGUPTA

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS

INTRODUCTION AND SUMMARY ..................................................................................1

STATEMENT ..................................................................................................................2

ARGUMENT ...................................................................................................................4

     A.     THE PANEL'S DECISION IS CONSISTENT WITH
               *HELLER* AND OTHER COURTS OF APPEALS
               DECISIONS APPLYING *HELLER* ...........................................................4

     B.     PLAINTIFFS' OTHER ARGUMENTS PROVIDE
               NO BASIS FOR REHEARING EN BANC .............................................11

CONCLUSION ...............................................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                     **Page**

*Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729 (2011) ...............................................7

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................15

*Craig v. Boren*, 429 U.S. 190 (1976)........................................................................12

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........................1, 2, 3, 4, 5, 6, 8, 9, 10, 11

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...........................................10

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) .................................6, 10, 12

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) ...........................................14

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010)....................................2, 11, 15

*Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464 (1981)............................ 11, 12

*Moore v. Madigan*, Nos. 12-1269, 12-1788, -- F.3d --,
   2012 WL 6156062 (7th Cir. Dec. 11, 2012) .......................................................4, 8, 14

*Morrissey v. Perry*, 137 U.S. 157 (1890) .................................................................6

*Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622 (1994) .............................................14

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) .............................................10

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)...................................... 10, 12

*United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003),
   *cert. denied*, 541 U.S. 1080 (2004) .............................................................12

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) .............................................3

*United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012) .............................................10

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ................................................ 10, 12

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010) ...........................................10

*United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009) ....................................6

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ........................................ 5, 6

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ...................................12

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009) ...................................11

**Statutes:**

18 U.S.C. § 922(b)(1) ...................................................1, 2, 4, 13

18 U.S.C. § 922(c)(1) ...................................................1, 2, 4, 13

Pub. L. No. 90-351, 82 Stat. 197 (1968) ...................................13

**Regulations:**

27 C.F.R. § 478.96 ................................................................ 1, 2

27 C.F.R. § 478.99(b)(1) ................................................................ 1, 2

27 C.F.R. § 478.124 ................................................................ 1, 2

**Rules:**

Fed. R. App. P. 35(b)(1)(A)................................................................9

Fed. R. App. P. 35(b)(1)(B) ................................................................11

**Legislative Materials:**

114 Cong. Rec. 12279 (1968) ................................................................13

Federal Firearms Act: Hearings Before the Subcomm. to Investigate
Juvenile Delinquency of the Sen. Comm. on the Judiciary,
89th Cong. (1965), *available at* http://www.lexisnexis.com/congcomp/
getdoc?HEARING-ID=HRG-1965-SJS-0054 ............................................................... 13

S. Rep. No. 88-1340 (1964) ................................................................................................ 13

S. Rep. No. 89-1866 (1966) ................................................................................................ 13

S. Rep. No. 90-1097 (1968) ................................................................................................ 13

**Other Authorities:**

*Black's Law Dictionary* (9th ed. 2009) ................................................................................... 7

John Indermaur, *Principles of the Common Law* (Edmund H. Bennett ed.,
1st Am. ed. 1878) ............................................................................................................... 7

# INTRODUCTION AND SUMMARY

This case presents a pre-enforcement challenge to the constitutionality of federal statutory and regulatory provisions that permit federal firearms licensees to sell handguns and handgun ammunition only to persons over 21 years of age, 18 U.S.C. § 922(b)(1), (c)(1); 27 C.F.R. §§ 478.99(b)(1), 478.124, 478.96. As the panel recognized, under these provisions, "[e]ighteen-to-twenty-year-olds may possess and use handguns. Parents or guardians may gift handguns to 18-to-20-year-olds. Those not 'engaged in the business' of selling firearms—that is, non-FFLs—may sell handguns to 18-to-20-year-olds." Op. 4-5. Thus, "[f]ar from a total prohibition on handgun possession and use, these laws resemble 'laws imposing conditions and qualifications on the commercial sale of arms,' which [*District of Columbia v. Heller*, 554 U.S. 570 (2008)] deemed 'presumptively lawful.'" Op. 31-32 (citing 554 U.S. at 626–27 & n.26).

The panel correctly rejected plaintiffs' challenge, and its decision meets none of the criteria that would warrant rehearing en banc. The decision does not conflict with any decision of the Supreme Court or of any court of appeals. It is plaintiffs who seek to displace the framework for analyzing Second Amendment claims that "has emerged as the prevailing approach" in the courts of appeals, Op. 11, and ultimately to invalidate laws regulating commercial sales of firearms. The panel considered and properly rejected all of plaintiffs' arguments. Further review is not warranted.

## STATEMENT

1. This a pre-enforcement challenge to the constitutionality of federal criminal statutes and regulations that permit federal firearms licensees to sell handguns and handgun ammunition only to persons over 21 years of age, 18 U.S.C. § 922(b)(1), (c)(1); 27 C.F.R. §§ 478.99(b)(1), 478.124, 478.96. The plaintiffs are three individuals and the National Rifle Association of America, Inc.

The district court held that plaintiffs have standing to sue but determined that the Second Amendment and the equal protection component of the Fifth Amendment do not prohibit these limits on commercial sales of handguns. The court accordingly entered summary judgment in favor of the federal defendants.

2. A panel of this Court unanimously affirmed. The panel based its analysis of plaintiffs' Second Amendment claims on *Heller*'s holding that "the Second Amendment was intended to protect * * * the 'right of law-abiding, *responsible* citizens to use arms in defense of hearth and home,'" Op. 9, and the Supreme Court's admonishment that "the 'right secured by the Second Amendment is not unlimited,'" Op. 10 (citing *Heller*, 554 U.S. at 626, and *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010)). Noting that "*Heller* did not set forth an analytical framework with which to evaluate firearms regulations in future cases," the panel observed that "our fellow courts of appeals have filled the analytical vacuum," and that "[a] two-step inquiry has emerged as the prevailing approach." Op. 11 (citing decisions of the Third, Fourth, Sixth, Seventh, Tenth, and D.C. Circuits).

2

The panel "adopt[ed] this framework because it comports with the language of *Heller*. As for step one, *Heller* itself suggests that the threshold issue is whether the * * * Second Amendment's protection" applies. Op. 16 (citing 554 U.S. at 635). "As for step two, by taking rational basis review off the table, and by faulting a dissenting opinion for proposing an interest-balancing inquiry *rather than* a traditional level of scrutiny, the Court's language suggests that intermediate and strict scrutiny are on the table." Op. 16 (citing 554 U.S. at 628 n.27, 634).

Consistent with the Supreme Court's statement "that the Second Amendment codified a pre-existing individual right to keep and bear arms," Op. 9 (citing *Heller*, 554 U.S. at 592, 595), the panel examined the "interpretive materials" that the Supreme Court in *Heller* used "to conduct a historical analysis," Op. 12 (citing 554 U.S. at 600–26). In accordance with this Court's observations in *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001), the panel noted longstanding approval for restrictions on the use and purchase of firearms by "minors" and "infants," Op. 23, descriptors that "historically understood[] applied to persons under the age of 21, not only to persons under the age of 18," Op. 24. The "considerable evidence that burdening * * * the ability of 18-to-20-year-olds to purchase handguns from [federal firearms licensees] * * * is consistent with a longstanding, historical tradition" led the panel to conclude "that the conduct at issue falls outside the Second Amendment's protection." Op. 26-27.

Although "inclined to uphold the challenged federal laws at step one of [the] analytical framework, in an abundance of caution," the panel proceeded to apply heightened scrutiny and "ultimately conclude[d] that the challenged federal laws pass constitutional muster even if they implicate the Second Amendment guarantee." Op. 28. As the panel noted, Congress had before it evidence showing that "the ease with which young persons under 21 could access handguns—as opposed to other guns— was contributing to violent crime, and also found that [federal firearms licensees]—as opposed to other sources—constituted the central conduit of handgun traffic to young persons under 21." Op. 36. "Congress, in turn, reasonably tailored a solution to the particular problem" and "deliberately adopted a calibrated, compromise approach" under which it "restricted the ability of persons under 21 to purchase handguns from [federal firearms licensees], while allowing [18-to-20-year-old persons] to purchase long-guns, * * * to acquire handguns from parents or guardians, and * * * to possess handguns and long-guns." *Ibid.* (citing 18 U.S.C. § 922(b)(1), (c)(1)).

## ARGUMENT

### A. THE PANEL'S DECISION IS CONSISTENT WITH *HELLER* AND OTHER COURTS OF APPEALS DECISIONS APPLYING *HELLER*.

1. The Supreme Court in *Heller* made clear that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." 554 U.S. at 626; *see also Moore v. Madigan*, Nos. 12-1269, 12-1788, -- F.3d --, 2012 WL 6156062, at * 7 (7th Cir. Dec. 11, 2012) (noting, with respect to "the usual prohibitions of gun ownership by children,

felons, illegal aliens, lunatics, and in sensitive places such as public schools," that "the propriety of" such restrictions "was not questioned in *Heller*"). In exploring "the historical understanding of the scope of the right," *id.* at 625, the Supreme Court looked to "a variety of legal and other sources to determine the public understanding of [the] legal text in the period after its enactment or ratification," *id.* at 605 (emphasis omitted). These included "analogous arms-bearing rights," *id.* at 600, adopted by states "[b]etween 1789 and 1820," *id.* at 601-602, and the interpretation of these provisions by "19th-century courts and commentators," *id.* at 603. The Court also examined "[p]ost-Civil War [l]egislation," explaining that because "those born and educated in the early 19th century faced a widespread effort to limit arms ownership by a large number of citizens[,] their understanding of the origins and continuing significance of the Amendment is instructive." *Id.* at 614.

Unable to dispute that the panel based its historical analysis (Op. 21-28) on the same interpretive materials consulted by the Supreme Court in *Heller*, plaintiffs contend instead (Rehearing Pet. 10) that such sources "cannot be used to *restrict* the Second Amendment's scope." But *Heller* "tell[s] us that statutory prohibitions on the possession of weapons by some persons are proper—and, importantly for current purposes, that the legislative role did not end in 1791. That *some* categorical limits are proper is part of the original meaning, leaving to the people's elected representatives the filling in of details." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). For example, *Heller* made clear that "nothing in our opinion should be taken to

5

cast doubt on *longstanding* prohibitions on the possession of firearms by felons and the mentally ill." 554 U.S. at 626 (emphasis added). Yet "[t]he first federal statute disqualifying felons from possessing firearms was not enacted until 1938." *Skoien*, 614 F.3d at 640. And "legal limits on the possession of firearms by the mentally ill also are of 20th Century vintage." *Id.* at 641. "A 1938 law may be 'longstanding' from the perspective of 2008, when *Heller* was decided, but 1938 is 147 years after the states ratified the Second Amendment." *Id.* at 640. Thus, *Heller*'s analysis shows "that exclusions need not mirror limits that were on the books in 1791." *Id.* at 641; *accord Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1253 (D.C. Cir. 2011); *United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009).

Plaintiffs' other challenges to the panel's historical analysis also lack merit. In attacking the panel's conclusion that "restrictions on the ability of persons under 21 to purchase handguns * * * [are] firmly historically rooted," Op. 28, plaintiffs argue that "today, unlike in the 19th century, 18-to-20-year-olds in Texas and almost everywhere else are fully emancipated *adults*, responsible for their own actions and their own self-defense," Rehearing Pet. 11. But the States' present-day extension of certain privileges to 18-year-olds does not foreclose Congress from establishing a minimum age of 21 in other contexts. *See, e.g.*, *Morrissey v. Perry,* 137 U.S. 157, 159 (1890) ("The age at which an infant shall be competent to do any acts or perform any duties, military or civil, depends wholly upon the legislature.")

In any event, as the panel noted, "[t]he terms 'majority' and 'minority' lack content without reference to the right at issue": "[t]wenty-year-olds may not purchase alcohol (by state statute), purchase lottery tickets in some States[,] * * * [or] purchase handguns in some States (by state statute) * * * while 21-year-olds may." Op. 28 n.7. Moreover, plaintiffs' reliance on the age of majority today is irreconcilable with their suggestion (Rehearing Pet. 10-11) that only pre-nineteenth century sources are relevant to construing the scope of the Second Amendment. "The age of majority at common law was 21, and it was not until the 1970s that States enacted legislation to lower the age of majority to 18." Op. 24 (citing *Black's Law Dictionary* 847 (9th ed. 2009) ("An infant in the eyes of the law is a person under the age of twenty-one years, and at that period * * * he or she is said to attain majority * * * *" (quoting John Indermaur, *Principles of the Common Law* 195 (Edmund H. Bennett ed., 1st Am. ed. 1878)))).[1]

The panel also correctly rejected plaintiffs' contention (Rehearing Pet. 9) "that the subset of the people comprising the militia, which included all able-bodied 18-to-

---

[1] The existence of "considerable evidence that burdening * * * the ability of 18-to-20-year-olds to purchase handguns from [federal firearms licensees] * * * is consistent with a longstanding, historical tradition," Op. 26-27, undercuts plaintiffs' claim (Rehearing Pet. 13) that the panel's reasoning "cannot be squared" with *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2736 n.3 (2011). The law invalidated in *Brown* sought "to create a wholly new category of content-based regulation that is permissible only for speech directed at children." 131 S. Ct. at 2735. As the Supreme Court noted in that case, "California's argument would fare better if there were a longstanding tradition in this country of specially restricting children's access to depictions of violence, but there is none." *Id.* at 2736.

20-year-old males, were universally understood to be within the scope of the Second Amendment's protection." Plaintiffs acknowledge "that some States at some times chose not to enroll 18-to-20-year-olds." Rehearing Pet. 9. Plaintiffs' only response to this fact is to assert that it "is wholly beside the point." *Ibid.* As the panel recognized, however, that historical evidence fatally undermines plaintiffs' contention (Rehearing Pet. 8) that "when the Second Amendment was adopted, 18-to-20-year-olds were universally understood to be members of [the militia]." Plaintiffs' arguments cannot be squared with the undisputed historical fact that "in some colonies and States, the minimum age of militia service either dipped below age 18 or crept to age 21, depending on legislative need," or with the undisputed facts that "the 1792 Militia Act gave States discretion to impose age qualifications on service, and several States chose to enroll only persons age 21 or over, or required parental consent for persons under 21." Op. 28 n.17.

2. The Supreme Court in *Heller* held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment." 554 U.S. at 635. "*Heller* did not set forth an analytical framework with which to evaluate firearms regulations in future cases," Op. 11, stating only that the District's law "would fail constitutional muster," 554 U.S. at 629, "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights," *id.* at 628.

The panel here accordingly examined *Heller*'s language and determined that it supported a "two-step analytical framework." Op. 16. The panel understood the

Court's statement that Heller must be permitted to register a handgun "[a]ssuming that [he] is not disqualified from the exercise of Second Amendment rights," 554 U.S. at 635, and the Court's listing of certain "presumptively lawful regulatory measures," *id.* at 626-27, to "suggest[] that the threshold issue is whether the party is entitled to the Second Amendment's protection." Op. 16. "As for step two," the panel explained that "by taking rational basis review off the table, and by faulting a dissenting opinion for proposing an interest-balancing inquiry *rather than* a traditional level of scrutiny, the Court's language suggests that intermediate and strict scrutiny are on the table." *Ibid.* (citing 554 U.S. at 628 n.27, 634).

The only purported error that plaintiffs identify concerning the panel's reasoning is an ambiguity arrived at through a tortured reading of *Heller'*s language. Noting the majority's comment in *Heller* that "Justice Breyer 'proposes, *explicitly at least*, none of the traditionally expressed levels (strict scrutiny, intermediate scrutiny, rational basis), but rather a judge-empowering "interest-balancing inquiry" * * *,'" Rehearing Pet. 6-7 (quoting *Heller*, 554 U.S. at 634 (emphasis in quotation)), plaintiffs contend that "labels aside, *Heller* recognized that Justice Breyer's interest-balancing test substantively *may be* 'equivalent' to one of the 'familiar scrutiny tests,'" *id.* at 7 (quoting Op. 16) (emphasis added). Plaintiffs' stretched assertion of ambiguity falls far short of establishing any "conflict[]," Fed. R. App. P. 35(b)(1)(A), between the panel's reasoning and the Supreme Court's decision in *Heller*.

The D.C. Circuit, in rejecting the position that plaintiffs take in their petition here, explained that *Heller* "rejected only Justice Breyer's proposed 'interest-balancing' inquiry, which * * * * rather than ask merely whether the Government is promoting an important interest by way of a narrowly tailored means * * * would have had courts in Second Amendment cases decide whether the challenged statute 'imposes burdens that, when viewed in light of the statute's legitimate objectives, are disproportionate.'" *Heller II*, 670 F.3d at 1264 (quoting 554 U.S. at 693 (Breyer, J., dissenting)). "[H]av[ing] a court weigh the asserted governmental interests against the burden the Government would place upon exercise of the Second Amendment right[] [is] a balancing that is not part of either strict or intermediate scrutiny." *Heller II*, 670 F.3d at 1265. As the D.C. Circuit explained in *Heller II*, "heightened scrutiny is clearly not the 'interest-balancing inquiry' proposed by Justice Breyer and rejected by the Court in *Heller*." 670 F.3d at 1265.

Plaintiffs do not dispute that the "two-step" inquiry adopted by the panel "has emerged as the prevailing approach" to analysis of Second Amendment claims across the courts of appeals, Op. 11 (citing *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Heller II*, 670 F.3d 1244, 1252 (D.C. Cir. 2011); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)); *see also United States v. Booker,* 644 F.3d 12, 25 (1st Cir. 2011). Instead, they base their request for en banc review on a dissenting statement

10

from a judge of the D.C. Circuit and a dissenting statement from a judge of this Court in an opinion later withdrawn and superseded following rehearing on other grounds. Rehearing Pet. 7. But the panel's approach does not conflict with any "authoritative decisions of other United States Courts of Appeals that have addressed the issue." Fed. R. App. P. 35(b)(1)(B). And there is no reason to grant en banc review for the purpose of *creating* a circuit conflict on this issue.

## B. PLAINTIFFS' OTHER ARGUMENTS PROVIDE NO BASIS FOR REHEARING EN BANC.

Unable to establish that the panel's decision conflicts with *Heller* or any decision of another court of appeals, plaintiffs instead advance arguments regarding the application of heightened scrutiny that the Supreme Court has considered and rejected in other cases.

1. In urging that the panel should have applied strict scrutiny rather than intermediate scrutiny to the challenged provisions (Rehearing Pet. 11), plaintiffs overlook the Supreme Court's admonition that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures." *McDonald*, 130 S. Ct. at 3047; *Heller*, 554 U.S. at 626-27 & n.26. Strict scrutiny contemplates that a law is "presumptively invalid." *See, e.g.*, *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009); *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 497 n.4 (1981) (Stevens, J. dissenting) ("Racial classifications, which are

subjected to 'strict scrutiny,' are presumptively invalid because there is seldom, if ever, any legitimate reason for treating citizens differently because of their race.").

"The [Supreme] Court has not said * * * and it does not logically follow, that strict scrutiny is called for whenever a fundamental right is at stake." *Heller II*, 670 F.3d at 1256-1257 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (applying intermediate scrutiny to restrictions on "time, place, or manner of protected speech"); *Craig v. Boren,* 429 U.S. 190, 197 (1976) ("classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives")); *see also Marzzarella*, 614 F.3d at 96 ("Strict scrutiny does not apply automatically any time an enumerated right is involved"); *Chester*, 628 F.3d at 682 ("We do not apply strict scrutiny whenever a law impinges upon a right specifically enumerated in the Bill of Rights"). The panel in this case did not diverge from any decision of the Supreme Court, this Court, or any other court of appeals in rejecting plaintiffs' suggestion (Rehearing Pet. 11) that strict scrutiny invariably applies to "any governmental restrictions on [the Second Amendment] right," *United States v. Darrington*, 351 F.3d 632, 635 (5th Cir. 2003), *cert. denied*, 541 U.S. 1080 (2004).

2. In stating that even under a heightened scrutiny framework "the challenged federal laws are constitutional under the Second Amendment," Op. 40, the panel explained that Congress enacted these laws based on evidence showing that "the ease with which young persons under 21 could access handguns—as opposed to other guns—was contributing to violent crime, and * * * that [federal firearms licensees]—

as opposed to other sources—constituted the central conduit of handgun traffic to young persons under 21." Op. 36.[2] The panel concluded that "Congress * * * reasonably tailored a solution to the particular problem" and "deliberately adopted a calibrated, compromise approach" when it "restricted the ability of persons under 21 to purchase handguns from [federal firearms licensees], while allowing [18-to-20-year-old persons] to purchase long-guns, * * * to acquire handguns from parents or guardians, and * * * to possess handguns and long-guns." *Ibid.* (citing 18 U.S.C. § 922(b)(1), (c)(1)). The panel further noted that Congress's "means-ends fit * * * has

---

[2] The federal laws that plaintiffs challenge here were enacted following a multi-year Congressional inquiry into violent crime that included "field investigation and public hearings." S. Rep. No. 88-1340, at 1 (1964). Congress found "a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior." Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 197, 225-26. Congress established that "juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of the total arrests in this category." S. Rep. No. 90-1097, at 77 (1968). "[M]inors under the age of 21 years accounted for 35 percent of the arrests for the serious crimes of violence, including murder, rape, robbery, and aggravated assault," and 21 percent of the arrests for murder. 114 Cong. Rec. 12279, 12309 (1968) (Sen. Dodd). The evidence "overwhelmingly demonstrated that the handgun is the type of firearm that is principally used in the commission of serious crime." S. Rep. No. 89-1866, at 7 (1966). Based on its investigations, Congress found "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians * * * is a significant factor in the prevalence of lawlessness and violent crime in the United States." Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225. Congress's investigations further revealed that "almost all of these firearms[] are put into the hands of juveniles by importers, manufacturers, and dealers who operate under licenses issued by the Federal Government." Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary, 89th Cong. 67 (1965) ("Firearms Act: 1965 Hearings") (testimony of Sheldon S. Cohen). *Available at* http://www.lexisnexis.com/congcomp/getdoc?HEARING-ID=HRG-1965-SJS-0054.

retained its reasonableness," Op. 36, in light of recent studies showing that handgun violence by persons aged 18 to 20 continues to pose a disproportionate threat to public safety, Op. 37-38 (discussing the evidence); *see also Moore*, 2012 WL 6156062, at * 7 (noting that a firearm regulation can be sustained "with less evidence" under heightened scrutiny analysis "when * * * guns are forbidden to a class of persons who present a higher than average risk of misusing a gun"). The panel thus closely examined the evidence of means-ends fit while appropriately recognizing that "'Congress is far better equipped than the judiciary' to make 'predictive judgments' and 'amass and evaluate the vast amounts of data' bearing upon 'complex' and 'dynamic' issues," Op. 39 n.21 (quoting *Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622, 665–66 (1994), particularly "[i]n the context of firearm regulation," *Kachalsky v. County of Westchester,* 701 F.3d 81, 97 (2d Cir. 2012), where "sensitive public policy judgments" must be made "concerning the dangers in carrying firearms and the manner to combat those risks," *ibid.*

Plaintiffs contend (Rehearing Pet. 12-13) that the panel erred in failing to conduct an independent statistical analysis focused on the "percent of 18-to-20-year-olds * * * arrested for a violent crime in 2010." But that argument overlooks the Supreme Court's admonition that "courts must accord substantial deference to the predictive judgments of Congress," *Turner Broad. Sys. Inc.*, 512 U.S. at 665. Plaintiffs' contention also cannot be squared with the Supreme Court's disapproval of courts in

Second Amendment cases "mak[ing] difficult empirical judgments in an area in which they lack expertise," *McDonald*, 130 S. Ct. at 3050 (plurality).

Plaintiffs fare no better in arguing (Rehearing Pet. 14) that the panel should have invalidated the challenged federal laws because the laws prevent 18-to-20 year olds from purchasing handguns from federally licensed firearms dealers but do not prevent such persons from "purchas[ing] handguns without * * * scrutiny on the unregulated secondary market." As the panel explained, "[i]t is well-settled that 'a statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" Op. 39 (quoting *Buckley v. Valeo*, 424 U.S. 1, 105 (1976) (citations and internal quotation marks omitted from quotation)). Contrary to plaintiffs' contention (Rehearing Pet. 15), the panel was not required "to strike down these laws, under intermediate scrutiny, on the ground that [the laws] do not completely prevent young adults from accessing handguns and committing violent crimes," Op. 39.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be denied.

Respectfully submitted,

STUART F. DELERY
 *Principal Deputy Assistant Attorney General*

BETH S. BRINKMANN
 *Deputy Assistant Attorney General*

 /s Anisha S. Dasgupta
MICHAEL S. RAAB
 (202) 514-4053
ANISHA S. DASGUPTA
 (202) 514-5428
 *Attorneys, Appellate Staff*
 *Civil Division*
 *United States Department of Justice*
 *950 Pennsylvania Ave., N.W., Rm. 7320*
 *Washington, D.C. 20530-0001*

JANUARY 2013

**CERTIFICATE OF SERVICE**

I certify that on this 4th day of January 2013, I electronically filed the foregoing Response to Plaintiffs' Petition for Rehearing En Banc with the Clerk of Court via the CM/ECF system, which will send notice of such filing to the following registered CM/ECF users:

*Counsel for Plaintiffs*
Charles J. Cooper
David H. Thompson
Peter A. Patterson
Cooper & Kirk, PLLC
1523 New Hampshire Ave, N.W.
Washington, D.C. 20036

*Counsel for Amicus Supporting Plaintiffs*
Christopher P. Johnson
Meredith A. Wholley
Kasowitz, Benson, Torres &
Friedman LLP
1633 Broadway, New York, NY
10019-0000

*Counsel for Amici Supporting Defendants*
Scott Charles Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741-3438

s/ Anisha S. Dasgupta
Anisha S. Dasgupta

Attorney for Defendants-Appellees
Civil Division, Room 7320
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001
202-514-5428
anisha.dasgupta@usdoj.gov